1
2
3
4
5
6

**BRYAN CAVE LLP**
John W. Amberg (California Bar No. 108166)
jwamberg@bryancave.com
Robert E. Boone III (California Bar No. 132780)
reboone@bryancave.com
Nancy Franco (California Bar No. 294856)
nancy.franco@bryancave.com
120 Broadway, Suite 300
Santa Monica, California 90401
Telephone:  (310) 576-2100
Facsimile:  (310) 576-2200

7
8

Attorneys for Defendant
TIGER NATURAL GAS, INC.

9

10

11

12

13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

14
15
16
17
18
19
20
21

EMILY FISHMAN, individually and on
behalf of all others similarly situated,

                Plaintiff,

        v.

TIGER NATURAL GAS, INC., an
Oklahoma corporation; and DOES 1–
100,

                Defendants.

Case No.

(Marin County Superior Court Case No.
CIV 1703054)

**NOTICE OF REMOVAL OF STATE
COURT ACTION UNDER 28 U.S.C.
§§ 1332 AND 1453**

**[CLASS ACTION]**

Complaint Filed:    August 18, 2017
Complaint Served:  August 31, 2017

22

23

24

25

26

27

28

10494612.1

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Tiger Natural Gas, Inc. ("Tiger") hereby removes the state court action described below from the Superior Court of the State of California for Marin County to the United States District Court for the Northern District of California on the basis of Diversity Jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") and 28 U.S.C. § 1453.

## I.   PROCEDURAL HISTORY

1.      Plaintiff Emily Fishman ("Plaintiff") filed a purported class action in the Superior Court of the State of California for the County of Marin, captioned *Emily Fishman, individually and on behalf of all others similarly situated, v. Tiger Natural Gas, Inc., an Oklahoma corporation; and Does 1 through 100*, Case No. CIV 1703054, on August 18, 2017 (the "State Court Action"). A true and correct copy of the Complaint filed in the State Court Action is attached hereto as **Exhibit 1**. Exhibit 1 also includes all process, pleadings, and orders served on Tiger, as required by 28 U.S.C. § 1446(a).

2.      The Complaint brings seven claims for relief for: (1) breach of oral contract; (2) violations of Consumers Legal Remedies Act (Civ. Code. § 1770 *et seq.*); (3) fraud (Civ. Code. § 1572); (4) negligent misrepresentation; (5) violations of False Advertising Law (Bus. and Prof. Code § 17500 *et seq.*); (6) violations of Unfair Competition Law (Bus. and Prof. Code § 17200 *et seq.*); and (7) violations of California Recording Law (Pen. Code § 632). Plaintiff, on behalf of herself and the proposed class, seeks to recover monetary damages, punitive damages, attorneys' fees, and costs. *See* Complaint ¶ 2.

3.      The Complaint also names "DOES 1–100" as defendants. *See* Complaint, ¶ 5. Tiger is informed and believes and on that basis alleges none of the fictitiously–named defendants has been served with a copy of the Summons and Complaint. Therefore, the fictitiously–named defendants are not parties to the

1   above–captioned action and need not consent to removal.  *See* 28 U.S.C. §

2   1441(b)(1); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir.

3   1980) (citations omitted) ("unknown defendants sued as 'Does' need not be joined

4   in a removal petition").

5   **II.   REMOVAL IS PROPER**

6         **A.   Jurisdiction**

7         4.   The State Court Action was pending before the Superior Court for the

8   County of Marin.  This Court is the United States District Court for the district and

9   division embracing the court where the original action was filed.  Therefore,

10  removal to this Court is proper under 28 U.S.C. § 1446(a) and 28 U.S.C. § 1453.

11        **B.   Removal Is Proper Pursuant To CAFA**

12        5.   CAFA provides that United States District Courts have original

13  jurisdiction over any putative class action if: (1) it involves a plaintiff class of 100 or

14  more members; (2) any plaintiff is a citizen of a state different from any defendant;

15  and (3) the amount in controversy exceeds the sum or value of $5,000,000,

16  exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2), (2)(A) & (5)(B).  All

17  three conditions are satisfied here.

18             **1.   The Putative Class Exceeds 100 Members**

19        6.   The State Court Action facially meets CAFA's jurisdictional

20  requirement that the purported class involve 100 or more members.  *See* 28 U.S.C.

21  § 1332(d)(5)(B).  The Complaint alleges that "the total number of Class members is

22  in the thousands and that members of the Class are numerous and geographically

23  dispersed across California."  Complaint, ¶ 48.

24             **2.   The Parties Are Diverse**

25        7.   The requisite diversity of citizenship exists between the parties.

26        8.   Plaintiff is, and was at the time of filing the State Court Action, a

27  citizen of California.  *See* Complaint, ¶ 3.  "A party's residence is 'prima facie'

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  evidence of domicile." *Bergman v. Bank of Am.*, No. C-13-00741 JCS, 2013 WL
2  5863057, at *1, n.2 (N.D. Cal. Oct. 23, 2013) (citations omitted).

3      9.      "For federal diversity purposes, 'a corporation shall be deemed to be a
4  citizen of any State by which it has been incorporated and of the State where it has
5  its principal place of business.'" *Bergman*, 2013 WL 5863057, at *1, n.2 (citations
6  omitted).  Tiger is an Oklahoma corporation with its principal place of business in
7  Tulsa, Oklahoma. *See* Complaint, ¶ 4.  Tiger is thus a citizen of Oklahoma.

8      10.     Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued
9  under fictitious names shall be disregarded for purposes of establishing removal
10 jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(b)(1); *see also*
11 *Newcombe v. Adolf Coors Co.*, 157 F. 3d 686, 690-91 (9th Cir. 1998) (in
12 determining whether diversity of citizenship exists, only the named defendants are
13 considered).  Therefore, the existence of Doe Defendants 1 through 100 does not
14 deprive the Court of jurisdiction.

15     11.     Since none of the Plaintiffs are alleged to be citizens of Oklahoma, the
16 State Court Action meets CAFA's minimal diversity requirement. *See* 28 U.S.C. §
17 1332(d)(2)(A).

18      **3.     The Amount In Controversy Requirement Is Satisfied**

19     12.     Plaintiff seeks to recover monetary damages, punitive damages,
20 attorneys' fees, and costs, on behalf of herself and the proposed class. *See*
21 Complaint ¶ 2.  Plaintiff also seeks injunctive relief. *Id.*

22     13.     The relief requested by Plaintiff in her seventh claim for relief for
23 Violations of California Recording Law alone satisfies CAFA's $5,000,000 amount
24 in controversy requirement.  In that claim, Plaintiff prays for "[s]tatutory damages to
25 [Plaintiff] and the Class in the amount of $5,000 per violation, plus statutory
26 interest." *Id.* at ¶ 157.  To satisfy the $5,000,000 amount in controversy requirement
27 based on this claim alone, the putative class would need to only number 1,000

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1 members (1,000 x $5,000 = $5,000,000).  Plaintiff alleges the putative class consists

2 of "thousands" of members.

3       14.    Thus, the Complaint, on its face, satisfies the $5,000,000 amount in

4 controversy requirement, exclusive of costs and interest.  *See* 28 U.S.C. §

5 1332(d)(2).

6 **III.   PROCEDURAL COMPLIANCE**

7       15.    This Notice of Removal is timely because it is filed within 30 days after

8 receipt of the Complaint by Tiger.  *See* 28 U.S.C. § 1446(b); *see also* 28 U.S.C. §§

9 1332(d)(11) and 1453(b).  Plaintiff filed the Complaint on August 18, 2017.

10 Plaintiff served the Complaint, by mail dated August 21, 2017, on Tiger's agent for

11 service of process in Oklahoma.  Tiger also received a courtesy copy of the

12 Complaint via email on Saturday, August 19, 2017.

13       16.    Tiger has not filed a responsive pleading in the State Court Action nor

14 taken part in any proceedings.

15       17.    Contemporaneously with the filing of this Notice of Removal in the

16 United States District Court for the Northern District of California, written notice of

17 such filing will be served on counsel of record for Plaintiff and the proposed Class

18 as follows [*see* 28 U.S.C. § 1446(d)]:

19         Daniel L. Balsam

20         The Law Offices of Daniel Balsam

21         2601C Blanding Avenue #271

22         Alameda, CA 94501

23         Telephone:  (415) 869-2873

24         Fax:      (415) 869-2873

25         Email:    legal@danbalsam.com

26

27         Jacob Harker

28         Law Offices of Jacob Harker

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    582 Market Street, Suite 1007

2    San Francisco, CA 94104

3    Telephone:  (415) 624-7602

4    Fax:          (415) 684-7757

5    Email:        Jacob@harkercounsel.com

6    18.    A copy of this Notice of Removal will also be filed with the Clerk of

7    the Superior Court of the County of Marin.  *See* 28 U.S.C. § 1446(d).

8    19.    This Notice of Removal is signed pursuant to Rule 11 of the Federal

9    Rules of Civil Procedure.  *See* 28 U.S.C. § 1446(a).

10   **IV.    CONCLUSION**

11   20.    Tiger respectfully requests the Court to take jurisdiction over this

12   action by removing it from the Marin County Superior Court to the United States

13   District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332

14   and 1453.

15   Dated: September 15, 2017         **BRYAN CAVE LLP**
                                        John W. Amberg
16                                      Robert E. Boone III
                                        Nancy Franco
17

18

19                                      By:  */s/ John W. Amberg*
                                             John W. Amberg
20                                      Attorneys for Defendant
                                        Tiger Natural Gas, Inc.

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

# Exhibit 1

**SUM-100**

COPY **SUMMONS**
*(CITACION JUDICIAL)*



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED

AUG 18 2017

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

TIGER NATURAL GAS INC., an Oklahoma corporation; and
DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EMILY FISHMAN, individually and on behalf of all others similarly
situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*<br>CIV 1703054 |
|---|---|

Superior Court of California, County of Marin, 3501 Civic Center Drive,
San Rafael, CA 94903

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel Balsam, Law Offices of D. Balsam, 2601C Blanding Ave. #271, Alameda, CA 94501, 415-869-2873

| DATE: August 18, 2017<br>*(Fecha)* | Clerk, by<br>*(Secretario)* JAMES M. KIM E. CHAIS | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

SEAL

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):* TIGER NATURAL GAS INC., an Oklahoma corporation

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.

COPY

1   Daniel L. Balsam (State Bar No. 260423)
2   THE LAW OFFICES OF DANIEL BALSAM
    2601C Blanding Avenue #271
3   Alameda, CA 94501
    Tel: (415) 869-2873
4   Fax: (415) 869-2873
    Email: legal@danbalsam.com
5
6   Jacob Harker (State Bar No. 261262)
7   LAW OFFICES OF JACOB HARKER
    582 Market Street, Suite 1007
8   San Francisco, CA 94104
    Tel: (415) 624-7602
9   Fax: (415) 684-7757
    Email: jacob@harkercounsel.com
10
11
12  Attorneys for Plaintiffs and the Proposed Class

FILED

AUG 18 2017

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

13
14              SUPERIOR COURT OF THE STATE OF CALIFORNIA
15              COUNTY OF MARIN (UNLIMITED JURISDICTION)

16  EMILY FISHMAN, individually and on    ) Case No.:    CIV    1703054
17  behalf of all others similarly situated;   )
18                                          )
                                            )
            Plaintiffs,                     ) CLASS ACTION COMPLAINT FOR
19                                          ) DAMAGES AND INJUNCTIVE RELIEF
        v.                                  )
20                                          )
    TIGER NATURAL GAS INC., an Oklahoma    ) 1. BREACH OF ORAL CONTRACT
21  corporation; and                        ) 2. VIOLATIONS OF CONSUMERS
    DOES 1-100;                             )    LEGAL REMEDIES ACT (Civ. Code
22                                          )    § 1770 et seq.)
23          Defendants.                     ) 3. FRAUD (Civ. Code § 1572)
                                            ) 4. NEGLIGENT
24                                          )    MISREPRESENTATION
25                                          ) 5. VIOLATIONS OF FALSE
                                            )    ADVERTISING LAW (Bus. & Prof.
26                                          )    Code § 17500 et seq.)
27                                          ) 6. VIOLATIONS OF UNFAIR
                                            )    COMPETITION LAW (Bus. & Prof.
28                                          )    Code § 17200 et seq.)
29                                          ) 7. VIOLATIONS OF CALIFORNIA
                                            )    RECORDING LAW (Pen. Code § 632)
30                                          )
31  _____ ) JURY TRIAL DEMANDED

1
**CLASS ACTION COMPLAINT**

COMES NOW PLAINTIFF EMILY FISHMAN and files this Class Action Complaint against TIGER NATURAL GAS INC. *et al* and alleges as follows:

## I. <u>NATURE OF THE ACTION</u>

1.      This class action arises out of Defendant Tiger Natural Gas Inc.'s ("Tiger") practice of falsely advertising its natural gas price protection program (the "Program") to California consumers.

2.      Plaintiff Emily Fishman ("Fishman") brings this class action to recover monetary damages on behalf of herself and a Class defined as *"All California consumers who enrolled in Tiger's natural gas price protection program after receiving advertising (including telemarketing and bill inserts), claiming that the program is free and/or that the program can save consumers money versus their current gas provider's rates due to a rate cap, within: a) one year prior to the filing of this Action or after the filing of this Action for the Recording Law cause of action; b) two years prior to the filing of this Action or after the filing of the Action for the Breach of Oral Contract and Negligent Misrepresentation causes of action; c) within three years prior to the filing of this Action or after the filing of this Action for the Fraud and Consumers Legal Remedies Act causes of action; and/or d) within four years prior to the filing of this Action or after the filing of this Action for the False Advertising Law and Unfair Competition Law causes of action,"* with certain exclusions as described *infra*.  Fishman also seeks injunctive relief, punitive damages, attorneys' fees, and costs, pursuant to statute.

## II. <u>PARTIES</u>

3.      Emily Fishman ("Fishman") is, and was at all relevant times, more than 18 years of age and a resident of Mill Valley, Marin County, California.

4.      Tiger Natural Gas Inc. ("Tiger") is, and was at all relevant times, an Oklahoma corporation with a primary place of business in Tulsa, Oklahoma.  Tiger has been in business for more than 25 years, supplying natural gas to more than 43,000 customers in more than 20 states. *See* http://tigernaturalgas.com/about.  Tiger has been registered with the California Secretary of State to do business in California since 2002.

5.      The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of defendants and/or their alter egos named herein as DOES 1-100

1  inclusive are presently unknown to Plaintiffs at this time, and are therefore sued by such

2  fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiffs will amend this

3  Complaint to allege the true names and capacities of DOES 1-100 when the same have been

4  ascertained.  Plaintiffs are further informed and believe and thereon allege that DOES 1-100

5  were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events,

6  happenings, and damages hereinafter set forth below.

7

8                    ### III.  JURISDICTION AND VENUE

9    6.       This California Superior Court has jurisdiction over the Action because: a) Fishman and

10  the Class are citizens and residents of California; b) Tiger advertised to Fishman and the Class in

11  California, *see* Code of Civil Procedure § 410.10; c) Fishman's personal damages are less than

12  $10,000, but she seeks a permanent injunctive not available in small claims court; d) Fishman

13  brings this Action on behalf of a Class, and class actions cannot be litigated in small claims

14  court; and e) Neither Fishman's nor any individual Class member's damages exceed $75,000.

15  7.       Venue is proper in this Court because Tiger's contract with Fishman was to be performed

16  in Marin County, and Tiger's liability to Fishman arose in Marin County.  *See* Code Civ. Proc.

17  §§ 395, 395.5 and Civ. Code § 1780(d).

18

19                    ### IV.  STATEMENT OF FACTS

20  8.       All allegations in this Complaint are based on information and belief and/or are likely to

21  have evidentiary support after a reasonable opportunity for further investigation or discovery.

22  Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be

23  deemed alternative.

24  **A.  Tiger's Natural Gas Price Protection Program**

25  9.       One of Tiger's products is a natural gas price protection program (the "Program"), a

26  purportedly free plan by which Tiger purportedly charges customers a variable rate for supplying

27  natural gas, based on the market price, but with a price cap of $0.69 per therm.[1]

28

29

30  ---

31  [1] A "therm" – short for 100,000 British Thermal Units – represents the heat energy in natural
gas.  Natural gas is typically priced to customers in therms and the volume of gas used appears
on billing statements in therms.  *See* http://mapawatt.com/2010/02/17/what-therm.

10.     When a customer chooses to purchase or "procure" gas from Tiger, the gas is delivered over existing pipes, e.g., by PG&E. Thus, a customer who buys gas from PG&E has a single line item for "Gas Charges" on his/her utility bill, whereas a customer who buys gas from Tiger has separate line items for "PG&E Gas Delivery Charges" and "Tiger Natural Gas Inc. Gas Procurement Charges."

**B.  Tiger Called Fishman to Advertise its Natural Gas Price Protection Program**

11.     Prior to August 18, 2015, Fishman purchased natural gas from PG&E for home use.

12.     On August 18, 2015, Tiger, by its agent/Customer Service Representative ("CSR") Olivia Brown ("Brown"), called Fishman at her home (landline) telephone number (the "call"). Exhibit A is a transcript of the call and is incorporated in this Statement of Facts as if set forth in full. Certain parts, including confidential information, are summarized and do not affect this Action.

13.     Tiger's objective in calling Fishman was to solicit her to sign up for the Program and buy Tiger's natural gas, instead of continuing to buy natural gas from PG&E. Of course, PG&E would continue to deliver the gas.

14.     Tiger never asked for Fishman's consent to record the call. Indeed, Tiger never disclosed that it was recording the call. Fishman first learned that Tiger recorded the call on August 28, 2016.

15.     Brown began the call by claiming that she was calling from "Community Gas Center." Brown did not disclose that she was calling on behalf of Tiger until nearly four minutes into the call.

16.     Tiger claimed that it was calling every single PG&E customer to advertise the Program and solicit their business.

17.     Tiger admitted on the call that it knew it was advertising to a resident of California.

18.     Tiger claimed that an 18.8% price increase for natural gas rates had already begin, and that Fishman would see another 33% increase over the next three years because the California Public Utilities Commission had already processed that request from PG&E.

19.     The Public Utilities Commission did not approve a 33% rate increase, as Tiger falsely claimed. In fact, the PUC approved a *27%* rate increase.[2] By misrepresenting the amount by

---

[2] Robert Walton, *California PUC Approves Gas Rate Hike for California Utilities and SoCal Gas*, UTILITYDIVE, June 28, 2016, http://www.utilitydive.com/news/california-puc-approves-gas-rate-hike-for-california-utilities-and-socalgas/421697.

**CLASS ACTION COMPLAINT**

1  which PG&E could raise its gas prices, Tiger attempted to make its own price cap seem even

2  more beneficial to consumers.

3  20.     Tiger claimed that it set up a price protection program, by which it charges customers a

4  variable rate for natural gas based on the market price, with a price cap of 69 cents per therm.

5  21.     To provide an example of the purported benefits of the purportedly "great program,"

6  Tiger posited that "Say for instance if PG&E down the line in the next year paid $1.06 per therm

7  for the gas, you wouldn't be charged $1.06 per therm for your gas.  You would be charged 69

8  cents because it can never go over that price."

9  22.     Tiger advised Fishman that "Everything will stay the same with your PG&E utility

10 service.  So you'll pay that bill just like you do now."

11 23.     Tiger stated several times that the Program was entirely free.  Tiger never disclosed any

12 charges for the Program other than for buying the gas itself.

13 24.     Tiger had superior knowledge than Fishman did about its own Program.

14 25.     During the call on August 18, 2015, Fishman entered into an oral contract with Tiger to

15 buy its gas via the Program in reliance on Tiger's statements during the call.  All terms of the

16 contract were stated in that call.  *See* Exhibit A.

17 26.     Only *after* the sales call concluded, an automated verification system stated that Tiger

18 would mail Fishman a copy of the terms and conditions within three business days.  Fishman had

19 no idea what those additional terms might have been when she entered into the oral contract with

20 Tiger.  Thus, those additional terms and conditions, provided after the oral contract was made,

21 were not part of the oral contract.  *See* Civ. Code § 1580.  Fishman does not recall if she ever

22 received the mailed copy of the Program's terms and conditions.

23 27.     The automated verification process also stated that "PG&E will continue to deliver your

24 natural gas, send your monthly PG&E bill, and provide the exact same utility service."

25 28.     Fishman is informed and believes and thereon alleges that Brown was following a script

26 prepared for her by Tiger (or perhaps Tiger's agent, such as a third-party direct marketing

27 agency) when Brown called her.  Fishman is informed and believes and thereon alleges that

28 Brown and Tiger's other CSRs were required to follow that script as closely as possible, with

29 little if any room for deviation or improvisation.

30 29.     Fishman is informed and believes and thereon alleges that all Class members received

31 comparable calls based on the same script.  Even if every single word were not exactly the same,

**5**

**CLASS ACTION COMPLAINT**

1  Fishman is informed and believes and thereon alleges that all of Tiger's CSRs were instructed by
2  Tiger to communicate, and did communicate, to all Class members that: a) the Program was free;
3  b) the gas price would be capped at $0.69 per therm; c) the Program is great; and d) the Program
4  benefitted customers by capping the price below what PG&E (or their current gas provider)
5  could possibly charge them, e.g. $1.06 per therm.

6  30.    Brown acted as Tiger's agent, within the scope of her authority, when she called
7  Fishman. *See* Civ. Code § 2316.

8  31.    Even if Brown did not have actual authority to make the claims that she made, Fishman
9  reasonably believed the Brown had ostensible authority to make those claims on behalf of Tiger.
10 *See* Civ. Code § 2317.

11 32.    Fishman is informed and believes and thereon alleges that Tiger also called customers of
12 other gas providers in California, not just PG&E.

13 **C.  Fishman's Gas Bills Were Far More Expensive With Tiger Than They Would Have
14     Been If She Had Stayed With PG&E**

15 33.    Tiger supplied Fishman's natural gas beginning on September 17, 2015, with charges
16 first appearing on the bill with the statement date of October 22, 2015.

17 34.    Fishman is informed and believes and thereon alleges that Tiger did not charge her "a
18 variable rate based on the market rate" for gas, but rather a rate that was much higher – in some
19 months, as much as three times higher than PG&E's rate – as shown below.

| Statement Date | PG&E Gas ($/therm) | Tiger Gas ($/therm) | Difference |
|---|---|---|---|
| 10/22/2015 | $ 0.3263 | $ 0.6900 | + 111% |
| 11/24/2015 | $ 0.3553 | $ 0.6900 | + 94% |
| 12/23/2015 | $ 0.3897 | $ 0.6823 | + 75% |
| 1/22/2016 | $ 0.3927 | $ 0.6709 | + 71% |
| 2/24/2016 | $ 0.4058 | $ 0.6555 | + 62% |
| 3/24/2016 | $ 0.2792 | $ 0.5900 | + 111% |
| 4/25/2016 | $ 0.1944 | $ 0.6097 | + 214% |
| 5/24/2016 | $ 0.2517 | $ 0.6513 | + 159% |
| 6/23/2016 | $ 0.2380 | $ 0.6450 | + 171% |

35.    Fishman terminated the oral contract by calling Tiger in May 2016, after realizing that
over nine months of Tiger bills, her gas prices were constantly and significantly higher than they
would have been if she had stayed with PG&E, and the purported cap showed no signs of ever
providing a benefit.  The last day on which Tiger supplied Fishman's natural gas was June 15,
2016, on the bill with the statement date of June 23, 2016.  Tiger supplied Fishman with natural
gas for 273 days.

**CLASS ACTION COMPLAINT**

36.     According to Fishman's PG&E bills, over the nine months that she bought Tiger gas, if she had bought PG&E gas, she would have paid $120.75 for gas procurement (excluding delivery).

37.     According to Fishman's PG&E bills, over the nine months that she bought Tiger gas, she paid $233.54 for gas procurement (excluding delivery) – *93% more than PG&E.*

38.     According to Fishman's PG&E bills, over the nine months that she bought Tiger gas, she paid $13.65 for Tiger's (undisclosed) $0.05 daily charge, whereas if she had stayed with PG&E, there would have been *no* daily charges.

39.     According to Fishman's PG&E bills, over the nine months that she bought Tiger gas, she paid Tiger a total of $247.19 for gas procurement plus daily charges, *more than double* the $120.75 that she would have paid to PG&E for gas procurement and no daily charges if she had stayed with PG&E.

| Statement Date | PG&E Gas | Tiger Gas + Daily Charge | Difference |
|---|---|---|---|
| 10/22/2015 | $ 5.22 | $ 12.49 | + 139% |
| 11/24/2015 | $ 12.08 | $ 25.06 | + 107% |
| 12/23/2015 | $ 23.77 | $ 43.07 | + 81% |
| 1/22/2016 | $ 29.45 | $ 51.82 | + 76% |
| 2/24/2016 | $ 22.32 | $ 37.65 | + 69% |
| 3/24/2016 | $ 10.89 | $ 24.51 | + 125% |
| 4/25/2016 | $ 6.22 | $ 21.01 | + 238% |
| 5/24/2016 | $ 6.04 | $ 17.18 | + 184% |
| 6/23/2016 | $ 4.76 | $ 14.40 | + 203% |
| Total | $ 120.75 | $ 247.19 | + 105% |

40.     Tiger knowingly misrepresented the fundamental value proposition of the Program when it called Fishman by setting up an impossible hypothetical situation, designed to confuse and mislead Fishman.  In the nine months Fishman was a Tiger customer, PG&E's gas price ranged from $0.3263 to $0.4058 per therm, averaging $0.3392.  So even if PG&E did increase its rate by 33% as Tiger claimed – setting aside the fact that the Public Utilities Commission actually approved a 27% increase, *supra* – that would have been $0.4511.  A 33% increase on the highest month during that nine month period would have been $0.5397.  Thus, when Tiger called Fishman and posited that PG&E could charge its customers $1.06 per therm (*double* what PG&E could actually charge), that was a deliberate misrepresentation meant to deceive Fishman about Tiger's gas prices, PG&E's possible gas prices, and the relative value of Tiger's Program.  Tiger description of the Program as "great" was false because the price cap of $0.69 per therm had no value whatsoever to Fishman or any other consumer, since PG&E's maximum possible rate –

7

$0.5397 – was still nowhere close to the cap.  And at the same time, Tiger charged significantly more than PG&E charged for gas.

**D.  Terms and Conditions on Tiger's Website Not Disclosed During the Call are Not Binding**

41.    According to the terms and conditions of the Natural Gas Purchase Agreement on Tiger's website as of June 2016, Tiger states that the agreement was governed by Oklahoma law.  But Tiger said nothing about Oklahoma law during the call.  Fishman did not know of this purported term before the Parties entered into an oral contract, and never agreed to it.  *See* Civ. Code § 1580.  Exhibit B is a true and correct copy of Tiger's Natural Gas Purchase Agreement on its website as of June 2016 and is incorporated as if set forth in full in this Statement of Facts.

42.    According to the terms and conditions of the Natural Gas Purchase Agreement on Tiger's website at the time, in addition to the gas itself, Tiger also charges $0.05 per day of service.  *See* Exhibit B.  But Tiger said nothing about a $0.05 daily charge during the call.  Fishman did not know of this purported term before the Parties entered into an oral contract, and never agreed to it.  *See* Civ. Code § 1580.

43.    According to the terms and conditions of the Natural Gas Purchase Agreement on Tiger's website at the time, there is no class action waiver/arbitration provision.  *See* Exhibit B.  Nor did Tiger say anything about a class action waiver/arbitration provision during the call.

**E.  Tiger's Website Falsely Claimed That There Were ZERO Complaints Filed with the Better Business Bureau**

44.    According to Tiger's website at the time, there were "ZERO complaints" with the Better Business Bureau.  Exhibit C is a true and correct copy of a page from Tiger's website, *http://tigernaturalgas.com/switch-pge-customer-service*, as of July 2016 and is incorporated as if set forth in full in this Statement of Facts.

45.    According to the Better Business Bureau of Oklahoma's website, there were 20 complaints filed within the last three years prior to July 2016.  Exhibit D is a true and correct copy of a page from the Oklahoma BBB's website, *http://www.bbb.org/tulsa/business-reviews/natural-gas-companies/tiger-natural-gas-inc-in-tulsa-ok-33000688*, as of July 2016 and is incorporated as if set forth in full in this Statement of Facts.

**CLASS ACTION COMPLAINT**

## V. CLASS ACTION ALLEGATIONS

46.     Fishman brings this Class Action for damages and injunctive relief on behalf of the following class: *"All California consumers who enrolled in Tiger's natural gas price protection program after receiving advertising (including telemarketing and bill inserts), claiming that the program is free and/or that the program can save consumers money versus their current gas provider's rates due to a rate cap, within: a) one year prior to the filing of this Action or after the filing of this Action for the Recording Law cause of action; b) two years prior to the filing of this Action or after the filing of the Action for the Breach of Oral Contract and Negligent Misrepresentation causes of action; c) within three years prior to the filing of this Action or after the filing of this Action for the Fraud and Consumers Legal Remedies Act causes of action; and/or d) within four years prior to the filing of this Action or after the filing of this Action for the False Advertising Law and Unfair Competition Law causes of action."*

47.     Excluded from the Class are:

- Defendants' officers, directors, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.
- Any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

48.     **Numerosity.**  The proposed Class is so numerous that individual joinder of all its members is impractical.  Due to the nature of the trade and commerce involved, and the fact that Tiger plainly stated that it was calling *all* PG&E customers (and perhaps customers of other gas companies such as Southern California Gas Company), Fishman believes that the total number of Class members is in the thousands and that members of the Class are numerous and geographically dispersed across California.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

49.     **Commonality.**  There is a well-defined community of interest in the questions of law and fact involved affecting the Class and these common questions predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a. Did Tiger advertise to Class Members that its natural gas price protection program was free?

**9**

**CLASS ACTION COMPLAINT**

    b.   Did Tiger charge customers an undisclosed daily charge for participating in its natural gas price protection program?

    c.   Did Tiger advertise to Class Members that it priced its gas based on the market rate?

    d.   Did Tiger price its gas to Class Members far higher than the market rate?

    e.   Did Tiger advertise to Class Members that the natural gas price protection program was a great program because it capped gas prices at a price below what PG&E (or another utility) could charge?

    f.   Was the Tiger natural gas price protection program's price cap higher than what other utilities could have charged customers during the three year term of the customers' oral contract to buy Tiger gas, such that the price cap provided no benefit?

50.    **Typicality.**  Fishman's claims are typical of the claims of the members of the Class. Fishman and all members of the Class have been similarly affected by Tiger's common course of conduct since they all received the same advertising and: a) They were assessed with daily charges; b) The rate they paid for gas was far above the market rate; c) The price cap had no benefit or value because it was set higher than what the Class members' former utility could have charged them; d) They relied on Tiger's claims when they entered into oral contracts with Tiger; and e) Tiger knew at the time it advertised to Class members that its claims were not true.

51.    **Adequacy.**  Fishman will fairly and adequately represent and protect the interests of the Class. Fishman has no interests adverse to that of the Class. Fishman has retained counsel with substantial experience in handling complex multi-party litigation and prosecuting false advertising consumer actions. Fishman and her counsel are committed to vigorously prosecuting this Action on behalf of the Class.

52.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Tiger's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The

1   conduct of this action as a class action conserves the resources of the parties and of the judicial

2   system and protects the rights of the class members.  Furthermore, for many, if not most, a class

3   action is the only feasible mechanism that allows an opportunity for legal redress and justice.

4   Adjudication of individual class members' claims with respect to Tiger would, as a practical

5   matter, be dispositive of the interests of other members not parties to the adjudication, and could

6   substantially impair or impede the ability of other class members to protect their interests.

7

8                                    **FIRST CAUSE OF ACTION**

9                            **[Breach of Oral Contract, Civ. Code § 1622]**
     **(By All Plaintiffs Whom Tiger Called Two Years Or Less Before this Action was Filed)**
10                                   **(Against All Defendants)**

11

12   53.     Fishman hereby incorporates the foregoing paragraphs as though set forth in full herein.

13   54.     Fishman brings this Action within two years of Tiger calling her to advertise the

14   Program.  *See* Code Civ. Proc. § 339.

15   55.     Fishman and the Class on the one hand, and Tiger on the other hand, entered into oral

16   contracts by which Plaintiffs agreed to participate in Tiger's natural gas price protection program

17   and buy natural gas from Tiger.  *See* Civ. Code § 1622.

18   56.     By the terms of the contracts, Tiger offered Fishman and the Class a great Program

19   because it was free, and gas was priced based on the market price, and the price cap was a

20   consumer benefit because Plaintiffs' former utilities could charge more than that cap.

21   57.     Fishman and the Class did all, or substantially all, of the significant things that the

22   contract required, namely, pay for the gas.

23   58.     All conditions required by the contracts for Tiger's performance had occurred.

24   59.     Tiger breached the contracts by charging Fishman and the Class a daily charge of $0.05

25   in addition to the gas for participating in the Program, even though Tiger advertised the Program

26   as free.

27   60.     Tiger breached the contracts by charging Fishman and the Class prices not based on the

28   market rate, and far more than the market rate.  For example, even as PG&E's rates dropped by

29   52% from February to April 2016 ($0.4058 to $0.1944/therm), Tiger's rates dropped by only 7%

30   ($0.6555 to $0.6097).

31

---

**11**
**CLASS ACTION COMPLAINT**

61.    Tiger breached its promises by failing to deliver any consumer benefits via the price cap, in that the price cap was above what Fishman and the Class's former utilities could and did charge for gas.

62.    Fishman and the Class were harmed by Tiger's breach of contract.

WHEREFORE, Fishman and the Class pray for judgment against Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION

**[Violations of Consumers Legal Remedies Act, Civil Code § 1770 *et seq.*]**
**(By All Plaintiffs Whom Tiger Called Three Years Or Less Before this Action was Filed)**
**(Against All Defendants)**

63.    Fishman hereby incorporates the foregoing paragraphs as though set forth in full herein.

64.    Fishman brings this Action within three years of Tiger calling her to advertise the Program. *See* Civ. Code § 1783.

65.    The Consumers Legal Remedies Act ("CLRA") "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *See* Civ. Code § 1760.

66.    Fishman and the Class members are "consumers" because each is an "individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *See* Civ. Code § 1761(d).

67.    Tiger's natural gas is a "good" because it is a "tangible chattel bought [ ] for use primarily for personal, family, or household purposes [ ]." *See* Civ. Code § 1761(a).

68.    Fishman and the Class members' dealings with Tiger to purchase its gas are "transactions" because they are "agreement[s] between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *See* Civ. Code § 1761(e).

69.    The CLRA prohibits various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *See* Civ. Code § 1770(a).

**CLASS ACTION COMPLAINT**

70.     Tiger violated Section 1770(a)(1) ("Passing off goods or services as those of another"), 1770(a)(2) ("Misrepresenting the source, sponsorship, approval, or certification of goods or services") and (a)(3) ("Misrepresenting the affiliation, connection, or association with, or certification by, another") by claiming at the outset of the call to Fishman and the Class that its agent was calling on behalf of "Community Gas Center," which implies a neutral community organization, as opposed to a for-profit entity that competes with her established gas provider.

71.     Tiger violated Section 1770(a)(5) ("Representing that goods or services have characteristics [or] benefits [ ] which they do not have") and Section 1770(a)(9) ("Advertising goods or services with intent not to sell them as advertised") by advertising to Fishman and the Class a "price protection" program that would purportedly cap gas prices at a rate lower than PG&E's rate, despite knowing that PG&E's rates would not be more expensive than Tiger's cap of $0.69 during the next three years, and claiming that the cap of $0.69 per therm has financial benefits versus PG&E gas.

72.     Tiger violated Section 1770(a)(8) ("Disparaging the goods, services, or business of another by false or misleading representation of fact") by knowingly falsely claiming to Fishman and the Class that PG&E could charge $1.06 per therm, twice the possible rate even assuming a 33% rate increase.

73.     Tiger violated Section 1770(a)(5) ("Representing that goods or services have characteristics [or] benefits [ ] which they do not have") and Section 1770(a)(9) ("Advertising goods or services with intent not to sell them as advertised") by advertising to Fishman and the Class that its price protection program as free when in fact Tiger charges $0.05 per day.

74.     Tiger violated Section 1770(a)(2) ("Misrepresenting the source, sponsorship, approval, or certification of goods or services") and (a)(3) ("Misrepresenting the affiliation, connection, or association with, or certification by, another") by falsely claiming on its website that there had been ZERO complaints against Tiger with the Better Business Bureau (emphasis in original), *see* Exhibit C, thereby asserting absolute approval by the BBB, when in fact there had been *20* complaints filed against Tiger with the BBB of Eastern Oklahoma in the three years prior to July 8, 2016, only four of which had been resolved to the complainant's satisfaction, *see* Exhibit D.

75.     Fishman sent a letter to Tiger by certified return-receipt mail on June 22, 2017, as required by Civil Code § 1782, demanding that Tiger immediately correct its unlawful marketing practices, including but not limited to: a) disclosing on its website and in all forms of advertising

1   (including telemarketing) that Tiger does not base its gas procurement prices on market rates; b)

2   disclosing on its website and in all forms of advertising (including telemarketing) that Tiger's

3   purported "cap" on gas procurement will not actually result in a lower price to consumers than

4   their current gas provider would charge; c) disclosing the $0.05 daily customer charge on its

5   website and in all forms of advertising (including telemarketing); and d) removing all claims

6   from its website that there have been no complaints filed against Tiger with the Better Business

7   Bureau.

8   76.     Fishman also demanded in her June 22, 2017 letter that Tiger notify her within 30 days

9   from its receipt of the letter that: a) Tiger had identified all similarly situated consumers (i.e.,

10   consumers who in the last three years agreed to purchase Tiger gas in reliance on claims that

11   Tiger's price cap could result in lower rates than PG&E, and consumers who in the last three

12   years agreed to enroll in Tiger's price protection program based on claims that the Program was

13   free); b) notified those consumers that Tiger is correcting its unlawful advertising practices; and

14   c) notified those consumers that upon their request, Tiger would reimburse all monies they paid

15   for Tiger gas in excess of PG&E's price for each month during which they were Tiger

16   customers, plus $0.05 per day for each day that they were Tiger customers.

17   77.     Tiger's response was due on June 22, 2017 plus 30 days plus five days for mailing in-

18   state, or July 27, 2017. Tiger did not provide a code-compliant response to Fishman's letter by

19   July 27, 2017 as required by Civil Code § 1782. In fact, Fishman had not received *any* response

20   as of the filing of this Action.

21   78.     Tiger's violations of Civil Code § 1770 damaged Fishman and the Class. Section 1780

22   authorizes remedies of actual damages, injunctive relief, punitive damages, costs, and attorneys'

23   fees. Section 1781 allows Fishman to bring this lawsuit as a class action.

24

25   WHEREFORE, Fishman and the Class pray for judgment against Defendants as hereinafter set

26   forth.

27   //

28   //

29   //

30   //

31   //

**14**

**CLASS ACTION COMPLAINT**

1

## THIRD CAUSE OF ACTION

2

**[Fraud, Civil Code § 1572]**

3

**(By All Plaintiffs Whom Tiger Called Three Years Or Fewer Before this Action was Filed)**
**(Against All Defendants)**

4

5

79.    Fishman hereby incorporates the foregoing paragraphs as though set forth in full herein.

6

80.    Fishman brings this Action within three years of Tiger calling her to advertise its natural

7

gas price protection program. *See* Code Civ. Proc. § 338(d).

8

81.    Tiger, by its agents, represented to Fishman and the Class via telemarketing, bill inserts,

9

and/or other forms of advertising that the Program was great because it was free, its gas price

10

was based on market price, and the price cap delivered consumer benefits because the current

11

utility could raise its prices to a price higher than the Program's cap.  Specifically, Tiger made a

12

false claim to Fishman when it stated as a fact that PG&E could raise its gas price to $1.06 per

13

therm within the next year.  Tiger made this false claim in order to make its price cap of $0.69

14

appear to deliver a consumer benefit, when in fact the price cap had no such benefit at all.

15

82.    Tiger knew the representation that the Program was free was false.

16

83.    Tiger knew that its representation that as part of the Program, it charged customers for

17

gas based on the market price, was false.

18

84.    Tiger knew that its representation that the Program's price cap delivered consumer

19

benefits was false.

20

85.    Tiger knew that its representations that PG&E would be raising its rates by 33%, and

21

PG&E could charge customers $1.06 per therm within the next year, was false.

22

86.    Tiger knew that the representation that the Program was great for consumers was false.

23

87.    Tiger knew the representations were false when its agents made such representations, and

24

that its agents made such representations recklessly and without regard for the truth.

25

88.    Tiger intended that Fishman and the Class rely on its representations.

26

89.    Fishman and the Class reasonably relied on Tiger's representations.

27

90.    Fishman and the Class were harmed by relying on Tiger's representations.

28

91.    Fishman and the Class's reliance on Tigers' representations was a substantial factor in

29

causing their harm.

30

31

**15**

**CLASS ACTION COMPLAINT**

WHEREFORE, Fishman and the Class pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### [Negligent Misrepresentation, Civil Code §§ 1573, 1577]
### (By All Plaintiffs Whom Tiger Called Two Years Or Less Before this Action was Filed)
### (Against All Defendants)

92.     Fishman hereby incorporates the foregoing paragraphs as though set forth in full herein.

93.     Fishman brings this Action within two years of Tiger calling her to advertise its natural gas price protection program. *See* Code Civ. Proc. § 338(d).

94.     Tiger, by its agents, represented to Fishman and the Class via telemarketing, bill inserts, and/or other forms of advertising important facts such as that the Program was great because it was free, its gas price was based on market price, and the price cap delivered consumer benefits because the current utility could raise its prices to a price higher than the Program's cap. Specifically, Tiger made a false claim to Fishman when it stated as a fact that PG&E could raise its gas price to $1.06 per therm within the next year.  Tiger made this false claim in order to make its price cap of $0.69 appear to deliver a consumer benefit, when in fact the price cap had no such benefit at all.

95.     Tiger's representation that the Program was free was not true.

96.     Tiger's representation that as part of the Program, it charged customers for gas based on the market price, was not true.

97.     Tiger's representation that the Program's price cap delivered consumer benefits was not true.

98.     Tiger's representations that PG&E would be raising its rates by 33%, and PG&E could charge customers $1.06 per therm within the next year, were not true.

99.     Tiger's representation that the Program was great for consumers was not true.

100.    Although Tiger and its agents may have honestly believed that the above representations were true, Tiger and its agents had no reasonable grounds for believing that the above representations were true when they made the representations.

101.    Tiger intended that Fishman and the Class rely on its representations.

102.    Fishman and the Class reasonably relied on Tiger's representations.

103.    Fishman and the Class were harmed by relying on Tiger's representations.

104.    Fishman and the Class's reliance on Tigers' representations was a substantial factor in causing their harm.

WHEREFORE, Fishman and the Class pray for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTION

**[Violations of False Advertising Law, Business & Professions Code § 17500 *et seq.*]**
**(By All Plaintiffs Whom Tiger Called Four Years Or Less Before this Action was Filed)**
**(Against All Defendants)**

105.    Fishman hereby incorporates the foregoing paragraphs as though set forth in full herein.

106.    Fishman brings this Action within four years of Tiger calling her to advertise its natural gas price protection program. *See* Bus. & Prof. Code § 17208.

107.    Fishman has standing to bring claims under Business & Professions Code § 17500 *et seq.* because she suffered injury in fact and lost money as the result of Tiger's false advertising, *see* Bus. & Prof. Code § 17204, as described below.

108.    Business & Professions Code § 17500 states:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or *to induce the public to enter into any obligation* relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, *concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading,* or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not

exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine [emphasis added].

109.     Tiger falsely claimed in its telemarketing call to Fishman and the Class that its natural gas price protection program was great because: a) it was free; b) gas prices were based on market prices; and c) gas prices were capped at a rate below which PG&E could charge her for gas.

110.     Tiger's claims were false because: a) Fishman and the Class were charged $0.05 per day to participate in the Program in addition to the cost of the gas; b) Tiger's gas prices were not based on market prices but were actually much higher; and c) Tiger set up a hypothetical – and impossible – scenario in which PG&E could charge Fishman $1.06 per therm for gas within a year, so Tiger's $0.69 per therm price delivered consumer benefits, when in truth PG&E could not charge anywhere near $0.69 per therm, so the price cap had no benefit whatsoever.

111.     Business & Professions Code § 17500.3 states:

> It is unlawful for any person[3] to solicit a sale or order for sale of goods or services at the residence of a prospective buyer, in person or by means of telephone, without clearly, affirmatively and expressly revealing at the time the person initially contacts the prospective buyer, *and before making any other statement, except a greeting, or asking the prospective buyer any other questions, that the purpose of the contact is to effect a sale*, by doing all of the following:
> (1) Stating the identity of the person making the solicitation.
> *(2) Stating the trade name of the person represented by the person making the solicitation.*
> (3) Stating the kind of goods or services being offered for sale [emphasis added].

112.     The first thing Tiger's CSR did after Fishman answered the phone was to provide her [first] name: Olivia.

113.     However, Brown did not identify Tiger before making any other statement except greeting or asking Fishman any other questions.  Instead, she claimed she was calling from "Community Gas Center," which a reasonable consumer might believe to be a non-profit organization, and has no obvious connection to Tiger.

114.     Business & Professions Code § 17508 states:

> (a) It shall be unlawful for any person doing business in California and advertising to consumers in California to make *any false or misleading advertising claim*, including claims that (1) purport to be based on factual,

---

[3] "As used in this chapter, 'person' includes any individual, partnership, firm, association, or corporation."  Bus. & Prof. Code § 17506.

**CLASS ACTION COMPLAINT**

objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) *purport to be based on any fact* [emphasis added].

115.    Tiger made a false claim to Fishman and the Class when it presented as a fact that PG&E could raise its gas price to $1.06 per therm within the next year.  Tiger made this false claim in order to make its price cap of $0.69 per therm appear to deliver a consumer benefit, when in fact the price cap had no such benefit because PG&E could not charge $1.06 per therm, or any amount higher than $0.69 per therm.

116.    Fishman and the Class were harmed by relying on Tiger's representations.

WHEREFORE, Fishman and the Class pray for judgment against Defendants as hereinafter set forth.

## SIXTH CAUSE OF ACTION

**[Violations of Unfair Competition Law, Business & Professions Code § 17200 *et seq.*]**
**(By All Plaintiffs Whom Tiger Called Four Years Or Less Before this Action was Filed)**
**(Against All Defendants)**

117.    Fishman hereby incorporates the foregoing paragraphs as though set forth in full herein.

118.    Fishman brings this Action within four years of Tiger calling her to advertise its natural gas price protection program.  *See* Bus. & Prof. Code § 17208.

119.    Business & Professions Code § 17200 states:

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

120.    Fishman and the Class have standing to bring claims under Business & Professions Code § 17200 *et seq.* because they all lost money as the direct result of Tiger's false advertising.  *See* Bus. & Prof. Code § 17204.

121.    Tiger's breach of oral contract, violations of the Consumer Legal Remedies Act (Civ. Code § 1770 *et seq.*), fraud, negligent misrepresentation, and violations of the False Advertising Law (Bus. & Prof. Code § 17500 *et seq.)* all serve as predicate actions constituting unfair competition.

WHEREFORE, Fishman and the Class pray for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

**[Violations of California Recording Law, Penal Code § 632 *et seq.*]**
**(By All Plaintiffs Who Learned that Tiger Recorded its Calls to Them One Year Or Less Before this Action was Filed, or After this Action was Filed)**
**(Against All Defendants)**

122.    Fishman hereby incorporates the foregoing paragraphs as though set forth in full herein.

123.    Fishman brings this Action within one year of learning that Tiger recorded its call to her. *See* Code Civ. Proc. § 340.

124.    Fishman is informed and believes and thereon alleges that other Class members do not know, even as of the filing of this Action, that Tiger's calls to them were being recorded, so the statute of limitations had not even started to run for the other Class members as of the filing of this Action.

125.    Penal Code § 632(a) prohibits:

> A person [from] intentionally and without the consent of all parties to a confidential communication, [using] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio . . .

126.    Penal Code § 632(c) states that a:

> "confidential communication" means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

127.    Tiger's calls to Fishman and the Class were objectively confidential communications because a reasonable consumer would expect that communications involving his or her home address and PG&E account number – which Fishman disclosed during the call but are redacted from Exhibit A – would be confined to the parties to the call.

128.    Tiger's call to Fishman was not made in any kind of public setting.

129.     Neither Fishman nor a reasonable consumer would reasonably expect that Tiger's sales call was being recorded precisely because so many other telemarketers *do* disclose that calls are being recorded.

130.     To the extent that Tiger may have called any Class members on cellular telephones, Tiger also violated Penal Code § 632.7.

131.     Although California's Recording Law is codified in the Penal Code, recipients injured by violations of the statute have standing to pursue remedies even without demonstrating that they suffered actual damages. *See* Pen. Code §§ 637.2(a), (c).

WHEREFORE, Fishman and the Class pray for judgment against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

### (Against All Defendants)

**A.   First Cause of Action for Breach of Oral Contract**

132.     Restitution to Fishman and the Class of all monies paid to Tiger in excess of what they would have paid to their former gas provider, plus statutory interest.

133.     Attorneys' fees, because by prosecuting this action, Fishman expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages. *See* Code Civ. Proc. § 1021.5.

134.     Costs of suit. *See* Code Civ. Proc. §§ 1032, 1033.5.

**B.   Second Cause of Action for Violations of the Consumers Legal Remedies Act**

135.     Actual damages to Fishman ($126.44) and to the Class of all monies paid to Tiger in excess of what they would have paid to their former gas provider, but in no case less than $1,000, plus statutory interest. *See* Civ. Code § 1780(a)(1).

136.     An Order from this Court prohibiting Tiger from engaging in the false advertising described herein. *See* Civ. Code § 1780(a)(2).

137.    Restitution to Fishman ($126.44) and to the Class of all monies paid to Tiger in excess of what they would have paid to their former gas provider, plus statutory interest. *See* Civ. Code § 1780(a)(3).

138.    Punitive damages in an amount to be determined by the jury and Court. *See* Civ. Code § 1780(a)(4).

139.    Attorneys' fees. *See* Civ. Code § 1780(3). Also, by prosecuting this action, Fishman expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages. *See* Code Civ. Proc. § 1021.5.

140.    Costs of suit. *See* Civ. Code § 1780(3) and Code Civ. Proc. §§ 1032, 1033.5.

**C.  Third Cause of Action for Fraud**

141.    Restitution to Fishman ($126.44) and to the Class of all monies paid to Tiger in excess of what they would have paid to their former gas provider, plus statutory interest.

142.    Punitive damages in an amount to be determined by the jury and Court. *See* Civ. Code § 3294.

143.    Attorneys' fees, because by prosecuting this action, Fishman expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages. *See* Code Civ. Proc. § 1021.5.

144.    Costs of suit. *See* Code Civ. Proc. §§ 1032, 1033.5.

**D.  Fourth Cause of Action for Negligent Misrepresentation**

145.    Restitution to Fishman ($126.44) and to the Class of all monies paid to Tiger in excess of what they would have paid to their former gas provider, plus statutory interest.

146.    Attorneys' fees, because by prosecuting this action, Fishman expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees

1    should not, in the interest of justice, be paid out of the recovery of damages. *See* Code Civ. Proc.

2    § 1021.5.

3    147.    Costs of suit. *See* Code Civ. Proc. §§ 1032, 1033.5.

4    **E.    Fifth Cause of Action for Violations of the False Advertising Law**

5    148.    An Order from this Court prohibiting Tiger from engaging in the false advertising

6    described herein. *See* Bus. & Prof. Code § 17535.

7    149.    Restitution to Fishman ($126.44) and to the Class of all monies paid to Tiger in excess of

8    what they would have paid to their former gas provider, plus statutory interest.

9    150.    Attorneys' fees, because by prosecuting this action, Fishman expects to enforce an

10    important right affecting the public interest and thereby confer a significant benefit on the

11    general public or a large class of persons. The necessity and financial burden of private

12    enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees

13    should not, in the interest of justice, be paid out of the recovery of damages. *See* Code Civ. Proc.

14    § 1021.5.

15    151.    Costs of suit. *See* Code Civ. Proc. §§ 1032, 1033.5.

16    **F.    Sixth Cause of Action for Unfair Competition**

17    152.    An Order from this Court prohibiting Tiger from engaging in the false advertising

18    described herein. *See* Bus. & Prof. Code § 17203.

19    153.    Restitution to Fishman ($126.44) and the Class of all monies paid to Tiger in excess of

20    what they would have paid to their former gas provider, plus statutory interest. *See* Bus. & Prof.

21    Code § 17203.

22    154.    Attorneys' fees, because by prosecuting this action, Fishman expects to enforce an

23    important right affecting the public interest and thereby confer a significant benefit on the

24    general public or a large class of persons. The necessity and financial burden of private

25    enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees

26    should not, in the interest of justice, be paid out of the recovery of damages. *See* Code Civ. Proc.

27    § 1021.5.

28    155.    Costs of suit. *See* Code Civ. Proc. §§ 1032, 1033.5.

29    156.    Disgorgement of all profits derived from unlawful advertising directed to California

30    consumers, with monies to be turned over the Unfair Competition Law Fund and used by the

31

1  California Attorney General to support investigations and prosecutions of California's consumer
2  protection laws.  *See* Bus. & Prof. Code § 17206(d).
3  **G.  Seventh Cause of Action for Violations of California Recording Law**
4  157.    Statutory damages to Fishman and the Class in the amount of $5,000 per violation, plus
5  statutory interest.  *See* Pen. Code § 637.2(a)(1).
6  158.    An Order from this Court prohibiting Tiger from making telemarketing calls to California
7  residents without disclosing that the calls are being recorded.  *See* Pen. Code § 637.2(b).
8  159.    Attorneys' fees, because by prosecuting this action, Fishman expects to enforce an
9  important right affecting the public interest and thereby confer a significant benefit on the
10  general public or a large class of persons.  The necessity and financial burden of private
11  enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees
12  should not, in the interest of justice, be paid out of the recovery of damages.  *See* Code Civ. Proc.
13  § 1021.5.
14  160.    Costs of suit.  *See* Code Civ. Proc. §§ 1032, 1033.5.
15  **H.  Additionally**
16  161.    Certification of the Proposed Class and notice thereto to be paid by Tiger.
17  162.    Fishman seeks pre-judgment and post-judgment interest.
18  163.    Fishman seeks any and all other and further relief as the Court may deem just and proper.
19
20                              **DEMAND FOR JURY TRIAL**
21  Fishman demands a trial by jury.
22
23                                      THE LAW OFFICES OF DANIEL BALSAM
24
25  Date:_____August 18, 2017_____    BY:___/s/ Daniel L. Balsam_____
26                                            DANIEL BALSAM
27                                            Attorneys for Plaintiff Emily Fishman
                                              and the Proposed Class
28
29
30
31

**CLASS ACTION COMPLAINT**

## Exhibit A

Transcript of Tiger's Call to Fishman

**Tiger Natural Gas Inc. Call to Emily Fishman, August 18, 2015**

## CSR OLIVIA BROWN

| 0:00 | TIGER NATURAL GAS INC.: Hi, this is Olivia from the Community Gas Center. I need to speak to the authorized person who handles the PG&E bill please. |
|------|------|
| 0:09 | EMILY FISHMAN: Oh.  That's, that's me. |
| 0:11 | TIGER: Well good afternoon to you.  I'm calling from the CGC customer service department regarding your PG&E account. |
| 0:18 | FISHMAN: Yeah? |
| 0:18 | TIGER: I'm just following up to give you a courtesy call regarding a notice that you received with your bill last year.  Your account is currently subject to several rate increases which already started.  The California… |
| 0:29 | FISHMAN: Which are I'm sorry? |
| 0:31 | TIGER: I said which has already started.  It started, the 18.8% increase started this year, and then you'll see another 33% increase over the next three years.  So we set up… |
| 0:41 | FISHMAN: Oh.  Why is that? |
| 0:43 | TIGER: The California Public Utilities Commission has processed that request from PG&E.  So what we do is we set up price protection for all the residential customers, which is a free service through PG&E's aggregation program, which will protect customers from the supply rate increases for the next three years. |
| 1:02 | FISHMAN: Oh.  So all customers are being subject to an increase in pricing? |
| 1:09 | TIGER: Yes.  Yes. |
| 1:10 | FISHMAN: Wow. |
| 1:11 | TIGER: Yes.  In the letter, I know most people, if you're like me, you just take your bill, you open it, you pay what you have to pay, and you throw em away or you put 'em out.  But in that letter last year… |
| 1:20 | FISHMAN: Yep.  Yep |
| 1:20 | TIGER: It was telling you, it was telling you about the subject to several rate increases and umm… |
| 1:25 | FISHMAN: Ohhhh. |
| 1:27 | TIGER: It also had that, y'know, bold print where it tells you about the 33% increase for the next three years… |
| 1:32 | FISHMAN: Got it. |
| 1:32 | TIGER: And the 10% of this year.  So basically what this program is, it's a great program because it's price protection, which gives you a variable rate based on the market price, with a cap at 69 cents.  So of course when the cost of gas is down you do get the lower rate based on the lower cost, but when that cost of gas goes up and you know, most people are subject to the change, you won't, you'll be capped at a rat, excuse me, a rate cap of 69 cents.  So say for instance if PG&E down the line in the next year paid $1.06 per therm for the gas, you wouldn't be charged $1.06 per therm for your gas.  You would be charged 69 cents because it can never go over that price. |
| 2:15 | FISHMAN: And so, to participate in the program, what does that mean?  Are you calling all of your, the PG&E customers? |
| 2:26 | TIGER: Yes, we're calling ehhhhhvery one of you guys.  Allllllll of you [Laughs].  And… |
| 2:28 | FISHMAN: Right. |
| 2:28 | TIGER: And most people they get, they're on the program, they really enjoy the |

1

**Tiger Natural Gas Inc. Call to Emily Fishman, August 18, 2015**

| | | |
|---|---|---|
| | | program, and they stay with it.  Some people feel like hey, the program's great, but it just didn't change my bill and it's still low so I don't need it, and you know, they just opt out and there's no fee for that either.  There's no fee to set it up.  It's all free.  And the only reason that PG&E can't offer you it themselves is because the California Public Utilities Commission requires that a third party company which is us, that's unaffiliated with PG&E, set up the service, because it is against the law for them to profit off the gas itself. |
| | 3:01 | FISHMAN: Interesting. Okay. Ummmm, and so to set this up, what is, what does that mean, I mean what does it take? |
| | 3:10 | TIGER: Well, to set this up, what we do, how the process works, we, I'm going to verify all this information I have and make sure it's correct in my system, but then we, we just have you have your PG&E bill handy, we go through a couple things.  First, we check to see if the services are directed to the same as on your PG&E bill, and then we |
| | 3:28 | FISHMAN: Right. |
| | 3:28 | TIGER: And then we need to know if you're with, we need to know if your bill says "current gas charges" or "current PG&E gas delivery charges," and we go over what those two things mean, and we just simply get your service agreement ID number and your rate schedule, and that's what pops up the automated system.  And she just, you know, explains to you that Tiger Natural Gas will supply your gas, because a lot of people don't know you do have the option of picking who you want your gas supplier to be.  And currently what PG&E does, every month they get their gas from just random sources, you know, and none of those gas people that they're getting it from are protected from future rate increases.  So basically they can only secure your gas for one month, and after that month, it's not secure, and then you know, you just keep, it's a monopoly.  So now they're able to deliver your gas from a supply source that's protected from rate increases for the next three years.  And that's the PG&E core gas aggregation service. |
| | 4:26 | FISHMAN: Okay.  Well, sounds good. |
| | 4:27 | TIGER: After she prompts, after she comes on the line, she's going to ask you a couple questions, and then she'll give you your confirmation number.  And I'll still be on the line with you just in case you have any questions or anything that you need to be answered that can be understand. |
| | 4:43 | FISHMAN: Right. |
| | 4:44 | TIGER: And then every year, if it's, if it's something that you would like, every year we would send you a rate increase analysis report, and that basically tells you that PG&E bought your gas from, for such and such price, but how low of a price that you paid for your gas. |
| | 5:01 | FISHMAN: Okay. |
| | 5:02 | TIGER: And we keep you, you know, updated on all the little things. I'm just going to verify, I'm showing that the service address, I only have half of it, of where PG&E delivers your gas.  I have your city as Mill Valley… |
| | 5:14 | FISHMAN: Yes. |
| | 5:15 | TIGER: I have your state as California. |
| | 5:16 | FISHMAN: Yes. |
| | 5:17 | TIGER: And I also have your zip code as 94941. |
| | 5:21 | FISHMAN: Yes. |

**Tiger Natural Gas Inc. Call to Emily Fishman, August 18, 2015**

| | |
|---|---|
| 5:22 | [CSR confirms the spelling of Fishman's name, her street address, and that she only has one account.] |
| 5:50 | TIGER: Okay, so how it works, the price protection is going to start on your next available meter read date, and once you go through the automated system and add your confirmation number [unintelligible] you will be all set. |
| 6:01 | FISHMAN: Okay. |
| 6:01 | TIGER: PG&E will then automatically start delivering your gas from a gas source providing the rate increase protection, so your gas will be protected from now on. |
| 6:09 | FISHMAN: Okay. |
| 6:09 | TIGER: And everything will stay the same with your PG&E utility service. So you'll pay that bill just like you do now. If you have any emergencies or questions, you'll still contact them. |
| 6:19 | FISHMAN: Okay. |
| 6:19 | [At TIGER's request, FISHMAN looks at her PG&E bill to provide her service agreement ID number and rate schedule.] |
| 11:21 | [TIGER and advises Fishman of a forthcoming free program that will save 25% off electricity rates and says Tiger will contact her when it's available.] |
| 12:01 | [TIGER says PG&E requires FISHMAN go through an automated verification system to verify information.] |
| 12:25 | [TIGER says it's a three-year program and automatically renews but FISHMAN can call and opt out anytime she wants. If the program isn't available, FISHMAN will receive a variable rate pricing that's competitive with utilities, lower rate even when utility charges more.] |
| 12:55 | [TIGER says nothing changes with PG&E service, source of gas will be Tiger Natural Gas, who is registered with PG&E. PG&E utility service remains the same.] |
| 13:09 | [TIGER explains more on automated verification.] |
| 14:08 | [TIGER transfers FISHMAN to automated verification system.] |

**AUTOMATED SYSTEM**

| | |
|---|---|
| 0:00 | [Verification system confirms enrollment date, time, first & last name, service & mailing address, gas service ID #] |
| 1:25 | SYSTEM: Tiger will provide your natural gas supply in PG&E's core gas aggregation program, and you'll be guaranteed to receive reliable service, starting on your next available meter read. Tiger is an unaffiliated CTA that has completed PG&E's certification process. Your natural gas supply will receive price protection with a rate cap of 69 cents per therm for the next 36 months. PG&E will continue to deliver your natural gas, send your monthly PG&E bill, and provide the exact same utility service. If you understand and wish to enroll your gas accounts with Tiger as your natural gas supplier, please say "yes" after the tone and then press the pound key. |
| 2:14 | FISHMAN: Yes. # |
| 2:16 | SYSTEM: Accepted customers will be sent a confirmation letter and terms and conditions within three business days. Price protection will be applied to your gas supply and does not include PG&E's delivery charges; taxes; daily, quarter, and capacity costs. You can rescind this enrollment within three business days or cancel at any time |

3

**Tiger Natural Gas Inc. Call to Emily Fishman, August 18, 2015**

|  |  |
|---|---|
|  | by contacting the Tiger enrollment agency at 888-ENERGY-HELP. If you understand, and you are the customer of record or an authorized person to choose a natural gas supplier, please say "yes" after the tone, and then press the pound key. |
| 3:01 | FISHMAN: Yes. # |
| 3:03 | SYSTEM: Your confirmation number is 5004285. Your confirmation number is 50004285. |

<u>Exhibit B</u>

Tiger's Terms & Conditions as of June 2016

# Natural Gas Purchase Agreement

### 1. Nature of Service:

Seller, Tiger, Inc., agrees to sell and Buyer agrees to purchase and receive natural gas to serve 100% of the gas requirements for location indicated in the form of guaranteed supply on a Firm basis.

### 2. Term:

Term of this Agreement shall commence and become effective the date of first gas deliveries available thereafter for 36 months, with yearly renewals thereafter unless canceled by either party upon 60 days written notice prior to yearly renewal.

### 3. Quantity:

Seller shall deliver or cause to be delivered to Buyer all natural gas requirements each month during the term including applicable LDC shrinkage.

### 4. Price:

The sale price shall be NGI Bidweek Survey index for California PG&E Citygate plus $0.75 per MMBtu, based on historical usage with option to trigger fixed price for a fixed volume. Shortage/surplus gas will be bought/sold and priced at Gas Daily PG&E Citygate absolute high/low during the delivery month, unless otherwise agreed to by both parties. A written Transaction Confirmation shall be executed by both parties after a fixed price has been triggered to confirm agreed upon terms. There will be a $.05 per day customer fee passed to Buyer for having Tiger's charges attached to PG&E's bill.

### 5. Delivery Point:

The point of delivery shall be PG&E Citygate. Tiger shall be responsible to purchase and pay for the firm transportation and all other cost associated with the transportation rates for delivery to the Citygate. Title to all gas shall pass from Seller to Buyer at the delivery point.

### 6. Quantity and Measurement:

All gas shall be measured in accordance with currently acceptable industry standards and shall meet the quality and BTU specification of the transporting pipelines.

### 7. Warranty of Title:

Seller warrants its title and right to sell all natural gas delivered here under and warrants that such gas shall be free and clear from liens and adverse claims and is in conformity with all valid laws, order, rules and regulations of duly constituted authorities having jurisdiction.

### 8. Billing and Payment:

Seller uses PG&E Consolidated Billing to bill and collect from Buyer. Seller's charges and applicable taxes will be included as separately identifiable charges on the Buyer's PG&E bill. Buyer shall render payment for combined PG&E and Seller charges to PG&E. Bills for service are due and payable upon presentation and will be considered past due if payment is not received by PG&E within 15 days after the bill is

transmitted. If payment is not made by the Buyer within 15 days, Seller reserves the right to separately bill interest on the unpaid balance at the rate of 1.5% per month (18% annualized rate) from the past due date until the past due balance is received. If Buyer fails to pay thirty (30) days after payment is due, Seller, in addition to any other remedy it may have hereunder, may suspend further delivery of gas until such amount is paid in full.

**9. Force Majeure:**

Neither party hereto shall be liable for any failure or performance due to causes beyond its reasonable control, the occurrence of which could not have been prevented by the exercise of due diligence, such as acts of God, acts of the other party, acts of civil or military authority, fires, strikes, floods, epidemics, war or riot.

**10. Assignment:**

This contract may not be assigned without the written consent of both parties. Such consent shall not be unreasonably withheld or delayed.

**11. Governing Laws:**

This contract shall be governed by the laws of the State of Oklahoma.

**12. Taxes:**

The price shall include taxes imposed prior to the delivery point. All other taxes shall be passed through to Buyer unless Seller is supplied an appropriate city, state or federal certificate of tax-exemption.

**13. Liability:**

Seller, TIGER, shall be liable for furnishing all gas requirements for Buyer on a firm basis (as outlined above), along with providing nomination data. Early termination damages may apply.

<u>Exhibit C</u>

Page From Tiger's Website as of July 2016

Tiger Natural Gas » PG&E Landing Page                    http://tigernaturalgas.com/switch-pge-customer-service/



INFO@TIGERNATURALGAS.COM
1.888.875.6122

| HOME | ABOUT | SERVICES | TESTIMONIALS | NEWS | FAQ | CONTACT | PARTNERS | AFFILIATES |



QUESTIONS?
Give us a call.
(888) 875.6122 ext. 4

**SEARCH TIGER**

[ SEARCH ]

**WHY TIGER?**

Why do over 30,000 Customers choose Tiger?



Proven performance
Cost savings
Customer service
20 years in business
Minority-owned business
A+ BBB Rating

 

### GET CONSISTENT ENERGY SAVINGS.
**JOIN 25,000 PG&E CUSTOMERS SAVING 9-15%* EVERY YEAR.**

Thousands of PG&E customers are lowering their energy bills and getting better customer service by switching to Tiger. As the largest third-party core natural gas provider in the PG&E area, we have a 20-year track record of consistent savings.

It's easy to make the switch. After you sign up, you continue to receive one bill from PG&E, with Tiger listed as your supplier.

 SIGN UP FOR HOME           SIGN UP FOR BUSINESS


SEE SAMPLE COST SAVINGS


SEE SAMPLE COST SAVINGS



**California Restaurant Association**
"The economic climate is tougher


**Better Business Bureau**
A+ Customer Service Rating


**PepsiCo Inc.**
"Tiger's attention to detail has

1 of 2                                                                    7/19/16, 1:29 PM

Tiger Natural Gas » PG&E Landing Page                    http://tigernaturalgas.com/switch-pge-customer-service/

than anything we've seen in
recent history, and yet still Tiger
is committed to flexible and
responsive service."

**Jot Condie**
*President & CEO*

20 years good standing
ZERO complaints

helped us control overhead
costs. Their pricing is
consistently competitive and
they provide flexibility in their
contract terms."

**Daniel P. Lopez**
*Energy Procurement Manager*

*\*\*Most Tiger customers save 9 to 15% or more, year after year.*

Home | Services | Service Area | FAQs | Testimonials | Community | Help | Sitemap | Contact Us | Privacy Policy

**918.491.6998**
**1.888.875.6122**
**info@tigernaturalgas.com**
1422 East 71st Street
Tulsa, OK 74136-5060

©2015 Tiger Natural Gas.
Website Design by **Aqua Vita**






Enter your email here

SIGN UP



<u>Exhibit D</u>

Oklahoma BBB's Webpage for Tiger as of July 2016

Overview > Accredited Business Directory > Natural Gas Companies > Tiger Natural Gas, Inc.

# BBB Business Review

**BBB ACCREDITED BUSINESS SINCE 5/1/2008**

## Tiger Natural Gas, Inc.

Phone: (918) 491-6998

*View Additional Phone Numbers*

1422 East 71st Street  Suite J, Tulsa, OK 74136

https://tigernaturalgas.com/

 

**On a scale of A+ to F**
Reason for Rating
BBB Ratings System Overview

*BBB Business Reviews may not be reproduced for sales or promotional purposes.*

### Request a Quote

Request a Quote from Tiger Natural Gas, Inc.

## BBB Accreditation

A BBB Accredited Business since 5/1/2008

BBB has determined that Tiger Natural Gas, Inc. meets BBB accreditation standards, which include a commitment to make a good faith effort to resolve any consumer complaints. BBB Accredited Businesses pay a fee for accreditation review/monitoring and for support of BBB services to the public.

BBB accreditation does not mean that the business' products or services have been evaluated or endorsed by BBB, or that BBB has made a determination as to the business' product quality or competency in performing services.

## Reason for Rating

BBB rating is based on 13 factors. Get the details about the factors considered.

Factors that *raised* the rating for Tiger Natural Gas, Inc. include:

Length of time business has been operating
Complaint volume filed with BBB for business of this size
Response to 20 complaint(s) filed against business
Resolution of complaint(s) filed against business

## Customer Complaints Summary

**Read complaint details**

20 complaints closed with BBB in last 3 years | 10 closed in last 12 months

| Complaint Type | Total Closed Complaints |
| --- | --- |
| Advertising/Sales Issues | 4 |
| Billing/Collection Issues | 4 |
| Delivery Issues | 2 |
| Guarantee/Warranty Issues | 0 |
| Problems with Product/Service | 10 |
| Total Closed Complaints | 20 |

Read Complaints | Definitions | BBB Complaint Process | File a Complaint against Tiger Natural Gas, Inc.
See Trends in Complaints on Tiger Natural Gas, Inc. | View Complaints Summary by Resolution Pie Chart on
Tiger Natural Gas, Inc.

## Customer Reviews Summary

**Read customer reviews**

1 Customer Review on Tiger Natural Gas, Inc.

| Customer Experience | Total Customer Reviews |
| --- | --- |
| Positive Experience | 0 |
| Neutral Experience | 0 |
| Negative Experience | 1 |
| Total Customer Reviews | 1 |

Read Customer Reviews | Submit a Customer Review | See Trends in Customer Reviews on Tiger Natural Gas,
Inc.

## Government Actions

BBB knows of no government actions involving the marketplace conduct of Tiger Natural Gas, Inc..

What government actions does BBB report on?

## Advertising Review

BBB has nothing to report concerning Tiger Natural Gas, Inc.'s advertising at this time.

Tiger Natural Gas, Inc. Review - Natural Gas Companies in Tulsa...    http://www.bbb.org/tulsa/business-reviews/natural-gas-companies/t...

What is BBB Advertising Review?

## Additional Information

BBB file opened: March 03, 2005
Business started: 05/15/1991
Business started locally: 05/15/1991
Business incorporated 01/01/1991 in OK

**Type of Entity**
Corporation

**Business Management**
Lori Nalley, Owner/President
Mr. Johnathan Burris, Manager
Ms. Rachel Harvick, Operations

**Contact Information**
Customer Contact: Mr. Johnathan Burris, Manager
Principal: Lori Nalley, Owner/President

**Business Category**
Natural Gas Companies



Directions | Enlarge

## Customer Review Rating plus BBB Rating Summary

Tiger Natural Gas, Inc. has received 3.68 out of 5 stars based on 1 Customer Reviews and a BBB Rating of A+.



BBB Customer Review Rating plus BBB Rating Overview

## QUICK LINKS

What is a BBB Business Review?

BBB Reporting Policy

About Enhanced Services

File a Complaint against Tiger Natural Gas, Inc.

Request a Quote from Tiger Natural Gas, Inc.

Accredited Business Directory

## CUSTOMER REVIEWS

Read Customer Reviews

Submit a Customer Review

See trends in Customer Reviews for Tiger Natural Gas, Inc.

7/22/16, 3:46 PM

COPY

1   Daniel L. Balsam (State Bar No. 260423)
2   THE LAW OFFICES OF DANIEL BALSAM
    2601C Blanding Avenue #271
3   Alameda, CA 94501
    Tel: (415) 869-2873
4   Fax: (415) 869-2873
5   Email: legal@danbalsam.com

6   Jacob Harker (State Bar No. 261262)
7   LAW OFFICES OF JACOB HARKER
    582 Market Street, Suite 1007
8   San Francisco, CA 94104
9   Tel: (415) 624-7602
    Fax: (415) 684-7757
10  Email: jacob@harkercounsel.com

11

12  Attorneys for Plaintiffs and the Proposed Class

13

FILED

AUG 18 2017

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

14          SUPERIOR COURT OF THE STATE OF CALIFORNIA

15          COUNTY OF MARIN (UNLIMITED JURISDICTION)

16  EMILY FISHMAN, individually and on          ) Case No.:   CIV 1703054
17  behalf of all others similarly situated;     )
                                                 )
18                  Plaintiffs,                   ) PLAINTIFF'S AFFIDAVIT OF PROPER
19          v.                                    ) VENUE
                                                 )
20  TIGER NATURAL GAS INC., an Oklahoma          ) Cal. Civ. Code § 1780(d)
21  corporation; and                             )
    DOES 1-100;                                  )
22                                               )
                                                 )
23                  Defendants.                   )

24

25  I, Emily Fishman, declare:

26  1.   I am the Plaintiff and putative Class Representative in this lawsuit.

27  2.   California Civil Code § 1780(d) states:

28          An action under subdivision (a) or (b) may be commenced in the county in which
            the person against whom it is brought resides, has his or her principal place of
29          business, or is doing business, or in the county where the transaction or any
            substantial portion thereof occurred.
30

31          In any action subject to this section, concurrently with the filing of the complaint,
            the plaintiff shall file an affidavit stating facts showing that the action has been

                                                 1
                        PLAINTIFF'S AFFIDAVIT OF PROPER VENUE

1    commenced in a county described in this section as a proper place for the trial of
2    the action.

3    3.    I am and was all relevant times a resident of Mill Valley, Marin County, California.

4    4.    I am informed and believe and thereon allege that Defendant Tiger Natural Gas Inc.

5    ("Tiger") does business in Marin County.  The oral contract between Tiger and me was made in

6    Marin County, and the subsequent transactions – my purchase of Tiger natural gas and the

7    delivery of Tiger natural gas to me for nine months – occurred in Marin County.

8    5.    For the above reasons, venue is proper in Marin County.

9

10   I declare under penalty of perjury under the laws of the State of California and the United States

11   of America that the foregoing is true and correct, and that this declaration was executed in Mill

12   Valley, Marin County, California.

13

14   Dated:_____Aug 17, 2017_____          By:_emily fishman (Aug 17, 2017)_____

15                                                          Emily Fishman

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

**2**



## MARIN COUNTY SUPERIOR COURT
P.O. Box 4988
San Rafael, CA 94913-4988

PLAINTIFF: Emily Fishman

vs.

DEFENDANT: Tiger Natural Gas

CASE NO. CIV1703054

### NOTICE OF CASE
### MANAGEMENT CONFERENCE
### (CIVIL)

(Pursuant to Government Code Section 68600 et seq.)

*Pursuant to Local Rule 1.3, the plaintiff must serve a copy of this Notice of Case Management Conference, a blank Case Management Statement (Judicial Council Form CM-110), a blank Notice of Settlement of Entire Case (Judicial Council Form CM-200), and an Alternative Dispute Resolution (ADR) Informational Notice (CV006) together with the complaint on all parties.*

This case is assigned for all purposes to Judge ___Haakenson___ in Courtroom ___E___.

1.  The parties/counsel to this action shall comply with the filing and service deadlines in Local Rule 1.5 and California Rule of Court 3.110, or appear at the Order to Show Cause hearing on the dates set forth below:

    Failure to File Proof of Service            10 / 27 / 17    8:30 / 9:00 A.M.

    Failure to Answer                           11 / 29 / 17    8:30 / 9:00 A.M.

2.  Parties must appear for Case Management Conference on    12 / 29 / 17    8:30 / 9:00 A.M.

3.  The parties must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. **Counsel must discuss ADR options with their clients prior to attending the Case Management Conference** and should be prepared to discuss with the court their authority to participate in ADR.

4.  Case Management Conference Statements must be filed with the court and served on all parties <u>at least 15 calendar days</u> before the Case Management Conference. **(Late filing may result in the issuance of sanctions.)**

*Distribution: Original - Court File; Canary - Plaintiff*

**MARIN COUNTY SUPERIOR COURT**
3501 Civic Center Drive
P.O. Box 4988
San Rafael, CA 94913-4988
(415) 444-7040



### ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATIONAL NOTICE
(California Rule of Court 3.221)

**The plaintiff <u>must</u> serve a copy of this notice with the complaint on all parties to this case.**

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial.  Using ADR may have a variety of benefits, depending on the type of ADR process used and the  circumstances of the particular case.

## ADVANTAGES OF ADR

### Save Time
A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

### Save Money
When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

### Increase Control Over the Process and the Outcome
In ADR, parties typically play a greater role in shaping both the process and its outcome.  In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial.  Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

### Preserve Relationships
ADR can be a less adversarial way to resolve a dispute.  For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

### Increase Satisfaction
In a trial, there is typically a winner and a loser.  The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome.  ADR can help the parties find win-win solutions and achieve their real goals.  This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

## DISADVANTAGES OF ADR

If the case is resolved using ADR, the parties forgo their right to a public trial and they do not receive a decision by a judge or jury.  If the case is not resolved using ADR and it proceeds to trial, the overall costs of the case may increase.

## TYPES OF ADR

### Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute.  The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves.  Mediation leaves control of the outcome with the parties.

### Settlement Conferences

Settlement conferences may be either mandatory or voluntary.  In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute.  The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  Settlement conferences are appropriate in any case where settlement is an option.  Mandatory settlement conferences are often held close to the date a case is set for trial.

### Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are often relaxed.  Arbitration may be either "binding" or "nonbinding."  *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final.  Generally, there is no right to appeal an arbitrator's decision.  *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

### Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator."  The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved.  The evaluator is often an expert in the subject matter of the dispute.  Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

## LOCAL ADR PROGRAMS

For a Directory of Mediators and Arbitrators or information about the Modest Means Mediation Program, contact the Marin County Bar Association (MCBA) by calling (415) 499-1314 or emailing *info@marinbar.org*.  Additional information is also available on the MCBA website:  *www.marinbar.org*.

## STIPULATION TO USE ADR

If all parties in the action agree to participate in ADR, a *Stipulation to Use Alternative Dispute Resolution Process (CV002)* may be filed with the court.  This form is available at *www.marincourt.org* or in the Clerk's Office.

Please note, **you are required to complete and submit the *Notice of Settlement of Entire Case (Judicial Council Form CM-200)* within 10 days of the resolution of your case.**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address and telephone #):* | *FOR COURT USE ONLY* |
|---|---|
| STATE BAR NO:<br>ATTORNEY FOR *(Name):*<br>**MARIN COUNTY SUPERIOR COURT**<br>3501 Civic Center Drive<br>P.O. Box 4988<br>San Rafael, CA 94913-4988 | |

| **STIPULATION TO USE**<br>**ALTERNATIVE DISPUTE RESOLUTION PROCESS** | CASE NUMBER: |
|---|---|

The parties to the above action have stipulated that this case is submitted for Alternative Dispute Resolution to be decided at the Case Management Conference.


_____          _____

*DATE*                                               *PLAINTIFF'S SIGNATURE*


_____          _____

*DATE*                                               *RESPONDENT'S SIGNATURE*


*Distribution:  Original - Court File*

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to the within action; my business address is 120 Broadway, Suite 300, Santa Monica, CA 90401-2386.

On September 15, 2017, I served the foregoing document: **NOTICE OF REMOVAL OF STATE COURT ACTION UNDER 28 U.S.C. §§ 1332 AND 1453** on the interested party in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Daniel L. Balsam<br>**THE LAW OFFICES OF DANIEL BALSAM**<br>2601C Blanding Avenue #271<br>Alameda, CA 94501<br><br>Tel:     (415) 869-2873<br>Fax:     (415) 869-2873<br>Email:   legal@danbalsam.com | *Attorney for Plaintiffs*<br>*and the Proposed Class* |
| Jacob Harker<br>**THE LAW OFFICES OF JACOB HARKER**<br>582 Market Street, Suite 1007<br>San Francisco, CA 94104<br><br>Tel:     (415) 624-7602<br>Fax:     (415) 684-7757<br>Email:   Jacob@harkercounsel.com | *Attorney for Plaintiffs*<br>*and the Proposed Class* |

☒     (BY MAIL)  I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above.  I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Santa Monica, California.  I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☒     (BY ELECTRONIC SERVICE) - By electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing (NEF) to all parties with an e-mail address of record, who have filed a Notice of Consent to Electronic Service in this action

☒     FEDERAL:  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 15, 2017, at Santa Monica, California

*/s/ Martha Alicia Parga*
Martha Alicia Parga

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386