IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMILY FISHMAN and SUSAN FARIA, individually and on behalf of others similarly situated,

Plaintiffs,

v.

TIGER NATURAL GAS, INC. and COMMUNITY GAS CENTER INC.,

Defendants.

No. C 17-05351 WHA

**ORDER GRANTING IN PART MOTION TO DISMISS AND MOTION TO STRIKE**

## INTRODUCTION

In this putative class action, defendant moves to dismiss or, in the alternative, strike portions of plaintiffs' second amended complaint. For the reasons set forth below, defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART** and its motion to strike is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Prior to 2015, plaintiffs Susan Faria and Emily Fishman purchased natural gas from PG&E. Around April and August of that year, respectively, defendant Tiger Natural Gas, Inc., through its agent defendant Community Gas Center Inc., called plaintiffs to solicit them to buy natural gas from Tiger through its price protection program. During those sales calls, defendants represented that Tiger customers would be charged a variable rate for natural gas

based on the market price, but with a price cap of $0.69 per therm (SAC ¶¶ 12, 16–18, 45–46; Exh. A).

When a customer bought natural gas from Tiger, PG&E still delivered the gas over its existing pipes. Accordingly, while PG&E customers had a single line item for "gas charges" on their utility bills, Tiger customers had separate line items for PG&E gas delivery charges and Tiger gas procurement charges. Defendants represented during their sales calls that PG&E had recently increased its rates on natural gas, and that it would continue to do so in the coming years. In reality, however, the California Public Utilities Commission had only approved a rate increase for gas delivery, not for gas procurement, an important distinction. Moreover, PG&E's rates for gas procurement were in fact decreasing. Because Tiger's price cap only applied to the gas procurement rate, and not the gas delivery rate, these statements made Tiger's price cap seem more beneficial (SAC ¶¶ 13, 24–28).

In reliance on defendants' representations, plaintiffs switched their gas procurement from PG&E to Tiger. With respect to the procurement rate actually charged under the program, Tiger added a large surcharge to the market rate for natural gas, thereby charging plaintiffs more for gas than they would have otherwise been charged by PG&E. Moreover, although defendants advertised the program as "free," Tiger added a $0.05 daily charge on customers' utility bills (SAC ¶¶ 14, 30–31, 37, 50, 52).

Plaintiffs further allege that defendants' misrepresentations during these calls violated PG&E Gas Rule 23. Gas Rule 23, entitled "Gas Aggregation Service for Core Transportation Customers," sets forth certain mandates governing the supply of natural gas to residential and small commercial customers within PG&E's territory. Plaintiffs describe Gas Rule 23 as a contract between Tiger and PG&E but defendant describes it as a tariff. However that may be, pursuant to Gas Rule 23, Core Transport Agents such as Tiger act as retail gas service providers that compete with PG&E to provide customers alternative rates and rate structures.

To make matters worse, defendants recorded these sales calls despite not asking plaintiffs for consent to do so (or otherwise disclosing that the calls were recorded). Faria

2

received a sales call from defendants even though she had placed her home number on the Do-Not-Call list in 2004 (SAC ¶¶ 19, 46–49).

After the sales calls concluded, an automated verification system asked plaintiffs for their consent to record a second call. The automated system also stated that Tiger would mail plaintiffs a copy of the price protection program's terms and conditions. Plaintiffs do not remember receiving such a mailing (SAC ¶¶ 43, 50).

Based on these allegations, plaintiffs bring claims on behalf of proposed sub-classes for: (1) violations of the California Recording Law; (2) violations of the Telephone Consumer Protection Act; (3) breach of oral contract; (4) breach of third-party beneficiary contract (Gas Rule 23); (5) violations of the Consumer Legal Remedies Act; (6) fraud; (7) negligent misrepresentation; (8) false advertising; and (9) unfair competition.

In August 2017, plaintiff Fishman filed her original complaint against Tiger in state court, which action Tiger removed to this district. After Tiger sought to dismiss Fishman's original complaint, Fishman filed a first amended complaint in which Faria intervened as an added plaintiff and Community Gas Center was named as a new defendant. The parties eventually stipulated to plaintiffs filing the second amended complaint (the operative complaint), which first raised Gas Rule 23. Tiger now moves to dismiss and to strike the second amended complaint (Dkt. No. 1, 13, 29, 49–50). This order follows full briefing and oral argument.

**ANALYSIS**

1.  **JUDICIAL NOTICE.**

Tiger seeks judicial notice of three documents: (1) PG&E Gas Rule 23; (2) Gas Schedule G-CT; and (3) a sample Core Gas Aggregation Service Agreement (Dkt. No. 51). Plaintiffs seek judicial notice of these same documents, all of which are publically available and the first two of which are incorporated by reference into the operative complaint (Dkt. No. 63). A court may take judicial notice of any fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). The parties' requests for judicial notice are accordingly **GRANTED**.

3

**2. FAILURE TO STATE A CLAIM.**

**A. California Recording Law Claim.**

Tiger moves to dismiss plaintiffs' California Recording Law claim on the ground that the second amended complaint fails to allege that defendants' sales calls were protected confidential communications. Section 632(c) of the California Penal Code defines "confidential communication" as:

> [A]ny communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Confidentiality requires "the existence of a reasonable expectation by one of the parties that no one is 'listening in' or overhearing the conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 772–73 (2002). This test is an objective one, and a plaintiff's subjective expectation of a private communication accordingly has little bearing. *Id.* at 776–77.

Tiger argues that plaintiffs' allegations regarding the sales calls — namely that (1) the parties discussed plaintiffs' PG&E account information, (2) the calls were not made in a public setting, and (3) many other telemarketers disclose that calls are recorded — are insufficient to allege an objectively reasonable expectation of confidentiality. But unlike the facts presented in Tiger's authorities, here, the plaintiffs sufficiently allege personalized calls which involved the disclosure of personal information.

In *Weiner*, for example, the exchange between the parties "barely amounted to a communication or conversation." The plaintiff was not the defendant's customer and did not disclose personal information, and the defendant had not even called to speak with the plaintiff but rather asked for his ex-employee. *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1033 (S.D. Cal. 2012) (Judge M. James Lorenz). Similarly, in *Rorty*, the phone call at issue did not concern the plaintiff's personal financial affairs, but rather consisted of non-personalized sales pitches regarding available products. *Rorty v. Quicken Loans Inc*, No. 12-cv-00560, 2012 WL 12886842, at *4 (C.D. Cal. July 3, 2012) (Judge Gary Feess).

4

And in *Faulkner v. ADT Security Servsices, Inc.*, No. 11-cv-00968, 2011 WL 1812744, at *4 (N.D. Cal. May 12, 2011) (Judge Jeffrey White), the district court found that in light of the defendant's business (home security) and the character of the telephone call (a billing dispute), the plaintiff had no objectively reasonable expectation that the call would not be recorded or monitored. In so concluding, Judge White distinguished the case from *Membrila v. Receivables Performance Management, LLC*, No. 09-cv-2790, 2010 WL 1407274 (S.D. Cal. April 6, 2010) (Judge Irma Gonzalez), where a call initiated by a debt collector discussed the plaintiff's debt and salary in an attempt to collect payment, which circumstances Judge White agreed supported a reasonable expectation of confidentiality.

Here, plaintiffs allege that defendants initiated a personalized call in which they were invited to discuss their PG&E accounts, including confirmation of their home addresses, account numbers, and rate schedule. This case more closely resembles *Membrila* and *Kearney v. Saloman Smith Barney Inc.*, 39 Cal. 4th 95, 118 n.10 (2016), where the California Supreme Court recognized that callers to financial advisors had a reasonable expectation of privacy in their conversations in light of the "strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls." Construing the complaint in the light most favorable to plaintiffs, this order finds that plaintiffs had an objectively reasonable expectation that their calls with defendants would not be overheard or recorded. Tiger's motion to dismiss this claim is **DENIED**.

### B. Telephone Consumer Protection Act Claim.

Tiger next moves to dismiss plaintiffs' TCPA claim on the ground that Faria fails to allege that she received more than one call in a 12-month period.

The TCPA establishes a claim for relief for any user who receives "more than one telephone call within any 12-month period by or on behalf of the same entity" at a number on the Do-Not-Call list. 47 U.S.C. § 227(c)(5). The TCPA also provides a private right of action for violations of Section 227(b) and regulations promulgated thereunder, which prohibit calls (other than for an emergency) to cellphone numbers by way of an automatic telephone dialing system (ATDS) without the prior express consent of the called party.

5

Faria does not dispute that she only alleges having received a single call from defendants. Rather, she argues that because defendants allegedly made the sales call using "an automatic telephone dialing system," she has a private right of action under Section 227(b) and its accompanying regulations. Contrary to plaintiffs, however, 47 C.F.R. § 64.1200(c) — which concerns calls to numbers on the Do-Not-Call list — was promulgated under Section 227(c), *not* Section 227(b). *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200, 2016 WL 1559717, at *6 (N.D. Cal. Apr. 18, 2016) (Judge Laura Beeler). Faria may not rely on this provision to state a claim under Section 227(b).

Because Faria fails to allege that she received more than one call during a 12-month period, her claim under the TCPA fails as a matter of law. Tiger's motion to dismiss this claim is **GRANTED**.

### C. Third-Party Beneficiary Contract Claim.

Tiger argues that plaintiffs' claim for breach of third-party beneficiary contract should be dismissed because Gas Rule 23 is a tariff, not a contract between Tiger and PG&E. "Tariffs" refer collectively to the sheets that a utility must file, maintain, and publish as directed by the CPUC, and that set forth the terms and conditions of the utility's services to its customers. *Davis v. S. California Edison Co.*, 236 Cal. App. 4th 619, 623 n.6 (2015) (quotes and citations omitted). This order agrees that Gas Rule 23 is a "tariff rule." *N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-cv-02575, 2016 WL 5358590, at *10 n.4 (N.D. Cal. Sept. 26, 2016) (Judge Haywood Gilliam, Jr.). Once a tariff is approved by CPUC, "[t]he law, not a contract between the parties, prescribes the classifications, rates and liabilities attendant thereon." *Trammell v. W. Union Tel. Co.*, 57 Cal. App. 3d 538, 550 (1976). Because plaintiffs fail to allege an enforceable contract, their third-party beneficiary claim must be dismissed.

Plaintiffs respond that even if Gas Rule 23 is a tariff, the Core Gas Aggregation Service Agreement entered into between Tiger and PG&E expressly incorporates Gas Rule 23. Plaintiffs therefore seek leave to amend their complaint to assert a claim for breach of the CGAS Agreement, rather than a breach of Gas Rule 23. Tiger agrees that a tariff can supply the terms of a contractual agreement. It disputes, however, that plaintiffs are able to sufficiently

6

plead that they are the intended beneficiaries of the CGAS Agreement. Plaintiffs, while conceding that they are not expressly named therein, rely on the Rule's provisions entitled "Customer Protection," "Non-Compliance with Customer Protection," and "Third Party Verification" to show that plaintiffs are not merely incidental beneficiaries.

Leave to amend may be denied if it appears to be futile. A proposed amendment is futile, however, only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). While plaintiffs' current allegations may be insufficient to show that they are intended beneficiaries under the CGAS Agreement, that possibility has not been negated. A full determination should instead be made on a motion for leave to amend. Tiger's motion to dismiss this claim is **GRANTED**.

### 3. EXCLUSIVE JURISDICTION.

In light of plaintiffs' invocation of Gas Rule 23 in the second amended complaint, Tiger now moves to dismiss the action on the grounds that the California Public Utilities Commission (CPUC) has exclusive jurisdiction to hear plaintiffs' claims. Section 1759(a) of the California Public Utilities Code provides that no court, except for the California Supreme Court or a California court of appeal, has jurisdiction to interfere with the authority of the CPUC in the performance of its official duties. To determine whether Section 1759(a) bars a plaintiff's claim, courts must consider: (1) whether CPUC has the authority to adopt a regulatory policy on the issue in question; (2) whether CPUC has exercised that authority; and (3) whether the current action would hinder or interfere with CPUC's exercise of its regulatory authority. *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893, 923–35 (1996) ("*Covalt*").

This order finds that — with the exception of plaintiffs' claims for injunctive relief — CPUC does not have exclusive jurisdiction over this action. Plaintiffs do not dispute that California law authorizes CPUC to regulate the subject matter of this action. They also do not dispute that CPUC has actually exercised this authority by approving Gas Rule 23, which contains several consumer protection provisions and protocols regarding the resolution of

customer complaints. The parties dispute, however, whether adjudication of plaintiffs' claims would "hinder or interfere" with CPUC's exercise of regulatory authority.

Tiger contends that resolution of plaintiffs' claims requires the interpretation, evaluation, and application of Gas Rule 23, which in turn interferes with CPUC's exclusive right to interpret its own regulations. Plaintiffs respond that Gas Rule 23 is, at most, integral to their breach of third-party contract claim, but that in any event the application of Gas Rule 23 in this case would not "hinder or interfere" with CPUC's authority.

Courts are not precluded from acting in aid of, rather than in derogation of, CPUC's jurisdiction. *Hartwell Corp. v. Superior Court*, 27 Cal. 4th 256, 275 (2002). Courts may therefore entertain actions which seek to enforce, rather than challenge, obligations created by CPUC. *N. Star Gas Co.*, 2016 WL 5358590, at *13. Even where a plaintiff only seeks to enforce a CPUC rule, however, "the action is impermissible if its adjudication requires courts to determine how, or even whether, an ambiguous CPUC rule applies" because such a determination amounts to policymaking that hinders or interferes with CPUC's exercise of jurisdiction. *Ibid.*

With respect to plaintiffs' damages claims, only their breach of third-party contract and unfair competition claims require the application of Gas Rule 23. But even as to those claims, this action does not present complex questions of interpretation, require the application of ambiguous provisions, or require decisions on policy questions. Rather, plaintiffs simply assert that defendants violated the express provisions of Gas Rule 23 by misrepresenting aspects of Tiger's price protection program, failing to disclose certain of the program's terms, and failing to send plaintiffs the required written terms and conditions. A damages award as to any of plaintiffs' claims would not hinder or impede any policy adopted by CPUC.

It may be, however, than an injunction would interfere with the CPUC's regulatory function. If and when the time comes for injunctive relief, there will be time enough to consider this problem. For now, it is premature. Tiger's motion to dismiss plaintiffs' claims under the exclusive jurisdiction doctrine is accordingly **DENIED**.

8

### 4. FILED-TARIFF RULE.

The filed-rate rule, also known as the filed-tariff rule, applies in regulated industries where *federal law* requires a common carrier to publicly file schedules of services and the rates or tariffs to be charged for those services. *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1084 (9th Cir. 2006). The rules requires that common carriers and their customers adhere to tariffs filed and approved by appropriate regulatory agencies, and bars suits that would "invalidate, alter or add to the terms of the filed tariff." *Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000).

Tiger does not contend that California law recognizes a state equivalent to the filed-tariff rule. Rather, Tiger argues that plaintiffs' claims challenge conduct required under Gas Rule 23 and that, accordingly, the entire complaint is barred. Contrary to Tiger, however, plaintiffs' allegations do not demonstrate Tiger's compliance with Gas Rule 23. Nor do plaintiffs' claims challenge conduct mandated by that rule.

On a motion to dismiss, district courts must take the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). As alleged, Tiger failed to comply with multiple subsections of Gas Rule 23. Among other things, Tiger misled plaintiffs regarding its price protection program's terms and benefits, failed to disclose certain of the program's terms, and failed to send written confirmation of the program's conditions. Tiger wholly fails to explain how these alleged misrepresentations and omissions were required under Gas Rule 23. Moreover, as a review of the complaint demonstrates, these same misrepresentations and omissions help form the basis of plaintiffs' CLRA, fraud, negligent misrepresentation, false advertising, and unfair competition claims.

Tiger is also unable to avoid plaintiffs' California Recording Law claim on the ground that Gas Rule 23 required Tiger to maintain recordings of customer sales calls. Tiger contends (without citation to any authority) that this provision's inclusion in Gas Rule 23 reflects CPUC's view that such sales calls are not "confidential communications" protected by the California Recording Law. While Tiger may ultimately rely on Gas Rule 23's provisions to

9

argue that any expectation of confidentiality held by plaintiffs was unreasonable, this provision alone does not *mandate* conduct prohibited by the California Recording Law. Tiger's motion to dismiss the complaint on this ground is accordingly **DENIED**.

### 5. MOTION TO STRIKE.

Under FRCP 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matter is that which "has no essential or important relationship to the claim for relief or the defenses being pleaded." 5 Miller & Wright, Federal Practice and Procedure § 1382. Motions to strike are viewed negatively because of the limited import of the pleadings under the Federal Rules. Such motions "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (Judge Spencer Williams).

*First*, Tiger seeks to strike the allegations in the second amended complaint relating to the claims dismissed in this order for failure to state a claim. Plaintiffs do not contest that dismissed claims are properly stricken from the operative complaint. Accordingly, Tiger's request to strike allegations relating to plaintiffs' TCPA and third-party beneficiary contract claims is **GRANTED**. It is hereby ordered that the following be stricken:

- Pg. 1, Caption: "2. VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227 and 47 C.F.R. 64.1200)"
- Pg. 2, Caption: "BREACH OF THIRD-PARTY BENEFICIARY CONTRACT (Cal. Civ. Code § 1559)"
- Paragraph 2, lines 7–8: "Tiger/CGC made some of those Sales Calls to telephone numbers on the Do Not Call list."
- Paragraph 5, lines 24–26: "Faria received Tiger/CGC's Sales Call at her telephone number which was on the Do Not Call list at the time and had been for more than 10 years."
- Paragraph 15, lines 24–26: "which is a contract between PG&E and Core Transport Agents (such as Tiger). Prospective customers like Plaintiffs Fishman

        and Faria and the Class are intended third-party beneficiaries of Sections D-E and Schedule G-CT of PG&E Gas Rule 23."

- Paragraph 39, lines 27–28: "Tiger/CGC and their agents were not trained in the proper use of the Do Not Call list and called prospective customers' telephone numbers on the Do Not Call list;"
- Heading C., pg. 11, lines 4: "at Her Telephone Number on the Do Not Call List"
- Paragraphs 47–48
- Paragraph 75, lines 23: "that was registered on the Do Not Call List"
- Paragraph 80(b)
- Paragraph 80(k), lines 23-25: "(Tiger's contract with PG&E that regulates how it can solicit new customers), Sections D-E of which are for customers' benefit"
- Paragraph 81, lines 28–29: "Faria and all members of the Do Not Call Sub-Class received Tiger's calls at telephone numbers on the Do Not Call list."
- Paragraphs 96–104, 116–133
- Paragraph 201, line 15: "federal and"
- Paragraphs 202–204, 216, 232–33
- Paragraph 234, lines 30-31; pg. 46, line 1: "the Telephone Consumer Protection Act (47 U.S.C. § 227)," and "Restrictions on Telemarketing, Telephone Solicitation, and Facsimile Advertising (47 C.F.R. § 64.1200)"

*Second*, Tiger moves to strike allegations that Tiger solicited customers of gas providers other than PG&E and failed to comply with Section 1782 of the California Civil Code, which allegations Tiger contends are immaterial to plaintiffs' claims. Tiger has not satisfied the high burden to show that these matters have "no possible bearing" on this litigation. The motion to strike these allegations is accordingly **DENIED**.[1]

---

[1] Because this order does not rely on Exhibit A to the Declaration of Daniel Balsam (Dkt. No. 61-1), Tiger's motion to strike is accordingly **DENIED AS MOOT**.

**CONCLUSION**

The motion to dismiss is **GRANTED IN PART AND DENIED IN PART** and the motion to strike is **GRANTED IN PART AND DENIED IN PART**, as set forth above. Plaintiffs may seek leave to amend the dismissed claims and will have until **MARCH 29** to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. The motion must include a proposed pleading (and a redlined copy) and must clearly explain why the foregoing problems are overcome by the proposed pleading. Plaintiffs must plead their best case.

**IT IS SO ORDERED.**

Dated: March 8, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE