IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY FISHMAN, individually and on behalf of all others similarly situated, and SUSAN FARIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>TIGER NATURAL GAS, INC., an Oklahoma corporation, COMMUNITY GAS CENTER, INC., a Colorado corporation, JOHN DYET, an individual; and DOES 3–100,<br><br>    Defendants. | No. C 17-05351 WHA<br><br>**ORDER RE MOTION FOR DISCOVERY SANCTIONS** |

**INTRODUCTION**

In this putative class action for fraudulent telemarketing, plaintiffs move for discovery sanctions. For the reasons below, plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

In the 1990s, California deregulated its natural gas market and permitted non-utility providers (called "core transport agents" or "CTAs") to sell natural gas to small business and residential consumers. Since 2013, defendant Tiger Natural Gas, Inc. has operated as a CTA in PG&E's territory, selling natural gas pursuant to a program known as the "core aggregation program." PG&E Gas Rule 23, a tariff approved by the California Public Utilities Commission, provides the basic regulatory framework for the core aggregation program and for Tiger's enrollment of customers.

Gas Rule 23 sets forth several requirements. With respect to the enrollment of customers, Gas Rule 23.D.1 has, at all relevant times, provided (Dkt. No. 203-2 at 21):

> a. The CTA or its authorized agent(s) shall comply with the Customer Sign-Up Process and obtain the Customer's Authorization in accordance with the provisions of Schedule G-CT – Core Gas Aggregation Service.
>
> b. The CTA, or its authorized agent(s), shall not make, with dishonest, fraudulent, or deceitful intent, material verbal or written misrepresentations in the course of soliciting or serving core gas aggregation customers.
>
> c. The CTA or its authorized agent(s) shall not with dishonest, fraudulent, or deceitful intent act to substantially benefit the CTA or its employees, agents, or representatives, or to disadvantage customers.

Note well that all three of the foregoing cover the CTA "or its authorized agent(s)."

When a CTA enrolled a customer by telephone, Gas Rule 23.E.2.i.11 has, at all relevant times, stated that "[t]he CTA shall retain the audio recording of the sales call for one (1) year and the TPV [third-party verification] of the Customer's enrollment for two (2) years" (*id.* at 27). This provision is central to our dispute. Also note well that, unlike above, this provision imposes a duty only on the CTA, not both the CTA *or* its authorized agent.

Tiger hired defendant Community Gas Center, Inc. to conduct telemarketing. Defendant John Dyet owned several telemarketing companies, including CGC. Beginning in 2014, CGC called PG&E customers to promote Tiger's capped-rate program, pursuant to which program Tiger's supply rate for natural gas would be capped at $0.69 per therm (and the gas would be delivered via the PG&E system). This case stems from alleged misrepresentations made during these phone solicitations to PG&E's customers.

Plaintiff Emily Fishman enrolled in Tiger's capped-rate program in August 2015. CGC's call to Fishman consisted of two parts: (1) a sales pitch, and (2) a third-party verification call ("TPV"). During the sales pitch, CGC's telemarketer made several alleged misrepresentations to Fishman, including that (a) the California Public Utilities Commission had processed a request from PG&E to increase its *supply* rates (as opposed to delivery rates), (b) Tiger's capped-rate, or "price-protection," program was a "free" program that would protect

2

customers from PG&E's supply-rate increases, and (c) Tiger's rate for natural gas would be "a variable rate based on the market price."

Before CGC stopped marketing Tiger's program in March 2016, it made tens of thousands of calls to putative class members. Despite the volume of telemarketing calls made by CGC, and despite Gas Rule 23 requiring the CTA (Tiger) to retain recordings of these calls, Tiger produced only one sales pitch recording — the call made to Fishman — the only recording it claimed to have (since this motion was filed, Tiger has produced four more).

Specifically, in July 2016, Fishman (through counsel) sent Tiger a demand letter alleging that Tiger had made misrepresentations during a telemarketing call and on Tiger's website. The letter also stated that Fishman believed her claims were typical of other consumers (Dkt. Nos. 177-1 Exh. 32A). A preservation letter accompanied this demand:

> I am notifying you that Tiger must not destroy evidence in its possession. I am referring to marketing materials (include telemarketing scripts), customer acquisition reports, customer information, pricing analyses supporting alleged savings vs. PG&E, contents of and records of changes to the Tiger website, records of customer complaints, and any other documents which Tiger (and it owners, officers, and employees) knows to be relevant to potential litigation.

In August 2016, Tiger responded to these letters by sending Fishman copies of the recorded sales pitch and TPV call that CGC had made to her. Upon receiving Fishman's July 2016 letter, Tiger maintained all documents and ESI in its possession.

For almost a year, Fishman and her counsel remained silent. In June 2017, Fishman reappeared when she sent a second demand letter to Tiger's counsel. This June 2017 letter further detailed Fishman's allegations against Tiger and cited to specific misrepresentations that Fishman alleged CGC made on the sales call (Dkt. No. 177-1 Exh. 32B).

Fishman filed her initial complaint herein in August 2017. A month later, a year after the original demand and preservation letters from Fishman's counsel, Tiger emailed Dyet and directed him to preserve all documents and ESI related to the case. At the direction of counsel, Tiger also sought to obtain relevant documents and other materials (including any recorded sales calls) from CGC and Dyet (Dkt. Nos. 215-2, 220-1 Exh. 2).

Fishman's counsel sent a second preservation letter to Tiger in October 2017, this time more specifically referencing recordings of sales calls (Dkt. No. 177-1, Exh. 33):

> Recordings of customer acquisition telemarketing calls that Community Gas Center ("CGC") made on behalf of Tiger to prospective customers certainly falls within that broad description of materials relevant to litigation about Tiger's natural gas price protection program. However, I did not expressly include recordings of the calls because I did not know, on July 8, 2016, that Tiger/CGC was recording calls without disclosure or consent.
>
> Therefore, by this letter, I am expressly extending plaintiffs' demand for preservation of evidence to include recordings of Tiger/CGC's sales calls and verification calls to prospective customers, along the lines of what Mr. Klatt provided me for Plaintiff Emily Fishman on August 28–29, 2016.

During the course of this litigation, plaintiffs propounded discovery requests on Tiger which sought copies of sales calls made to putative class members. Ultimately, Tiger stipulated that it had no sales call recordings in its possession, custody, or control other than the Fishman recording that had already been produced. Plaintiffs propounded similar discovery requests on CGC and Dyet. Dyet responded that he "[did] not believe" he had any such recordings or documents. CGC failed to respond. Plaintiffs also subpoenaed various third-party telemarketing companies owned by Dyet. Those third parties also failed to respond.

In contrast to the sales pitches, Tiger has maintained copies of all TPV's for putative class members. Recordings of these TPV calls are accordingly not at issue in this motion.

For its part, Tiger also requested sales pitch recordings from CGC in the course of this litigation. When CGC did not provide the recordings as requested, Tiger learned that CGC may not have complied with Gas Rule 23's requirements regarding the recording and retention of sales calls. Tiger asserted that this failure amounted to a breach of the parties' Master Energy Marketing Agreement — which required CGC to "comply with all utility federal, state, and local laws, regulations and rules as well as industry best practices" — and subsequently terminated the agreement in June 2018, although by then CGC has long since ceased operations anyway (Dkt. Nos. 214-4, 215-2).

In light of Tiger's (and CGC's) failure to retain the recordings of the sales pitches, plaintiffs now seek an order prohibiting defendants from introducing any evidence in an attempt

4

to show that any putative class member received a sales call different from the sales call received by Fishman. On October 23, plaintiffs deposed Dyet on the limited issues of defendants' preservation efforts and CGC's and Tiger's purported joint-defense agreement. During that deposition, Dyet represented that although some sales pitches were recorded, CGC may not have been recording them as a matter of course (Dkt. Nos. 196, 218-8). This order follows full briefing and oral argument.

**ANALYSIS**

FRCP 37(e) sanctions are available when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and [the information] cannot be restored or replaced through additional discovery." Two categories of sanctions exist. *First*, where the district court finds that the loss of information has prejudiced the moving party, the district court may order "measures no greater than necessary to cure the prejudice." FRCP 37(e)(1). *Second*, where the district court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation," the district court may require an adverse evidentiary presumption, dismiss the case, or enter default judgment. FRCP 37(e)(2). The issue presented is the extent to which CGC's call to Fishman should be considered representative of calls made to all putative class members.

1. **ANTICIPATION OF LITIGATION.**

"Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty." FRCP 37(e) Advisory Committee's Note to 2015 Amendment. This order finds that litigation was reasonably foreseeable in July 2016 when Fishman sent her first demand and preservation letter. A reasonable party in Tiger's position would have foreseen putative class litigation regarding misleading telemarketing calls. The issue accordingly becomes whether or not Tiger took reasonable steps to preserve relevant evidence.

5

### 2. REASONABLE STEPS.

As an initial matter, where a customer enrolled in Tiger's program over the phone, Tiger had an obligation under Gas Rule 23 to "retain the audio recording of the sales call for one (1) year and the TPV of the Customer's enrollment for two (2) years" (Dkt. No. 230-2 at 27). Although Tiger maintained copies of all TPV recordings, it has eventually developed that Tiger did not retain recordings of the sales pitches made to putative class members. Attempting to skirt this responsibility under Gas Rule 23, Tiger argues that it operated on the understanding that CGC retained copies of the sales pitches. In support, Tiger points to a provision in its marketing agreement with CGC by which both parties agreed to "comply with all utility, federal, state, and local laws, regulations and rules as well as industry accepted business practices." But nothing in Gas Rule 23 indicated that Tiger's responsibility to maintain recordings was delegable. In fact, the text of Gas Rule 23 indicated the opposite. Certain provisions of Gas Rule 23, such as Rule 23.D.1's consumer protection provisions, imposed obligations on "the CTA *or its authorized agent(s)*." Rule 23.E.2.i, by contrast, imposed its obligations directly *on the CTA* (and the CTA only) to retain audio recordings.

The record further demonstrates that Tiger failed to take reasonable steps to obtain and to preserve the recordings. To be sure, Tiger may have at all times maintained relevant documents and ESI in its immediate possession. Nonetheless, Tiger blithely assumed that CGC and Dyet would preserve evidence within *their* possession. After receiving Fishman's demand and preservation letter in July 2016, Tiger quickly obtained a recording of Fishman's sales call from Dyet and CGC. Yet while Fishman's earliest letter made reference to a potential class action, Tiger made no efforts to obtain or otherwise preserve any other sales pitches. Instead, it sadly appears that Tiger waited until September 2017, after Fishman's filing of her original complaint in this action, to email Dyet and direct him to preserve materials relevant to this case.

This delay has turned out to be a mortal mistake. From what can be gleaned from the current record, CGC was a telemarketing company of little substance, and Dyet has since moved on to establish a string of such companies. During that delay, it appears that Dyet and CGC may have destroyed all but a few other recordings of sales pitches, thus explaining why

one of the only ones to survive was the recording provided to Fishman a year earlier. Once litigation loomed on the horizon, all others vanished.

Tiger, not CGC, had a responsibility to obtain and maintain recordings of sales pitches under Gas Rule 23. Moreover, Tiger failed to take any steps in July 2016 to ensure that, to the extent CGC possessed any such recordings, those recordings were not subsequently destroyed.

Tiger argues that nothing in the parties' marketing agreement "grants Tiger the right to obtain access to or exert possession over any records in CGC's possession." This ignores that CGC agreed (in the same agreement) to "[s]ubmit to [Tiger] the applicable Customer Contracts executed by Customer(s)," with the agreement defining "Customer Contracts" to include "a verbal recorded telephonic process serving as an oral enrollment method, utilizing a third party verification (TPV) company as necessary, indicating Customers' authorization to receive services(s) from [Tiger]." The record is also clear that when Tiger asked CGC for copies of the Fishman recording, CGC provided it. The deposition testimony of Rachel Harvick Strealy, Tiger's Marketing Coordinator, also indicates that Tiger received copies of sales call recordings upon request when a customer complaint arose (Dkt. Nos. 214-4, 215-1).

It is no excuse that Fishman's earliest preservation letter did not specifically direct Tiger to preserve sales pitches. It is also not dispositive that Fishman waited until October 2017 to specifically request that Tiger preserve recordings of sales calls. A reasonable party in Tiger's position would have understood such evidence to be relevant based on the earliest letter's allegations concerning misleading telemarketing calls, a letter that referenced a putative class action and which demanded preservation of evidence. Indeed, by quickly obtaining a copy of Fishman's sales call and turning it over to plaintiffs' counsel, Tiger's own pre-litigation conduct demonstrates that it viewed such evidence as relevant. Moreover, is it of no moment that Tiger terminated its marketing agreement with CGC in *2018* upon learning of CGC's failure to

7

maintain recordings of sales calls. This *post hac* decision fails to speak to the reasonableness of Tiger's failure to preserve evidence before that point.[1]

### 3. PREJUDICE.

As plaintiffs' parallel motion for class certification demonstrates, plaintiffs have been prejudiced by Tiger's failure to take reasonable steps to preserve recorded sales calls. This order rejects Tiger's argument that plaintiffs have failed to show that these recordings "cannot be restored or replaced through additional discovery," FRCP 37(e), as Tiger offers no suggestions as to an evidentiary substitute. Although Tiger has produced telemarketing scripts it contends were used by CGC during sales pitches, the call to Fishman indisputably deviated from those scripts, rendering them suspect.

\*          \*          \*

To ameliorate the prejudice to plaintiffs, this litigation will proceed as follows. At trial, jury will be informed of the foregoing destruction of evidence (either by evidence put on by counsel or via an instruction) and the jury will be permitted to decide whether or not the call made to Fishman was representative of the sales pitches made to the putative class members (both in terms of content and the fact that the call was recorded). The jury could alternatively decide, for example, that the telemarketing scripts produced by Tiger are more representative of the calls made to the putative class. Whether the same course of conduct occurred class-wide will be for the jury to determine (and in the Court's view it would be reasonable to so find). Moreover, the Fishman sales pitch arguably failed to request consent to record as required by Section 632 of the California Penal Code. The jury will likewise be allowed to infer that the other sales calls, had they been preserved, would have similarly been recorded without consent obtained up front. To this extent, plaintiffs' motion for discovery sanctions is **GRANTED**. Because the record thus far fails to demonstrate that Tiger "acted with the intent to deprive

---

[1] Tiger also argues that plaintiffs themselves have failed to preserve evidence. That may very well be so. Plaintiffs' failures, however, do not excuse Tiger's. To the extent appropriate, Tiger should bring its own FRCP 37(e) motion to remedy any spoliation by plaintiffs.

8

another party of the information's use in the litigation," FRCP 37(e)(2), the motion is otherwise **DENIED**, subject to revisiting if the trial evidence proves to be stronger.[2]

## CONCLUSION

To the extent described above, plaintiffs' motion for discovery sanctions is **GRANTED**.

**IT IS SO ORDERED.**

Dated: November 20, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] Tiger objects to numerous statements made in Attorney Daniel Balsam's and Attorney Jacob Harker's reply declarations (Dkt. No. 224). Because this order does not rely on any of the testimony objected to, Tiger's objections are **OVERRULED AS MOOT**.

9