IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY FISHMAN, individually and on behalf of all others similarly situated, and SUSAN FARIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TIGER NATURAL GAS, INC., an Oklahoma corporation, COMMUNITY GAS CENTER, INC., a Colorado corporation, JOHN DYET, an individual, and DOES 2–100,<br><br>Defendants. | No. C 17-05351 WHA<br><br>**ORDER RE MOTION FOR CLASS CERTIFICATION** |

**INTRODUCTION**

In this putative class action for fraudulent telemarketing, plaintiffs move for class certification and for relief from failing to meet their filing deadline. For the reasons below, the motion for relief from plaintiffs' late filing is **GRANTED**. The motion for class certification is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

This order incorporates by reference the statement set forth in the order granting in part and denying in part plaintiffs' motion for discovery sanctions (Dkt. No. 249). In brief, defendant John Dyet owned several telemarketing companies, including defendant Community Gas Center, Inc. Beginning in 2014, CGC called PG&E customers to promote Tiger's capped-rate program, pursuant to which program Tiger's supply rate for natural gas would be capped at

$0.69 per therm. This case stems from alleged misrepresentations made during these phone solicitations to PG&E's customers.

Plaintiffs Emily Fishman and Susan Faria enrolled in Tiger's capped-rate program in 2015 after receiving telemarketing calls from CGC. For enrollees, the call consisted of two parts: (1) a "sales call," or sales pitch followed by (2) a "third-party verification call" ("TPV"). During the sales pitch, CGC's telemarketer made several alleged misrepresentations to Fishman, including that (a) the California Public Utilities Commission had processed a request from PG&E to increase its rates, (b) Tiger's capped-rate, or "price-protection," program was a "free" program that would protect customers from PG&E's supply rate increases, and (c) Tiger's rate for natural gas would be "a variable rate based on the market price." All of these statements are borne out by a recording of the sales pitch made to Fishman.

Plaintiffs further alleged that CGC and Tiger recorded the sales call without their consent, that the telemarketer failed to disclose Tiger's actual price per therm, and that following plaintiffs' enrollment in the program Tiger failed to send written terms and conditions that reflected the terms and conditions agreed to during their telephonic enrollment. CGC enrolled over 26,000 customers in Tiger's capped-rate program during the proposed class period (Dkt. No. 177).

Based on the foregoing theories, the operative complaint asserted the following claims: (1) violations of California's Recording Law (California Penal Code §§ 632 *et seq.*); (2) breach of oral contract; (3) violations of PG&E Gas Rule 23; (4) breach of third-party beneficiary contract; (5) violations of California's Consumers Legal Remedies Act; (6) fraud; (7) negligent misrepresentation; (8) violations of the Regulations on Core Transport Agents (California Public Utilities Code §§ 980–989.5); (9) violations of California's False Advertising Law; and (10) violations of California's Unfair Competition Law (Dkt. No. 101). Plaintiffs seek to certify the following classes:

1. <u>Tiger/PG&E Customer Class</u>: All California consumers and businesses that were customers of PG&E at the time they enrolled in Tiger's capped-rate price protection program after receiving a telemarketing call advertising the program between August 18, 2013, and the present.

2. <u>Tiger/PG&E Consumer Sub-Class</u>: All California consumers that were customers of PG&E at the time they enrolled in Tiger's capped-rate price protection program after receiving a telemarketing call advertising the program between August 18, 2013, and the present.[1]

This order follows full briefing and oral argument. Tiger is the only defendant to have opposed plaintiffs' motion for class certification. Following oral argument, at the Court's request, plaintiffs submitted a proposed trial plan which narrowed the issues plaintiffs sought to certify for class treatment. Plaintiffs now seek certification of the following claims only: (1) violations of California's Recording Law; (2) violations of California's Consumers Legal Remedies Act; and (3) violations of California's Unfair Competition Law (Dkt. No. 243).[2]

**ANALYSIS**

Pursuant to FRCP 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of the class representatives and counsel. The proposed class must also be ascertainable. In addition to satisfying FRCP 23(a)'s prerequisites, the party seeking class certification must show that the action is maintainable under FRCP 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Plaintiffs seek certification under FRCP 23(b)(3), which further requires predominance and superiority. This order first addresses plaintiffs' claim under California's Recording Law before turning to their claims under California's Consumer Legal Remedies Act and California's Unfair Competition Law.

---

[1] In a supplemental filing, plaintiffs proposed adding a third sub-class consisting of California customers of YEP Energy who enrolled in Tiger's program (Dkt. No. 243 at 2). For the reasons discussed below, certification of such a sub-class is unnecessary.

[2] Plaintiffs have made a habit of violating Local Rule 3-4(c), which states that text of the parties' papers must be "double-spaced with no more than 28 lines per page." Plaintiffs shall please ensure their compliance with this rule going forward.

3

### 1. CALIFORNIA'S RECORDING LAW.

#### A. Numerosity.

Numerosity is satisfied by showing that "the class is so numerous that joinder of all members is impracticable." FRCP 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members. *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). Tiger's records show that it has enrolled 26,637 customers (25,813 residential customers and 824 businesses) through third-party telemarketing companies during the class period (Dkt. No. 176-12).

Tiger argues that these figures include not only PG&E customers who signed up for Tiger's price-protection program but also those who switched to Tiger from another CTA (including YEP Energy). Plaintiffs do not dispute that they cannot distinguish between customers who switched from PG&E and those who switched from YEP Energy or other CTAs. Nevertheless, had Tiger maintained recordings of the sales pitches made to putative class members (as required by Gas Rule 23), those recordings would have allowed plaintiffs to make this determination. Tiger may not defeat class certification through its own failure to maintain records. Accordingly, for the same reasons contained in the accompanying order regarding plaintiffs' motion for discovery sanctions, this order presumes that all customers Tiger enrolled through CGC's telemarketing during the class period were PG&E customers. Going forward, Tiger bears the burden of demonstrating that any particular class member does not fit within the class definition because she switched to Tiger's program from another CTA. Numerosity is demonstrated with respect to the class.

#### B. Typicality.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.

2010) (citation and quotation marks omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). With respect to plaintiffs' Recording Law claim, Tiger raises only one typicality concern.

Tiger argues that Faria's Recording Law claim is not typical because Faria testified during her deposition that she did not personally consider certain information disclosed on the call — namely her address and PG&E account number — to be confidential. This order disagrees. Section 632(c) of the California Penal Code defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. . . ." This test is an objective one. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002). While "the privacy interest most persons have with regard to" the type of information disclosed is relevant to determining whether or not Faria had a reasonable expectation of privacy in her call with CGC, *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 n.10 (2006), Tiger cites no authority suggesting that Faria's personal views regarding the confidentiality of her home address or PG&E account number is determinative of her claim. Faria's Recording Law claim is typical.

### C. Adequacy.

FRCP 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This prerequisite has two parts: (1) that the proposed representative plaintiff and her counsel do not have any conflicts of interest with the proposed class; and (2) that they will prosecute this action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. On the current record, no evidence has been presented to indicate that plaintiffs have any conflicts with other putative class members or that they or their counsel will not act vigorously on behalf of the class. This requirement is satisfied.

### D. Commonality and Predominance.

The predominance inquiry "focuses on the relationship between the common and individual issues." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

*Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). The presence of common issues of fact or law sufficient to satisfy the requirements of FRCP 23(a)(2) is not by itself sufficient to show that those common issues predominate. *Hanlon*, 150 F.3d at 1022. The predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representative." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. Among the considerations that are central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). Plaintiffs must show that common issues can be resolved through common proof.

Section 632(a) of the California Penal Code provides, in relevant part, that "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication" violates the statute. Confidentiality requires "the existence of a reasonable expectation by one of the parties that no one is 'listening in' or overhearing the conversation." *Flanagan*, 27 Cal. 4th at 772–73. As discussed above, because this test is an objective one, a plaintiff's subjective expectations of privacy do not control. *Id.* at 776–77. In light of the rulings in the accompanying order on plaintiffs' motion for discovery sanctions, the questions of whether or not CGC's sales calls to class members were "confidential communications," whether or not such calls were recorded by CGC without consent, and whether or not Tiger can be held vicariously liable for CGC or Dyet's conduct are common issues which will predominate. Finally, because Section 637.2 provides for statutory damages per violation, there is no concern that damages cannot be determined on a classwide basis.

### E. Superiority.

Class certification under FRCP 23(b)(3) is appropriate only if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." Tiger does not contest superiority and this order finds the superiority element satisfied. Given the relatively low recovery at issue, class members will not have an interest in individually controlling the prosecution of separate actions. Neither party identifies any pending litigation

regarding plaintiffs' Recording Law claim. A class action is accordingly a superior method of resolving this claim.

### 2. CALIFORNIA'S CONSUMER PROTECTION STATUTES.

Plaintiffs also seek to certify claims under California's Unfair Competition Law, California Business and Professions Code Section 17200 *et seq.*, and California's Consumer Legal Remedies Act, California Business and Professions Code Section 1750 *et seq*. These claims are primarily based on plaintiffs' allegations that defendants made fraudulent or misleading statements during telemarketing calls to putative class members. The dispositive issue is whether these claims may be certified under FRCP 23(b)(3) and accordingly this order need only address whether individual questions predominate. In light of Tiger's stipulation that Fishman's TPV call was substantially the same as those made to other putative class members (Dkt. No. 157), the parallel order granting in part plaintiffs' motion for discovery sanctions substantially aided plaintiffs in showing a common course of conduct with respect to the class. Nevertheless, because plaintiffs have failed to show that injury can be established on a classwide basis, they have not met their burden of demonstrating that FRCP 23(b)(3)'s requirements are met.

To be sure, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). But plaintiffs still bear the burden of providing a damages model which shows that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). This damages model "must measure only those damages attributable to" plaintiffs' theory of liability. *Ibid.* Here, the problem is not individualized questions regarding the *amount* of damages but rather plaintiffs' failure to show that a classwide method of *proving the fact of injury* is even possible.

Plaintiffs claim they can show the existence of damages on an aggregate, classwide basis using PG&E's data. Specifically, after plaintiffs signed up for Tiger's program, their respective PG&E bills listed their gas costs as charged by Tiger as well as PG&E's "gas procurement costs" (Dkt. Nos. 178, 179). Tiger's records show putative class members' gas

usage and the total amount charged by Tiger (for both the price of gas and additional fees), but all agree plaintiffs need additional records from PG&E in order to determine how much a putative class member would have paid had she stayed with PG&E as her gas provider.

According to the declaration of Kenneth Bohn, Tiger's consultant who worked for PG&E for nearly twenty years, PG&E charges customers for gas based on "a market rate subject to certain variables such as credits, surcharges, and local and states charges." Bohn further explains that he is familiar with PG&E's billing system, but is not aware that PG&E maintains the total amount a CTA's customer would have paid for gas had that customer remained PG&E's customer for gas supply. Moreover, to Bohn's knowledge, "PG&E does not have a report that subtracts, on a per-customer basis, the amount of the CTA's charges from the amount PG&E would have charged for the commodity" (Dkt. No. 203-2 Exh. C ¶¶ 5, 11).

Other than the above-listed data points found on the face of plaintiffs' individual PG&E bills, plaintiffs' claim that PG&E "clearly has in its database" such information appears to be pure speculation by plaintiffs' counsel. Plaintiffs never deposed anyone from PG&E on this issue. Moreover, at the time plaintiffs filed their motion for class certification, they had not even subpoenaed PG&E for the relevant records. Plaintiffs instead waited nearly three weeks after filing their motion for class certification (and fourteen months after filing suit) to subpoena PG&E for the records purportedly necessary to determine injury on a classwide basis. On the current record, plaintiffs provide no evidence that such information exists or is otherwise available. Accordingly, plaintiffs have failed to meet their burden of showing that FRCP 23(b)(3)'s requirements are met as to their CLRA and Section 17200 claims. These claims will not be certified on the current record. In the event that plaintiffs obtain the necessary proof from PG&E, the Court would consider a supplemental motion for class certification so long as doing so would not otherwise disrupt orderly case management.

**3.    REQUESTS FOR JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS.**

Plaintiffs request judicial notice of ten documents: (1) three articles published by the California Public Utilities Commission; (2) three documents reflecting PG&E's tariff rates and an application for rate increases; (3) a copy of California Senate Bill No. 656; and (4) three

8

articles posted on various websites (Dkt. No. 177-5). Tiger, in turn, requests judicial notice of three documents: (1) a press release published by the United States Department of Justice; (2) a decision by the California Public Utilities Commission regarding the regulation of CTA's; and (3) a complaint filed in an action captioned *North Star Gas Company d/b/a YEP Energy v. Pacific Gas and Electric Company, et al.* (Dkt. No. 204). Because reliance on these documents would not change the outcome of this order, both requests for judicial notice are **DENIED AS MOOT**.

Tiger also objects to several items of evidence submitted with plaintiffs' reply brief. Because consideration of the objected-to materials does not impact the outcome of this order, Tiger's objections are also **OVERRULED AS MOOT**.[3]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is **GRANTED IN PART AND DENIED IN PART**. The following class is **CERTIFIED**:

1. <u>Tiger/PG&E Customer Class:</u> All California consumers and businesses that were customers of PG&E at the time they enrolled in Tiger's capped-rate price protection program after receiving a telemarketing call advertising the program between August 18, 2013, and the present.

The Customer Class is certified only with respect to plaintiffs' Recording Law claim. Emily Fishman and Susan Faria are hereby **APPOINTED** as class representatives. Plaintiffs' counsel Kimberly A. Kralowec, Kathleen Styles Rogers, Daniel Balsam, and Jacob Harker are hereby **APPOINTED** as class counsel. By **NOVEMBER 30 AT NOON**, the parties shall jointly submit a proposal for class notification with a plan to distribute notice. In crafting their joint proposal, counsel shall please keep in mind the undersigned judge's guidelines for notice to

---

[3] Despite obtaining a seven-week extension of time to file their motion for class certification, plaintiffs failed to meet their filing deadline of September 20 at noon. Instead, plaintiffs completed their filing at 12:52 p.m., about an hour late. On September 26, in a painfully detailed filing spanning thirty pages, plaintiffs requested a finding of excusable neglect and sought relief from their failure to meet the deadline. On October 1, plaintiffs followed up with an "amended" motion to excuse the deadline problem (this time spanning twenty-six pages) although the amended motion failed to explain what, in particular, counsel changed. No defendant has opposed plaintiffs' motions for a finding of excusable neglect. The motions are accordingly **GRANTED**.

9

class members in the "Notice and Order Regarding Factors to be Evaluated for Any Proposed Class Settlement" (Dkt. No. 65).

**IT IS SO ORDERED.**

Dated: November 20, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE