UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY FISHMAN, et al.,<br>        Plaintiffs,<br>v.<br>TIGER NATURAL GAS, INC., et al.,<br>        Defendants. | Case No. 17-cv-05351-WHA (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 317, 318, 320, 321, 322 |

On December 17, 2018 the parties filed five discovery letter briefs, ECF Nos. 317, 318, 320, 321, 322. The Court heard oral argument concerning the letter briefs on December 20, 2018. This order follows. At the hearing this morning the parties advised that they will be filing several letter briefs tomorrow. Those letter briefs and supporting exhibits shall be filed no later than **5:00 p.m**. The Court sets a hearing for **December 28, 2018 at 9:00 a.m.** for those letter briefs.

**A.     ECF No. 317 (Tiger's Requests for Plaintiffs' Communications with PG&E)**

Defendant Tiger Natural Gas, Inc. ("Tiger") seeks an order compelling Plaintiffs Emily Fishman and Susan Faria ("Plaintiffs") to produce communications between Plaintiffs' counsel and Pacific Gas and Electric Company ("PG&E"). Tiger suggests that Plaintiffs encouraged PG&E not to attend the third party deposition Tiger noticed. Tiger also says it wants Plaintiffs' communications with PG&E to better understand the Declaration of Kellie Reem that Plaintiffs ultimately accepted in place of their own deposition subpoena to PG&E. Plaintiffs respond that any such communications are work product, and they deny the accusation that they impeded Tiger's attempt to take discovery of PG&E.

As an initial matter, it is unclear that these communications are responsive to Tiger's Requests for Production ("RFPs"). As to Plaintiff Faria, Tiger points to RFPs 8-10. These

communications are not responsive to RFP 9, which seeks documents concerning Faria's PG&E account. The thrust of RFPs 8 and 10 is Faria's own communications with PG&E about the merits of the case. If the word "your" is defined in these RFPs to include communications by Faria's attorneys, and if the relevant time period for the RFPs includes December 2018 – and neither proposition can be confirmed from the exhibits submitted – the Court supposes that the communications Tiger now seeks would arguably fall within the very outer bounds of what RFPs 8 and 10 seek. Still, the way these RFPs are drafted, it would not have occurred to the Court that they were seeking communications between Plaintiffs' counsel and PG&E concerning third party discovery nine months after the RFPs were served. As to Plaintiff Fishman, Tiger points to RFP 4, which is confusing because that RFP has nothing to do with PG&E, and the other RFPs to Fishman that Tiger submits in support of the letter brief also do not refer to communications with PG&E.

Assuming for the sake of argument that these communications are just barely responsive to a discovery request, they fall squarely in the realm of satellite litigation and discovery about discovery. The Court can address PG&E's refusal to attend the deposition in connection with Tiger's motion to compel directed to PG&E, ECF No. 319. This is not a case like *Wilson v. Conair Corp.*, 1:14-cv-894 WBS, 2015 WL 5326206, *4 (E.D. Cal. Sept. 11, 2015), where communications about the time period covered by a subpoena are necessary to understand the scope of what was produced. It is clear what was produced (the Reem declaration). Tiger is on better footing in arguing that it should be able cross-examine PG&E about the declaration, but that is the issue to be addressed in ECF No. 319.

Tiger's motion to compel Plaintiffs' communications with PG&E is **DENIED**.

**B.     ECF No. 318 (Tiger's Interrogatories Nos. 3, 5, 8 and 13)**

Tiger moves to compel revised responses to its interrogatories ("rogs") 3, 5, 8 and 13. The parties' dispute is narrow. Each of these rogs is a multi-prong contention rog. Plaintiffs do not appear to dispute the multi-prong nature of the rogs. And Tiger appears not to dispute the substantive adequacy of Plaintiffs' responses. Rather, Tiger's complaint is that "[i]nstead of reciting the interrogatories verbatim, Plaintiffs inserted edits and then separately answered each . .

2

." In other words, Plaintiffs broke up rog 3 into rogs 3(a) and 3(b), broke up rog 5 into rogs 5(a), 5(b), and 5(c), and so on, and then answered each part separately.

This is a technical violation of Local Rule 33-1, which states that "[a]nswers and objections to interrogatories must set forth each question in full before each answer or objection." Plaintiffs seem to concede this and request "until early January to amend their responses."

Tiger's motion to compel is **GRANTED**, and Plaintiffs are **ORDERED** to amend their responses to rogs 3, 5, 8 and 13 to comply with Local Rule 33-1 by January 4, 2019.

**C.     ECF No. 320 (Plaintiffs' Request to Re-Depose Rachel Harvick Strealy)**

Plaintiffs seek to re-depose Tiger's marketing coordinator, Rachel Harvick Strealy. They say that Tiger produced recordings for five Sales Calls after Strealy's September 11, 2018 deposition. They also say that Tiger produced the Master Sheet that contains voluminous information about Tiger's customers on December 14, well after Strealy's deposition, and that she was the person who assembled the Master Sheet.

As to the Sales Calls, Tiger does not dispute that they produced them after Strealy's deposition. Tiger also does not dispute that Strealy used the calls in her daily job. For example, if complaints came in, she would listen to the Sales Call recording before responding to the customer. Plaintiffs contend that Strealy's involvement was more extensive and that she would take further action internally at Tiger if she heard improper statements made in the calls. Tiger disputes that, and the record before the Court is unclear. Still, Strealy apparently did use the Sales Calls in her job, deposing her about the recordings is relevant and proportional, and it was impossible for Plaintiffs to do that because the Sales Calls had not been produced by the time of her deposition.

As to the Master Sheet, Tiger stated at oral argument that it had previously uploaded to its file share a redacted version of the sheet, but it no longer had a record of whether Plaintiffs downloaded it, so Tiger could not state definitively that it had produced even a redacted version of the Master Sheet prior to Strealy's deposition. Plaintiffs definitively state they never received it. Both sides agree that Strealy assembled the Master Sheet. Since both sides agree the unredacted Master Sheet was produced on December 14, after the deposition, and the Court is unable to

3

1  conclude that any version of it had been received by Plaintiffs before then, it appears appropriate
2  to order Strealy to be made available for another deposition.

Accordingly, the Court **ORDERS** Tiger to make Strealy available for another deposition no later than January 18, 2019. Pursuant to paragraph 27 of Judge Alsup's Supplemental Standing Order, the Court **ORDERS** Tiger to bear all expense of this deposition.

**D.    ECF No. 321 (Plaintiffs' Requests for Tiger's Billing Data and Financial Information)**

Plaintiffs move to compel several items with respect to Tiger's billing data and financial information.

### 1. Billing Details

RFP 4 seeks documents sufficient to show certain information for each of Tiger's California customers since August 18, 2013 for the program at issue: start date; end date; rate cap for the customer; and, for each billing cycle, the total therms of natural gas the customer consumed, Tiger's gas procurement price per therm, the Natural Gas Intelligence Bidweek Survey Index, and the "daily nickel" charge. Plaintiffs argue these items are relevant to damages. Plaintiffs also state that Tiger has produced a document TNG_0000868 that lists its customers and their service dates and rates codes. Plaintiffs state that Tiger's Rule 30(b)(6) deponent Johnathan Burris testified that a "key" or a "legend" exists that explains the rate codes, but Tiger has not produced it. Plaintiffs request an order compelling Tiger to produce documents responsive to RFP 4, to produce the key or ledger that explains the rate codes, and to authorize another 30(b)(6) deposition, at Tiger's expense, on the topic of billing date.

Tiger's response is confusing. It does not dispute the relevance or proportionality of the requested information. Tiger argues that it "does not have all the information Plaintiffs are seeking *in a single report or document*." (emphasis added). That is immaterial. The requested information is relevant, and if it is contained in multiple documents, Tiger must produce them.

As to the key or legend, Tiger vaguely asserts that a Rule 30(b)(6) witness provided some testimony regarding rate codes, and Tiger says it offered to produce a redacted version of it to Plaintiffs. However, offering to produce a document is different from producing it. (At oral argument, Plaintiffs stated that it is acceptable to them for Tiger to redact non-cap rates from the

4

document.)

As to customer-specific consumption data, Tiger argues that "the volumetric usage for each putative class member would be voluminous" and states that Plaintiffs "would receive it upon certification of the UCL class – an event which has not occurred." In this argument Tiger is admitting that it has the consumption information Plaintiffs seek and, despite the volume, can produce it. Tiger is simply refusing to do so by the Court-ordered close of fact discovery. This is unacceptable. (At oral argument the parties agreed that Tiger could redact out information concerning customers that are not members of any class or putative class at issue in the case.)

Tiger does not respond at all to Plaintiffs' request for another Rule 30(b)(6) deposition on billing data, effectively conceding the issue.

Accordingly, the Court **ORDERS** Tiger to produce documents responsive to RFP 4, as well as the key or ledger that Burris referred to, no later than January 4, 2019. The Court **ORDERS** Tiger to provide a Rule 30(b)(6) deponent concerning the documents responsive to RFP 4 and the key or ledger about the rate codes, for deposition no later than January 18, 2019. The Court **ORDERS** Tiger to bear all expense of this deposition.

**2. Finances**

Plaintiffs' RFP 1 seeks Tiger's gross revenues, costs and profits for each year since 2010, including 2018 to date. Plaintiffs state that Tiger's profits are relevant because Plaintiffs seek punitive damages under the CLRA. Tiger produced financial statements for 2016-17 but marked them "for settlement purposes only," preventing them from being used in depositions. Plaintiffs seek a Court order compelling Tiger to provide all the data sought by RFP 1 and a Rule 30(b)(6) deposition on Tiger's finances, at Tiger's expenses.

With one exception, Tiger has no real response. Tiger acknowledges that it did produce the 2016-17 financial statements for settlement purposes only, but Plaintiffs obviously need to be able to use the financial statements as substantive evidence. Tiger vaguely asserts that "under the circumstances," the protective order in this action is inadequate to protect its confidentiality interests, but Tiger does not even articulate what those circumstances are. On the other hand, Tiger is correct that Plaintiffs' request for financial information going back eight years is

5

excessive. "'Discovery of Defendants' net worth and financial condition should be limited to information about [his] *current* assets and liabilities, given that past earnings and net worth cannot reasonably lead to relevant information on the issue of punitive damages.'" *LLB Sheet 1, LLC v. Loskutoff*, No. 16-cv-2349 BLF HRL, 2016 WL 7451632, *3 (N.D. Cal. Dec. 28, 2016) (quoting *Vieste, LLC v. Hill Redwood Dev.*, No. 9-cv-4024 JSW DMR, 2011 WL 855831, *3 (N.D. Cal. Mar. 9, 2011)).

After balancing the factors considered in *LLB Sheet* and *Vieste*, the Court **ORDERS** Tiger to produce the documents sought by RFP 1 for 2016-18 no later than January 4, 2019, and to make available a Rule 30(b)(6) deponent for deposition on Tiger's financial condition no later than January 18, 2019. The Court **ORDERS** Tiger to bear all expense of this deposition.

**E.     ECF No. 322 (Plaintiffs Request to Re-Depose Tiger on Rule 30(b)(6) Topics 2, 3, 4, 6, 7, 8, 9, 10)**

Plaintiffs seek an order compelling Tiger to provide Rule 30(b)(6) deponents for topics 2, 3, 4, 6, 7, 8, 9 and 10 in their amended notice. For these topics, Tiger either produced documents pertaining to those topics on December 14, 2018, which was the last day of fact discovery, or still has not produced them and this order requires it to do so. This includes topic 8 (2,000 pages of documents produced on December 14), topic 6 (this order requires Tiger to produce the key or legend describing the rates codes), topic 9 (this order requires Tiger to produce its financial statements), and topics 2, 3, 4, 7 and 10 (Tiger produced the Master Sheet on December 14).

Tiger argues this is all Plaintiffs' fault because "Plaintiffs insisted on deposing Tiger's 30(b)(6) witnesses before Tiger had an opportunity to produce all responsive documents by the December 14 deadline to Plaintiffs' then-pending discovery requests despite Tiger's repeated offers to delay the deposition." (emphasis omitted). However, that argument does not make any sense. December 14 was the last day of fact discovery, so Plaintiffs could not have scheduled the deposition for after then (absent Court approval).

Next, Tiger argues that "Plaintiffs' 30(b)(6) deposition notices were 'moving targets,' with Plaintiffs repeatedly re-characterizing the proposed topics without substantively responding to Tiger's objections." Tiger cites its own meet and confer letters as evidence of this, but those

letters do not demonstrate that the deposition notices were moving targets.

Tiger repeats its objections to topics 2, 3, 4, 6, 7, 9 and 10, but the Court overrules them because the topics are relevant and proportional to the needs of the case.

Finally, the parties disagree about whether Tiger's prior deponent on these topics, Johnathan Burris, was adequately prepared. This argument is difficult to evaluate because Plaintiffs do not cite to the Court any particular testimony he gave that they contend was inadequate. For its part, Tiger provides the entire 565-page rough deposition transcript to the Court with highlights identifying what testimony was on which topic, but this also does not focus the dispute. In any event, the late document productions are sufficient to warrant another deposition on these topics.

The Court **ORDERS** Tiger to produce one or more witnesses to testify on topics 2, 3, 4, 6, 7, 8, 9 and 10 no later than January 18, 2019. The Court **ORDERS** Tiger to bear all expense of this deposition(s).

**IT IS SO ORDERED.**

Dated: December 20, 2018

THOMAS S. HIXSON
United States Magistrate Judge