Kimberly A. Kralowec (State Bar No. 163158)
Kathleen Styles Rogers (State Bar No. 122853)
KRALOWEC LAW P.C.
750 Battery Street, Suite 700
San Francisco, CA 94111
Tel: (415) 546-6800
Fax: (415) 546-6801
Email: kkralowec@kraloweclaw.com
        krogers@kraloweclaw.com

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873
Fax: (415) 869-2873
Email: legal@danbalsam.com

Jacob Harker (State Bar No. 261262)
LAW OFFICES OF JACOB HARKER
582 Market Street, Suite 1007
San Francisco, CA 94104
Tel: (415) 624-7602
Fax: (415) 684-7757
Email: jacob@harkercounsel.com

Class Counsel for the Certified Class and Attorneys
for Plaintiffs and the Proposed Class and Sub-Class

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| | |
|---|---|
| EMILY FISHMAN *et al*,<br><br>                   Plaintiffs,<br><br>          vs.<br><br>TIGER NATURAL GAS, INC. *et al*,<br><br>                   Defendants. | )  Case No.        3:17-cv-05351-WHA<br>)<br>)  **NOTICE OF MOTION AND**<br>)  **PLAINTIFFS' MOTION FOR**<br>)  **PRELIMINARY APPROVAL OF CLASS**<br>)  **ACTION SETTLEMENT**<br>)<br>)  **Fed. R. Civ. P. 23(e)**<br>)<br>)  Date:          February 21, 2019<br>)  Time:          8:00 am<br>)  Courtroom:   12 – 19th Floor<br>)  Judge:         William Alsup |

**i**

1  **NOTICE OF MOTION AND MOTION FOR PRELIMINARY CLASS SETTLEMENT**

2      PLAINTIFFS HEREBY GIVE NOTICE that on February 21, 2019, in Courtroom 12 of

3  the United States District Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102

4  at 8:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs Emily Fishman and

5  Susan Faria will and hereby do move the Court for an Order pursuant to Federal Rule of Civil

6  Procedure 23(e): a) preliminarily approving the proposed class action settlement; b) approving

7  appointment of a settlement administrator; c) approving and directing distribution of notice to the

8  class; d) approving the proposed *cy pres* recipient; and e) setting a final fairness and approval

9  hearing.

10      The basis for this Motion is that the proposed settlement is fair, adequate, and reasonable

11 and in the best interests of the class as a whole, and that the procedures proposed are adequate to

12 ensure the opportunity of class members to participate in, opt out of, or object to the settlement.

13      The Motion will be based on this Notice of Motion and Motion; the Memorandum of

14 Points and Authorities; the Declarations of Plaintiffs/class representatives Emily Fishman and

15 Susan Faria, and their class counsel Kathleen Styles Rogers, Daniel Balsam, Jacob Harker; the

16 Declarations of Teresa Walker and Lori Johnson of Defendant Tiger Natural Gas Inc.; the

17 Declaration of Defendant John Dyet; and oral argument and any additional material that may be

18 elicited at the hearing on the Motion.

19
20 Respectfully Submitted,

21 Dated:_ Jan. 17, 2019 _____

22

THE LAW OFFICES OF DANIEL BALSAM
*/s/ Daniel Balsam*_____
Daniel Balsam
Attorney for Plaintiffs and the Class

# TABLE OF CONTENTS

**Page**

Table of Contents.............................................................................................................iii

Table of Authorities ..........................................................................................................v

**I.**    **INTRODUCTION**...............................................................................................1

**II.**   **ISSUE PRESENTED** .........................................................................................1

**III.**  **BACKGROUND** ................................................................................................1

    A.  Summary of the Claims ...........................................................................1

    B.  Procedural History ...................................................................................4

        *1.  Pre-Litigation*.................................................................................4

        *2.  Complaint and Removal*.................................................................4

        *3.  First Amended Complaint*..............................................................4

        *4.  Second Amended Complaint* .........................................................4

        *5.  Operative Third Amended Complaint*............................................5

        *6.  Class Certification and Inference Order* .......................................6

        *7.  CGC's Motion to Dismiss* .............................................................7

        *8.  Discovery Disputes* ......................................................................8

    C.  Settlement Conference ..............................................................................9

**IV.**   **INFORMATION ABOUT THE SETTLEMENT** ...........................................9

    A.  Settlement Class........................................................................................9

    B.  Injunctive Relief......................................................................................10

    C.  Monetary Relief via Common Fund; Comparable Settlements ................11

    D.  Release of Claims ...................................................................................12

    E.  The Settlement is Fair and Reasonable and Not the Result of Fraud or
        Collusion .................................................................................................13

        *1.  The Strength of Plaintiffs' Case*..................................................13

        *2.  The Risk, Expense, Complexity, and Likely Duration of Further
           Litigation*...................................................................................15

        *3.  The Risk of Maintaining Class Action Status*..............................18

        *4.  The Amount Offered in Settlement* .............................................18

        *5.  The Extent of Discovery Completed and the State of the Proceedings*.......18

        *6.  The Experience and Views of Counsel* ........................................19

        *7.  Reaction of Class Members to the Proposed Settlement* ..............19

        *8.  There is No Fraud or Collusion*...................................................20

**V.**    **SETTLEMENT ADMINISTRATION** ............................................................20

**VI.**   **NOTICE**...........................................................................................................21

## <u>TABLE OF CONTENTS (cont.)</u>

**Page**

VII.    **OPT-OUTS** ...........................................................................................................**21**

VIII.   **OBJECTIONS** ......................................................................................................**21**

IX.    **ATTORNEYS' FEES AND COSTS**.....................................................................**21**

X.     **INCENTIVE AWARDS** ......................................................................................**22**

XI.    *CY PRES* **AWARD** ............................................................................................**23**

XII.    **TIMELINE** .........................................................................................................**24**

XIII.   **CLASS ACTION FAIRNESS ACT** ...................................................................**24**

XIV.   **PAST DISTRIBUTIONS** ...................................................................................**24**

X.     **CONCLUSION** ..................................................................................................**25**

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page**

4

<u>Federal Cases</u>

*Batmanghelich v. Sirius XM Radio, Inc.*,
  Case No. 09-9190 VBF (JCx), 2011 U.S. Dist. LEXIS 155710 (C.D. Cal.
  Sep. 15, 2011) ............................................................................................................ Ex. B

*Cohorst v. BRE Properties, Inc. et. al.*,
  No. 10-cv-2666 JM, 2011 U.S. Dist. LEXIS 151719 (S.D. Cal. Jan. 18,
  2012) ........................................................................................................................ Ex. B

*Etter v. Allstate Insurance Company*,
  No. C 17-00184 WHA, 2018 U.S. Dist. LEXIS 189136 (N.D. Cal. Nov. 4,
  2018) ............................................................................................................................. 22

*Hayes v. MagnaChip Semiconductor Corp.*,
  No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21,
  2016) ............................................................................................................................. 17

*Hemphill v. San Diego Association of Realtors*,
  225 F.R.D. 616 (S.D. Cal. 2004) ................................................................................ 20

*Hoffman v. Bank of America, N.A.*,
  No. 12-cv-00539 DHB (S.D. Cal. Nov. 6, 2014)........................................................ Ex. B

*Hunt v. VEP Healthcare Inc.*,
  No. 16-CV-04790-VC, 2017 U.S. Dist. LEXIS 139700 (N.D. Cal. Aug.
  22, 2017) ...................................................................................................................... 16

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
  No. 3:07-cv-5944 JST, 2016 U.S. Dist. LEXIS 24951 (N.D. Cal. Jan. 28,
  2016) ............................................................................................................................. 22

*In re Charles Schwab Corp. Securities Litigation*,
  No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. Apr. 19,
  2011) ............................................................................................................................. 23

*In re LDK Solar Securities Litigation*,
  No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168 (N.D. Cal. July 29,
  2010) ............................................................................................................................. 22

*Kakani v. Oracle Corp.*,
  No. C 06-06493 WHA, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19,
  2007) ............................................................................................................................. 22

*Knell v. FIA Card Services*,
  No. 12-cv-00426 WVG (S.D. Cal. Aug. 15, 2014) .................................................... Ex. B

*Marenco v. Visa Inc.*,
  No. 10-8022 DMG (VBKx), 2011 U.S. Dist. LEXIS 140527 (C.D. Cal.
  Dec. 6, 2011)............................................................................................................... Ex. B

*McCabe v. Six Continents Hotels Inc.*,
  No. 12-cv-04818 NC, 2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June 30,
  2015) .......................................................................................................................... Ex. B

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES (cont.)**

Page

**Federal Cases**

*McDonald v. Bass Pro Outdoor World LLC,*
    No. 13-cv-889-BAS(DHB), 2014 U.S. Dist. LEXIS 109080 (S.D. Cal.
    Aug. 5, 2014) .................................................................................. 11, 12, Ex. B

*Medeiros v. HSBC Card Services,*
    No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484 (C.D.
    Cal. Oct. 23, 2017) ......................................................................... 12, 19, Ex. B

*Nader v. Capital One Bank, N.A.,*
    No. 12-cv-01265 DSF, 2014 U.S. Dist. LEXIS 194211 (C.D. Cal. Nov.
    17, 2014) .............................................................................................. Ex. B

*Officers for Justice v. Civil Service Commission,*
    688 F.2d 615, 625 (9th Cir. 1982) ........................................................... 1, 13

*Reed v. 1-800 Contacts Inc.,*
    2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) ................................... Ex. B

*Rieckborn v. Velti PLC,*
    No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................17

*Rodriguez v. Bumble Bee Foods, LLC,*
    No. 17cv2447-MMA (WVG), 2018 U.S. Dist. LEXIS 69028 (S.D. Cal.
    Apr. 24, 2018) ....................................................................................18

*Skuro v. BMW of North America, LLC,*
    Case No. 10-8672 GW (FFMx) (C.D. Cal. 2012) ....................................... Ex. B

*Stone v. Howard Johnson International Inc.,*
    No. 2:12-cv-01684-PSG-MAN (C.D. Cal. Apr. 24, 2015)............................ Ex. B

*Taylor v. West Marine Products Inc.,*
    No. C 13-04916 WHA, 2015 U.S. Dist. LEXIS 66705 (N.D. Cal. May 21,
    2015) ................................................................................................22

*Walsh v. CorePower Yoga LLC,*
    No. 16-cv-05610-MEJ, 2017 U.S. Dist. LEXIS 163991 (N.D. Cal. Oct. 3,
    2017) ................................................................................................20

*Zaklit v. Nationstar Mortgage LLC,*
    No. 5:15-cv-2190-CAS(KKx) (C.D. Cal. Jan. 11, 2019) ............................. Ex. B

**California Cases**

*Bluford v. Safeway Stores, Inc.,* Case No. CV014837 (Super. Ct. Cal. Cty. of
    Alameda)...........................................................................................24

*Bluford v. Safeway Stores, Inc.,* Case No. CV028541 (Super. Ct. Cal. Cty. of
    Alameda)...........................................................................................24

**Federal Statutues**

Fed. R. Civ. Proc. 12 ................................................................................6
Fed. R. Civ. Proc. 23 ................................................................................1
Fed. R. Civ. Proc. 37(e) ............................................................................6

1

**TABLE OF AUTHORITIES (cont.)**

2

3                                                                                          **Page**

**California Statutes and Tariffs**

Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law) ................................................... *passim*

Cal. Bus. & Prof. Code § 17500 (False Advertising Law) .................................................... *passim*

Cal. Civ. Code § 1559 (breach of third party beneficiary contract) ...............................................2

Cal. Civ. Code § 1572 (fraud)............................................................................................2

Cal. Civ. Code §§ 1573, 1577 (negligent misrepresentation)........................................................2

Cal. Civ. Code § 1622 (breach of oral contract) ....................................................................2

Cal. Civ. Code § 1750 *et seq.* (Consumers Legal Remedies Act) ...................................... *passim*

Cal. Code Civ. Proc. § 415.40 ..........................................................................................5

Cal. Pen. Code § 632 *et seq.* (Recording Law) ............................................................... *passim*

Cal. Pub. Util. Code §§ 980-989.5 (regulations on core transport agents)......................................2

PG&E Gas Rule 23 ................................................................................................. *passim*

**Other Authorities**

2 H. Newberg, *Newberg on Class Actions* § 11.47 (2d ed. 1985) ................................................19

Direct Media Response Rate, CPA and ROI Benchmarks,
    MARKETINGCHARTS.COM (Apr. 14, 2015), https://www.marketingcharts.
    com/featured-53645 (citing data from the Direct Marketing Association) ........................3

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
(3:17-CV-05351-WHA)**

# I.  **INTRODUCTION**

By this Motion for Preliminary Approval of Class Settlement ("Motion"), Plaintiffs/class representatives Emily Fishman ("Fishman") and Susan Faria ("Faria") seek preliminary approval of a proposed settlement agreement with Defendants Tiger Natural Gas Inc. ("Tiger"), Community Gas Center Inc. ("CGC"), and John Dyet ("Dyet").  The proposed settlement is fair, reasonable, and adequate, *see Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982), and meets the requirements of the recent amendments to Federal Rule of Civil Procedure 23 (effective December 1, 2018) and recent updates to procedural guidance for class action settlements issued by this Court on November 1, 2018 (the "Guidelines").  The Court should grant preliminary approval of the proposed settlement.

# II.  **ISSUE PRESENTED**

Is the proposed settlement of the certified Recording Law claim (Cal. Pen. Code § 632 *et seq*). and the presently uncertified Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq.*) and Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 *et seq.*) claims – to which all Parties have agreed – fair, reasonable, and adequate, pursuant to the requirements for such settlements under Fed. R. Civ. P. 23 and the Court's Guidelines?

# III.  **BACKGROUND**

## A.  **Summary of the Claims**

This lawsuit involves claims that Tiger, by its telemarketers Energy Choice Center Inc. and Defendant CGC (both solely owned by Dyet), made unlawful telemarketing Sales Calls advertising Tiger's natural gas capped-price program ("Program"[1]) to California consumers and small businesses within the territory of Pacific Gas & Electric Company ("PG&E"), and that Dyet personally and Tiger are both liable for Dyet's companies' unlawful telemarketing.  *See* Motion for Class Certification (Dkt. 177), generally.

---

[1] The Program involves capping the rate a customer would pay for natural gas *supply* (aka "procurement"), but has nothing to do with gas *delivery*.

The operative Third Amended Complaint ("3AC") (Dkt. No. 101) contains 13 causes of action.[2]  Relevant for this settlement, the 3AC alleges that the Sales Calls contained confidential information for which Plaintiffs and class members had a reasonable expectation of privacy, and that the Sales Calls were recorded without the consent of the recipients.  Plaintiffs also allege that the Sales Calls – during which the contracts between Tiger and its new customers were formed – included material misrepresentations and omissions upon which Plaintiffs and the class relied, including:

> a) the California Public Utilities Commission ("CPUC") had processed PG&E's requests to increase gas supply prices, when in fact PG&E's prices were decreasing, and that Tiger's Program would protect customers from the [false] "supply rate increases";[3]
>
> b) Tiger's prices were variable based on the market price, when in fact they did not track market prices and were almost always at the maximum cap; and
>
> c) Tiger's Program was free, when in fact there was a daily charge of $0.05 or $0.25.

In addition to these statements, the telemarketers promoting Tiger's Program omitted Tiger's price-per-therm (as opposed to the price cap) during the Sales Calls and during the subsequent Third-Party Verification Calls, and Tiger omitted both the price-per-therm *and* the price cap from the written terms and conditions that were allegedly mailed to new customers.  The telemarketers' misrepresentations and omissions, which Tiger reviewed and approved, misrepresented that Tiger's Program and price cap of $0.69 per therm delivered a benefit to

---

[2] California Recording Law (Cal. Pen. Code § 632 *et seq.*), breach of oral contract (Cal. Civ. Code § 1622), violations of PG&E Gas Rule 23, breach of third-party beneficiary contract (Cal. Civ. Code § 1559), violations of the Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 *et seq.*), fraud (Cal. Civ. Code § 1572), negligent misrepresentation (Cal. Civ. Code §§ 1573, 1577), violations of Regulations on Core Transport Agents (Cal. Pub. Util. Code §§ 980-989.5), violations of the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), and four for violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*).

[3] PG&E's *delivery* rates were increasing, but since PG&E delivers gas to Tiger's customers, Tiger customers still have to pay PG&E's higher delivery rates.  This lawsuit is entirely about *supply* rates.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
(3:17-CV-05351-WHA)**

customers when in fact Tiger charged customers two-three times as much as PG&E would have charged for the same gas usage.

Tiger's records show that it, by its telemarketers, enrolled 26,637 consumer and business customers within PG&E's territory in Northern/Central California since August 18, 2013 (the beginning of the class period).  Order re Motion for Class Certification at *4 (Dkt. No. 250).  Dyet's telemarketing companies probably called 10 times that number,[4] although Tiger claims it never knew how many calls were made and Dyet claims that call logs were lost.  Balsam Decl. at ¶ 2.  To avoid ascertainability issues that could have precluded certification of the class, Plaintiffs subsequently redefined the class to exclude call recipients who did not enroll.  Therefore, the class is comprised of consumers and businesses who received a telemarketing call *and* actually enrolled in the Program, i.e., those for whom Tiger has records.

The Court certified the class's claims under the California Recording Law.  The Court denied without prejudice certification of the UCL and CLRA claims, stating that although Plaintiffs demonstrated they could theoretically calculate classwide damages, Plaintiffs had not yet shown that they had the data in hand to do so.  The Court (Magistrate Judge Hixson) subsequently ordered Tiger to produce, by January 4, 2019, the consumption data for each customer enrolled in Tiger's Program that Plaintiffs had requested in discovery (Dkt. No. 335 at 5:2-12).  Since Plaintiffs already had PG&E and Tiger's gas supply prices during the class period, the consumption data was the last piece Plaintiffs required to calculate classwide damages without using consumption data from PG&E.  Had the Parties not reached a settlement, Plaintiffs would have filed a Second Supplemental Motion for Class Certification to address the Court's concerns, and Class Counsel believe the Court would ultimately have certified the UCL and CLRA claims.

Following the Court's direction to simplify the case, Plaintiffs limited the Trial Plan to just the Recording Law, UCL, and CLRA claims.  The other causes of action were not certified

---

[4] Direct Media Response Rate, CPA and ROI Benchmarks, MARKETINGCHARTS.COM (Apr. 14, 2015), https://www.marketingcharts.com/featured-53645 (citing data from the Direct Marketing Association).

by the Court and were not included as part of the settlement with Defendants.  If the Court approves the settlement, Plaintiffs intend to dismiss those remaining claims without prejudice.

**B.  Procedural History**

### 1.  Pre-Litigation

 Plaintiff Fishman, by counsel, sent a letter to Tiger on July 8, 2016, alleging violations of the CLRA, threatening a class action, and demanding that Tiger take steps to preserve relevant evidence.  In response, Tiger promptly produced a recording of the Sales Call that CGC made to Fishman, for the purpose of refuting her claims.  However, Tiger did not direct Dyet to preserve evidence of Sales Calls until September 2017 (Dkt. No. 249 at 3:23-25).

Fishman sent a second CLRA letter on June 22, 2017, and Tiger did not respond within 30 days.  Order on Rule 37(e) Motion at *3 (Dkt. No. 249), Balsam Decl. in Support of Motion for Class Certification at ¶ 36 and Ex. 32A-32B (Dkt. No. 177-1).

### 2.  Complaint and Removal

Fishman filed a putative class action against Tiger and DOE defendants on August 18, 2017 in the Superior Court of California, County of Marin.  Tiger removed the Action to the U.S. District Court for the Northern District of California on September 15 (Dkt. No. 1).  On September 22, Tiger filed a Motion to Dismiss (Dkt. No. 8).

### 3.  First Amended Complaint

Rather than opposing Tiger's Motion to Dismiss, Fishman – now joined by Faria – filed a First Amended Complaint on October 6, 2017 (Dkt. No. 13), also adding "Community Gas Center, a business entity of unknown organization" as a Defendant.  However, Plaintiffs were unable to serve "Community Gas Center" at the San Francisco address it falsely claimed on its website (Dkt. No. 104-2).

### 4.  Second Amended Complaint

On November 14, 2017, Plaintiffs and Tiger stipulated to filing a Second Amended Complaint ("2AC") (Dkt. No. 27), which properly named CGC as a Colorado corporation, and after the Court granted the stipulation, Plaintiffs filed the 2AC (Dkt. No. 29) on November 17.

1     Plaintiffs discovered that in addition to CGC's false address in San Francisco, *supra*, the

2    Glenwood Springs, Colorado street address Dyet used to sign up for a Post Office box for CGC

3    (the same Post Office box that Dyet used to register CGC with the Colorado Secretary of State)

4    was false too (Dkt. No. 64), as was another address Plaintiffs found in New Port Richey, Florida

5    (Dkt. No. 73), and so Plaintiffs were unable to serve CGC.  On February 22, 2018, in response to

6    a Court order, Tiger provided Plaintiffs with the contact information for CGC's attorney Eric

7    Allen in Salt Lake City, Utah.  A paralegal in Allen's office stated that the office was authorized

8    to accept service, and Plaintiffs promptly served the summons and 2AC by certified/return-

9    receipt mail pursuant to Cal. Code of Civil Procedure § 415.40.  On July 25, 2018, Allen

10   personally confirmed to Plaintiffs' counsel via telephone that he was authorized to, and did in

11   fact, accept service for CGC (Dkt. Nos. 171-1, 244-1).

12    On December 29, 2017, Tiger filed a Motion to Dismiss and a Motion to Strike the 2AC

13   (Dkt. Nos. 49, 50), Plaintiffs opposed, and on March 8, 2018, the Court ruled mostly in

14   Plaintiffs' favor (Dkt. No. 82): a) denying Tiger's claims for exclusive jurisdiction by the CPUC;

15   b) granting only Tiger's Motion to Dismiss as to the Telephone Consumer Protection Act cause

16   of action; and c) granting Plaintiffs leave to amend as to the other causes of action.

17        ***5.   Operative Third Amended Complaint***

18    Plaintiffs filed a Motion for Leave to Amend, attaching the [Proposed] Third Amended

19   Complaint ("3AC") (Dkt. No. 85) on March 29, 2018.  Tiger opposed (Dkt. No. 86), and on June

20   4, the Court mostly granted Plaintiffs' MLAC (Dkt. No. 100), including: a) revised language as

21   to claims under the PG&E Gas Rule 23 Tariff and for third-party beneficiary contract claims as

22   to the Core Gas Aggregation Services ("CGAS") Agreement between Tiger and PG&E; b)

23   maintaining the Do Not Call Sub-Class; c) adding Dyet as an individual Defendant; and d) again

24   rejecting Tiger's argument for exclusive CPUC jurisdiction.  Plaintiffs filed the 3AC on June 9

25   (Dkt. No. 101).[5]

26   _____

27   [5] Plaintiffs filed a [Corrected] Motion for Leave to Amend to file a Fourth Amended Complaint
     ("4AC") (Dkt. No. 120) on July 9, 2018, which the Court granted (Dkt. No. 144).  However, due
28   to the Court's admonition that adding additional Dyet telemarketing companies could complicate
     certification, Plaintiffs elected not to file the [Proposed] 4AC (Dkt. No. 146).

1   The Court found that Dyet was evading service based on Plaintiffs' allegations that his
2   claimed addresses were false, and on July 20, 2018, the Court authorized service of process on
3   Dyet, and service of subpoenas to Dyet's other telemarketing companies by serving Dyet, via
4   email (Dkt. No. 144).  Plaintiffs did not seek to serve CGC by email at this time because they
5   believed they had properly served CGC by serving Allen in February, *supra* (Dkt. No. 244-1).
6   Dyet, acting *in pro per* at that point, filed an Answer to the 3AC (Dkt. No. 167) on August 16.

7   Tiger filed its Answer to the 3AC on June 25, 2018 (Dkt. No. 106).  Because this Answer
8   suffered from the same problems as its earlier Answer (Dkt. No. 22) – lack of factual support and
9   purported affirmative defenses that are not really affirmative defenses – Plaintiffs filed another
10   Motion to Strike/Motion for More Definite Statement (Dkt. No. 116) on July 7, similar to their
11   prior Rule 12 Motion (Dkt. No. 24).  On September 18, the Court granted Plaintiffs' Rule 12
12   Motion as to 34 of 35 defenses (Dkt. No. 175), giving Tiger leave to amend a few of the
13   defenses.  Tiger filed a [Proposed] Amended Answer (Dkt. No. 241) on November 13 and an
14   Amended Answer (Dkt. No. 259) on November 26.

### 6.   *Class Certification and Inference Order*

16   Plaintiffs filed their Motion for Class Certification (Dkt. No. 177) on September 20,
17   2018.  Plaintiffs concurrently filed a Motion under Rule 37(e) (Dkt. No. 196) seeking discovery
18   sanctions in the form of an inference order that all Sales Calls contained the same statements/
19   omissions as the Sales Call to Fishman and were likewise recorded without consent.  The basis
20   of the requested inference was that Defendants failed to preserve and destroyed evidence of the
21   other Sales Call recordings; recordings they were required to make and that Tiger was required
22   to preserve under PG&E Gas Rule 23.  At that point, the recording of the Sales Call to Fishman
23   was the only one Defendants had produced.  In fact, two months earlier, Tiger had stipulated that
24   the Fishman Sales Call recording was the only one it had, and the Court had entered an Order to
25   that effect (Dkt. Nos. 156, 157).  Nevertheless, Dyet testified in his deposition in October 2018
26   that CGC had recorded additional Sales Calls (Dkt. No. 225), and Tiger was immediately able to
27   produce these recordings when the Court *sua sponte* ordered it to do so (Dkt. Nos. 225, 231).

28

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**
**(3:17-CV-05351-WHA)**

At the Court's request, Plaintiffs filed a [Corrected] Trial Plan (Dkt. No. 243) on November 13, 2018, streamlining the class definitions and limiting the claims for which Plaintiffs sought certification to the Recording Law claim, certain UCL claims[6], and the CLRA claim.

On December 4, 2018, the Court entered an Order (Dkt. No. 250) certifying the class as to the Recording Law claim only. The Court did not certify the UCL and CLRA claims, as it found that Plaintiffs had not demonstrated that the data existed to determine classwide damages. The Court entered another Order (Dkt. No. 249) holding that the jury would be informed of Defendants' failure to preserve and active destruction of evidence, and would be permitted to decide that the Sales Call to Fishman was the same as all Sales Calls to class members, and that the Court believed it would be reasonable for the jury to so find.

On December 16, 2018, Plaintiffs filed a Supplemental Motion for Class Certification (Dkt. No. 313), supported by expert testimony, demonstrating that the data to support classwide damages exists in PG&E's records, and how damages could be calculated. On December 19, the Court denied the Motion (Dkt. No. 331) on the grounds that Plaintiffs did not have the data in hand, but left the door open for another Supplemental Motion if and when Plaintiffs have the data. At the time the Parties reached this settlement and the Court entered a stay, Tiger was due to produce (by January 4, 2019) its customers' gas consumption data (Dkt. No. 335 at 5:2-12), the last data necessary for Plaintiffs to calculate classwide damages (without necessity of Plaintiffs' procuring any data from PG&E, the apparent unavailability of which had caused the Court concern).

### 7. *CGC's Motion to Dismiss*

Due to Dyet's deposition testimony that he did not authorize his attorney Allen to accept service of process on behalf of CGC, the Court denied Plaintiffs' request for entry of CGC's

---

[6] Per [Corrected] Trial Plan: a) <u>unlawful prong</u>, for violations of Regulations on Core Transport Agents, PG&E Gas Rule 23, CLRA, False Advertising Law; b) <u>unfair prong</u>, for misrepresentations as to Tiger's pricing and PG&E pricing, violations of Regulations on Core Transport Agents; c) <u>fraudulent prong</u>, for misrepresentations as to Tiger's pricing and PG&E pricing.

default (Dkt. No. 226) on November 4, 2018.  On November 13, Plaintiffs filed a Motion to serve CGC by serving Dyet by email (Dkt. No. 244), which – due to Dyet's aforementioned false addresses – the Court granted on December 6 (Dkt. No. 284).  Plaintiffs immediately served CGC.  CGC filed a Motion to Dismiss on December 31 (Dkt. No. 360), arguing that Plaintiffs failed to prosecute its action against CGC, while ignoring Plaintiffs' documented history of attempting to serve Dyet and his companies.  The Parties reached a settlement, and the Court stayed the Action, before Plaintiffs filed their Opposition to CGC's motion.

### 8. *Discovery Disputes*

The Parties engaged in extensive written discovery and depositions, which involved substantial and contentious motion practice.  Plaintiffs filed four discovery letter briefs against Tiger (Dkt. Nos. 107, 132, 180, and 354/358), and one against Dyet (Dkt. No. 269).  Tiger filed one against Plaintiffs (Dkt. No. 261).  Plaintiffs and Tiger filed seven joint letter briefs (Dkt. Nos. 320, 321, 322, 346, 347, 348, 353).  Plaintiffs and Dyet filed two joint letter briefs (Dkt. Nos. 342, 343).  Plaintiffs took 10 depositions (including one of CGC's telemarketers and one of Tiger's former attorneys), and defended six; Tiger deposed each Plaintiff twice and both of Plaintiffs' ESI consultants.  Several disputes arose during depositions that required Court intervention.  Harker Decl. at ¶ 2; Balsam Decl. at ¶¶ 3-4.  Plaintiffs' deposition of Dyet was forthcoming when the case settled, and the Court also authorized Plaintiffs to take four additional depositions of Tiger and its personnel, at Tiger's expense, because Tiger's Rule 30(b)(6) witness was unprepared to discuss multiple topics noticed in advance, and because Tiger had not produced requested documents before the first round of depositions.  Harker Decl. at ¶ 3.

The Court (Judge Alsup and Magistrate Judge Hixson) ruled in Plaintiffs' favor on most of the discovery letter briefs as well as disputes that arose during depositions, *id*. at ¶ 4, although it did not issue a ruling on Plaintiffs' letter brief regarding privileged documents Tiger withheld based on its asserted common interest privilege.  The court also appointed a separate Special Master, Daniel Garrie, to make findings with respect to Tiger's allegations – which were never formally briefed and that Plaintiffs never had an opportunity to oppose – that Plaintiffs did not preserve unspecified information stored on their electronic devices.  Plaintiffs filed two separate

1  discovery motions for a protective order regarding Garrie's scope of work (Dkt. Nos. 354, 3548).

2  Garrie had not completed his analysis at the time the Parties reached their settlement.

3  **C.  Settlement Conference**

4        On December 21, 2018, Magistrate Judge Laporte confirmed the position of Judge Alsup

5  that the Parties could negotiate Plaintiffs' UCL and CLRA claims if and only if they were able to

6  first settle the Recording Law claim on behalf of the certified class.  Balsam Decl. at ¶ 5.  The

7  Parties entered the settlement conference on January 2, 2019 with certification of only the

8  Recording Law claim.

9        The Parties reached a classwide settlement for the certified Recording Law claim that

10  includes $3.7 million and an injunction against Tiger and its telemarketers recording further

11  telemarketing sales calls without consent.  Because Defendants represented there was no more

12  money to be had, the Parties then negotiated a classwide settlement for the uncertified UCL and

13  CLRA claims based on prospective, injunctive relief prohibiting Tiger from engaging in

14  misrepresentations and price omissions in marketing natural gas in PG&E's territory.

15  **IV.  INFORMATION ABOUT THE SETTLEMENT**

16        Despite Tiger's stated intent to provide a draft written settlement agreement, it ultimately

17  declined to do so, and indicated its intent to stand on the agreement as read into the record at the

18  settlement conference.  Balsam Decl. at ¶ 6 and Ex. 2.

19  **A.  Settlement Class**

20        The Court's Order Re Class Certification (Dkt. No. 250) certified the following class

21  with respect to the members' Recording Law claim:

22        **Tiger/PG&E Customer Class**:  All California consumers and businesses that
were customers of Pacific Gas & Electric Company for gas supply and/or gas

23  delivery at the time they enrolled in Tiger Natural Gas, Inc.'s ("Tiger") capped
rate price protection program (the "Program") after receiving a telemarketing

24  Sales Call advertising the Program, at any time from August 18, 2013 to the

25  present.[7]

26

27  _____

28  [7] The Motion for Class Certification did not explicitly state as much, but Plaintiffs intended the
exclusions specified in the operative 3AC at ¶ 87 to carry over: Defendants' officers, directors,
legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and any

**9**

Earlier versions of the class definition and the slightly-modified subsequent version from the [Corrected] Trial Plan (Dkt. No. 243) are shown in <u>Exhibit A</u> to this Motion.

The Parties did not negotiate any different class definitions during the settlement conference, so the settlement class is as stated in the Order Re Class Certification.  Its members include 26,637 consumer and small business customers, each of whom is entitled to identical statutory recovery for the certified Recording Law claim.

The Trial Plan included UCL claims on behalf of the same, defined class, and proposed a sub-class of consumers with additional claims under the CLRA (businesses do not have standing under the CLRA).  *See* <u>Exhibit A</u>.[8]

After the Parties settled the class's certified Recording Law claim, the Parties then agreed to settle the uncertified UCL and CLRA claims for the consideration of important injunctive relief.  As discussed above in Section III(B)(6) and in the Court's Order re Class Certification (Dkt. No. 250) and Order Denying Supplemental Motion for Class Certification (Dkt. No. 331), the only obstacle to certification of the UCL and CLRA claims was Plaintiffs having data in hand to calculate classwide damages.  Since Plaintiffs seek only injunctive relief and not monetary damages for the UCL and CLRA claims, this Court should certify these claims for the class (and consumer sub-class) accordingly.

**B.  <u>Injunctive Relief</u>**

The injunctive relief components are highly significant because they directly remedy the conduct that is at issue in this Action; i.e., recording calls without the recipients' consent, and making materially false claims/omissions.  The settlement agreement states that "all Sales Calls that are recorded in the future made by Tiger or by entities engaged by Tiger will contain a warning at the beginning of the Sales Call that the call is being recorded" and that "Tiger [ ] and

---

judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

[8] The Trial Plan also proposed a potential sub-class of customers who were customers of YEP Energy before enrolling in Tiger's Program.  *See* <u>Exhibit A</u>.  In its Order re Class Certification, the Court ruled that the burden was on Tiger to demonstrate that any customer was a former YEP customer for purposes of arguing that there were no actual damages.

any entities engaged by it [to] make Sales Calls in the future will not misrepresent Tiger's charges or PG&Es charges in any such Sales Calls." Balsam Decl. at ¶ 6 and Ex. 2, 5:11-17.

Therefore, this injunctive relief benefits not only the class as currently defined, but all consumers and small businesses in PG&E's territory to whom Tiger could market its gas supply.

**C. Monetary Relief via Common Fund; Comparable Settlements**

Plaintiffs' expert calculated statutory damages plus interest across the class for the certified Recording Law claim to be $183 million (26,637 class members x $5,000 statutory damages = $133 million, plus $50 million in interest) (Dkt. No. 308). This figure does not include any actual damages for the uncertified UCL and CLRA claims, which were based on Tiger's undisclosed daily charges and much higher prices vs. PG&E.

For the reasons detailed below, namely Defendants' limited financial resources and stated intent to litigate to the bitter end if necessary, Plaintiffs have a good-faith belief that this settlement of $3.7 million – which is more than half of Tiger's retained earnings, Walker Decl. at ¶ 5 – is in the best interest of the class. (Dyet is contributing $400,000 towards the settlement via cash payment to Tiger and waived commissions. However, Tiger agreed to fund the entire $3.7 million settlement as a one-time payment to the class. Johnson Decl. at ¶ 9, Walker Decl. at ¶ 17, Dyet Decl. at ¶ 5.)

Plaintiffs expect that each class member will receive more than $90 for the certified Recording Law claims, after payment from the Common Fund ($3.7 million) for proposed attorneys' fees (25% or $925,000), costs not to exceed $250,000, and incentive awards ($3,000), as approved by the Court. There is no provision for reversion; rather, any unclaimed funds will be directed to a *cy pres* recipient, described below. While admittedly low compared to the statutory damages of $5,000 per call, this proposed settlement is within the range of other recently-approved class action settlements for violations of Cal. Penal Code § 632 *et seq.* and higher than many.

For example, in *McDonald v. Bass Pro Outdoor World LLC*, the court justified the settlement relative to the $5,000 statutory damages ($132.57 per class member net after attorneys' fees/expenses), as follows:

> Though the proposed settlement would be considerably less than $5,000 per class member, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

No. 13-cv-889-BAS(DHB), 2014 U.S. Dist. LEXIS 109080, at *20 (S.D. Cal. Aug. 5, 2014).

*Medeiros v. HSBC Card Services* ruled that a much lower gross settlement of $7.54 per class member was still reasonable, despite an objector's argument that the potential statutory damages of $5,000 per call is much greater, because "even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case"; "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"; and "The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial."  No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *14-15 (C.D. Cal. Oct. 23, 2017) (citations omitted).

Exhibit B to this Motion sets forth recent approved class settlements for Recording Law claims, ranging from $606.56 per class member at the high end to $0.75 at the low end.  As shown, the instant settlement of $90 (estimated) per-class member is well within the range of class action settlements approved for violations of Cal. Penal Code § 632 *et seq.*  Moreover, class members will receive this cash amount without needing to file claim forms or prove up actual damages.  The Class Administrator will simply mail out checks.

**D.  Release of Claims**

For certified Recording Law claims, as stated during the settlement conference:

> The settlement will consist of a payment of $3.7 million from Tiger Natural Gas to Plaintiffs and the certified class members [i.e., for the Recording Law claims]. It will also consist of releases between Plaintiffs and the certified class and Tiger, as well as releases between Plaintiffs and certified class [members] and Mr. Dyet and [CGC].

> In addition, Tiger will agree that all sales calls that are recorded in the future made by Tiger or by entities engaged by Tiger will contain a warning at the beginning of the sales call that the call is being recorded.

**12**

For uncertified UCL and CLRA claims, as stated during the settlement conference:

> Tiger agrees that it and any entities engaged by it [to] make sales calls in the future, will not misrepresent Tiger's charges or PG&E's charges in any such sales calls.

Balsam Decl. at ¶ 6 and Ex. 2, 5:5-17.

The agreement, as stated at the settlement conference, does not contain any releases between Tiger and Dyet/CGC.  *Id.* at ¶ 6 and Ex. 2, generally.

Plaintiffs will dismiss without prejudice the remaining claims in the operative 3AC (i.e., all claims except the Recording Law, UCL and CLRA claims that were discussed and released during the settlement conference).

## E.  The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion

In *Officers for Justice*, the Ninth Circuit held:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.  [ ]  This is by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors. The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case.

688 F.2d at 625.  All of these factors are satisfied here.

### 1.  The Strength of Plaintiffs' Case

This Court already certified the class's Recording Law claim, and coupled with Defendants' destruction of evidence and the inference order under Rule 37(e), Plaintiffs believe their case is very strong.

Plaintiffs believe they would have been able to pierce the corporate veil on Dyet's defunct companies, not least because Dyet was the sole owner and casually flitted from one to the next, transferring assets from one to another without consideration, and assigning contractual benefits from one to another.  For example, Stephanie Hubbard, one of Dyet's telemarketers, was

hired by CGC and came into work one day – same address, same desk, same computer – to learn that she now worked for Consumer Protection Association LLC; she did not even sign a new employment contract.  Balsam Decl. at ¶ 3 and Ex. 1, 13:13-14:11 and 28:2-7.  Moreover, Dyet signed a contract on behalf of CGC with Tiger with an effective date of September 1, 2014 – weeks before he actually created CGC on September 24, 2014 – and "CGC" made calls on behalf of Tiger in August 2014, even before the effective date.  *Id.* at ¶ 7 and Ex. 3-4.

This Court had not yet certified the UCL and CLRA claims, but – had the Parties not reached this settlement on January 2 – Tiger would have been required to produce class members' gas consumption data by January 4 that would have allowed Plaintiffs to calculate classwide damages, eliminating any need for Plaintiffs to seek data from PG&E.  That appears to have been the sole barrier to certification on those claims.

Class Counsel believe Plaintiffs would have prevailed on the UCL and CLRA claims. While the telemarketer on the Sales Call to Fishman claimed that the CPUC had processed PG&E's request for an 18.8% supply price increase, and that Tiger would protect Fishman from these "supply rate increases,"  Plaintiffs can demonstrate through direct and incontrovertible evidence that the 18.8% is a consolidated figure for electricity generation, electricity delivery, and gas delivery, but *not* gas supply (Dkt. No. 177-1 at ¶¶ 7, 25 and Ex. 2A at 127:8-18, Ex. 21 at *3).  The telemarketer also represented that Tiger's prices were variable based on the market price, *id.*; yet Plaintiffs can demonstrate that Tiger's prices do not track market prices.  The telemarketer repeatedly claimed that it was free to participate in the Program, *id.*; even though Tiger does not dispute that it really charges $0.05 (or $0.25) per day.  Tiger never provided proof that it mailed written terms and conditions to new customers, and the terms and conditions it did produce do not comply with the Gas Rule 23 or the Public Utilities Code because they fail to state Tiger's per-therm prices or even its price cap.  Balsam Decl. at ¶ 8.

Class Counsel also believe Plaintiffs have a strong case to hold Tiger liable for the actions of its telemarketers who advertised its Program, not least because: a) Tiger aided and abetted the unlawful practices by reviewing and approving scripts that did not mention recording, *see* Cal. Pen. Code § 31; b) Tiger aided and abetted the unlawful practices by listening to actual

**14**

audio recordings that did not obtain consent to record and contained materially false statements/ omissions and failing to object, while continuing to profit from this business; c) Tiger delegated its non-delegable obligation under PG&E Gas Rule 23 to preserve recordings of Sales Calls to Dyet; and d) Tiger ratified and profited from Dyet's companies' actions.

As described above, class members' expected recovery here is well within the range of other recent class settlements for violations of the California Recording Law, and far higher than many approved settlements that do not even address the financial shortcomings of defendants addressed here.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In Plaintiffs' view, the biggest risk of further litigation is not Plaintiffs' probability of prevailing on their claims, but rather Defendants' inability to pay a judgment.  Tiger is a family-owned business with one shareholder.  Johnson Decl. at ¶ 1, Walker Decl. at ¶ 2.  Dyet is an individual, and several of his companies are defunct.  Balsam Decl. at ¶¶ 7, 9 and Ex. 4-6, Dyet Decl. at ¶¶ 1, 4.

In negotiating the monetary relief for the class members' certified Recording Law claim Plaintiffs were presented with the following facts.  Tiger sells natural gas to its customers at prices that it asserts yield only a small margin above Tiger's cost of gas,[9] and that spread – Tiger's net income – pays its employees' salaries, general expenses, etc.  Walker Decl. at ¶¶ 3-4.  Tiger retains a certain amount of earnings in a "lockbox" account controlled by its financier (which Tiger refers to as an "aggregator").  Tiger asks permission to withdraw monies from the lockbox account to pay operating expenses, and Tiger must keep a certain amount of "float" cash on hand, because it has to pay for gas before its customers pay Tiger.  *Id.* at ¶¶ 8-16.  Tiger, an S-Corporation, also issues a "dividend" to its owner who uses it in its entirety to pay Tiger's taxes.  Johnson Decl. at ¶ 1, Walker Decl. at ¶ 6.  Tiger's assets are mostly accounts receivable (payments from its customers), its liabilities are mostly accounts payable (buying, transporting, and storing gas and profit-sharing payments to Dyet's companies), and its net profits are small.

---

[9] Tiger's financial statements lump the ongoing commissions it pays to Dyet's telemarketing companies into its cost of gas, as opposed to a separate line item for an advertising or "profit-sharing" cost.

Walker Decl. at ¶¶ 3-4.  Tiger could not pay a judgment of $183 million or anywhere close to it, *id.* at ¶ 5, assuming of course that Plaintiffs are able to hold Tiger liable for Dyet's telemarketing companies' undeniable violations of California's Recording Law.  More than half of Tiger's retained earnings are being directed to this settlement, and Tiger represented that anything more would not enable it to keep operating.  Walker Decl. at ¶¶ 9-12, 15-16.  Tiger does not have insurance to cover this settlement (or a judgment).  *Id.* at ¶ 18.

"If the defendant is broke or nearly so with no prospect of future rehabilitation, a steeper discount may be warranted.  This must be proven.  Counsel should normally verify a claim of poverty via a sworn record, thoroughly vetted."  (Dkt. No. 65 at ¶ 9).  Similarly,

> This means the workers would recover about 4.3% of what VEP allegedly owes them. If a defendant is to receive a discount of this magnitude, there must be good reasons why. And those reasons must be explained thoroughly at the preliminary approval stage. Scrutiny of a class settlement should be no less careful at preliminary approval than at final approval, and the parties must provide enough information "to allow the district court to carefully evaluate the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each class member will receive from the settlement."
>
> As a partial justification for VEP's deep discount, plaintiffs' counsel asserts that VEP is experiencing financial difficulties, limiting its ability to pay a higher settlement or judgment. Courts should view such assertions with great caution, as employers tend to make threats about inability to pay more often than they are actually unable to pay. Therefore, if this sort of assertion is to be the basis for approval of a discounted class settlement, it must be supported with detailed evidence.

*Hunt v. VEP Healthcare Inc.*, No. 16-CV-04790-VC, 2017 U.S. Dist. LEXIS 139700, at *1-3 (N.D. Cal. Aug. 22, 2017).

For the reasons set forth in Tiger and Dyet's Declarations, Class Counsel believes that Tiger and Dyet have sufficiently explained their inability to pay a judgment, and cannot pay more in settlement than the negotiated $3.7 million.  *See also* Declaration of Allan von Halle at ¶¶ 6-8.

Furthermore, Tiger has aggressively litigated this matter to the point that its attorneys' fees are likely to be substantially impacting its operating margins.  Balsam Decl. at ¶ 10. Therefore, continuing litigation would only hurt the class's ultimate recovery.  Given

**16**

1    Defendants' limited financial resources, it is in the class's interest to cut off the litigation as soon

2    as possible.

3           Plaintiffs suggested at the settlement conference that Tiger could and should take a loan

4    to increase the settlement to the class.[10]  *Id*. at ¶ 11.  However, Tiger asserts that the terms of its

5    Security Agreement and Supplier Agreement prohibit it from taking out such a loan.  Johnson

6    Decl. at ¶ 6, Walker Decl. at ¶¶ 11, 13.

7           Tiger indicated in no uncertain terms that if Plaintiffs' settlement demand were too high,

8    Tiger would have no choice but to litigate the case through trial despite the very real risk of

9    annihilating damages and bankruptcy because a settlement above a certain amount – an amount

10   far below $183 million – would force Tiger into bankruptcy.  Balsam Decl. at ¶ 12.  However,

11   after trial (let alone an appeal), if Tiger prevails, it would not owe Plaintiffs anything, and if it

12   loses, it would have to seek bankruptcy protection, Walker Decl. at ¶ 16, and Plaintiffs likely

13   would not recover anything, especially since Tiger would likely pay millions more in attorneys'

14   fees and costs to take this matter through trial.  Of course, Dyet's companies' would be liable,

15   but assuming Plaintiffs can pierce the corporate veils, Dyet also does not have anywhere near

16   $183 million to pay a judgment and would also declare bankruptcy.  Dyet Decl. at ¶¶ 2, 6.

17              Had Plaintiffs continued to litigate, "the proceeds available for a settlement would
             have continued to be expended on defense-related costs."  [ ] The decision
18           to settle was therefore a pragmatic choice given that Plaintiffs "faced a real risk
             that any victory at trial would be mostly, if not wholly, symbolic due to the
19           Company's financial condition and future prospects."

20   *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS

21   162120, at *17 (N.D. Cal. Nov. 21, 2016).  Therefore, given this reality, Plaintiffs "have agreed

22   to accept a smaller certain award rather than seek the full recovery but risk getting

23   nothing."  *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal.

24   Feb. 3, 2015) (citation omitted).

25

26   _____

27   [10] This discussion from the settlement conference is not made inadmissible by Federal Rule of
     Evidence 408 because it is not related to the "validity or amount of a disputed claim."  Whether
28   or not Tiger can borrow any money is related only to the settlement amount, which is very small
     and bears little connection to the size of the class's claims.

### 3.   *The Risk of Maintaining Class Action Status*

The Court found that the class's Recording Law claims met all of the requirements of Federal Rule of Civil Procedure 23.  This ruling was based in part on its finding that Defendants failed to preserve and destroyed evidence, namely, recordings of Sales Calls that Tiger was required to keep pursuant to PG&E Gas Rule 23.

Although discovery has closed, if Defendants were somehow able to locate still more Sales Call recordings, and those recordings were both admitted and indicated that a significant number of telemarketers did in fact obtain recipients' consent to record, it is possible (but highly unlikely) that the Court could decertify the class.

If Plaintiffs had succeeded in obtaining certification of the UCL and CLRA claims, Plaintiffs similarly believe that the Court would be unlikely to decertify the claims, even if Defendants somehow, after discovery closed, produced more Sales Call recordings indicating substantially different messaging than the Fishman call.

### 4.   *The Amount Offered in Settlement*

As detailed above, the Settlement provides real benefits to the class.

Although the monetary settlement is low compared to the statutory damages, Defendants simply do not have $183 million.  If such a judgment were entered, Defendants have indicated they would simply declare bankruptcy and the class would likely get nothing.  Here, each class member should receive more than $90 – a significant amount, *not* a coupon or credit, and without needing to prove actual damages or even file a claim.

Also, Defendants have agreed to injunctive relief that benefits not only Plaintiffs and the class, but all consumers and small businesses in PG&E's territory in Northern/Central California. This was Plaintiffs' primary goal; indeed, Plaintiffs previously turned down Tiger's offer of a private monetary settlement without injunctive relief.

### 5.   *The Extent of Discovery Completed and the State of the Proceedings*

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.  *Rodriguez v. Bumble Bee Foods, LLC*, No. 17cv2447-MMA (WVG), 2018 U.S. Dist. LEXIS 69028, at *10 (S.D. Cal. Apr. 24, 2018).

The Parties reached this settlement after the Parties had an opportunity to diligently investigate the factual and legal aspects relevant to the allegations via the exchange of thousands of relevant documents, data, and multiple depositions, and after the Court certified the Recording Law claims.  Class Counsel believes the Court would have certified the UCL and CLRA claims too, since once Tiger turned over its customers' gas consumption data, enabling Plaintiffs to calculate classwide damages without seeking data from PG&E.  Although Defendants would have had to turn over more documents and data, and produce more witnesses for depositions ordered by the Court prior to the stay, Plaintiffs and Class Counsel are confident in the terms of the proposed settlement agreement, given the information garnered during discovery and during the settlement negotiations, and based, again, on Tiger's  financial disclosures and apparent inability to pay a judgment.

### 6.  The Experience and Views of Counsel

Although recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and discovery has commenced.  *See* 2 H. Newberg, *Newberg on Class Actions* § 11.47 (2d ed. 1985). Indeed, "Absent evidence of fraud or collusion, courts also should accord 'great weight' to the recommendations of counsel."  *Medeiros*, 2017 U.S. Dist. LEXIS 178484 at *15-16.

Counsel for Plaintiffs are qualified and experienced in litigation similar to the instant action, and believe that the settlement is fair, adequate, and reasonable under the circumstances.

### 7.  Reaction of Class Members to the Proposed Settlement

While this question cannot be answered accurately until after the class members receive notice of the proposed settlement, Plaintiffs believe it will be welcomed by the vast majority of class members.  While individual opt-outs could sue Tiger and theoretically obtain a higher judgment, they would incur attorneys' fees and costs as they battled experienced counsel, and may not be able to benefit from the rulings and inferences achieved by Class Counsel in this Action.  As of January 17, of the nearly 27,000 class members, there have only been 33 opt-outs. Morrison (Angeion Group) Decl. at ¶ 5.

**19**

### 8.   *There is No Fraud or Collusion*

"As a general principle, the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Hemphill v. San Diego Association of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) (citation omitted).  Also, "the presence of a mediator strongly suggests the absence of collusion or bad faith by the parties or counsel."  *Walsh v. CorePower Yoga LLC*, No. 16-cv-05610-MEJ, 2017 U.S. Dist. LEXIS 163991, at *22 (N.D. Cal. Oct. 3, 2017).

Here, the Parties engaged in a settlement conference before Magistrate Judge Laporte, the Parties did not collude or engage in fraud as to the settlement, and there is no evidence of any collusion or fraud.  Balsam Decl. at ¶ 13.

## V.   <u>SETTLEMENT ADMINISTRATION</u>

The settlement provides that the Common Fund shall pay for the class administration and notice.  Plaintiffs propose that Angeion Group of Philadelphia, an experienced class administration company that efficiently disseminated the initial Notice of Pendancy of Class Action, be appointed as the class administrators for this Settlement.  Angeion's qualifications are detailed in the Morrison (Angeion Group) Declaration.

Administration should be simple and straightforward, because Tiger has supplied its class list with contact information, and class members do not need to submit any claim forms.  All the administrator needs to do is mail notice of the settlement, process opt-outs, receive the lump-sum payment from Tiger, mail a check to each class member (calculating the pro rata amount after this Court approves fees and costs), and mail any unclaimed funds to the *cy pres* recipient.

Plaintiffs obtained three bids for this project, and Angeion was the least expensive.  Rogers Decl. at ¶ 2.  When the Court ordered that class notice must be accomplished via long-form notice sent by first class mail instead of a postcard or email, Angeion adjusted its bid modestly and reasonably and efficiently mailed the approved notice to the certified class.  Its fees are reasonable in light of the settlement amount and the administrator's duties.

Plaintiffs' attorneys have not worked with Angeion in the past two years.  Plaintiffs and their attorneys do not have any financial interest in Angeion or otherwise have a relationship

with Angeion that could create a conflict of interest.  Rogers Decl. at ¶ 3, Balsam Decl. at ¶ 14, Harker Decl. at ¶ 5.

## VI.  **NOTICE**

The Court certified the class for purposes of the Recording Law claim under Rule 23(b)(3).  Plaintiffs sought certification of the UCL and CLRA claims under Rule 23(b)(3) as well, and now seek certification of those claims for settlement purposes.  Under Rule 23(e)(1)(B), "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

Because Tiger already has class members' contact information, and the third-party administrator has already sent notice to the certified class, further notice should be relatively easy.  Plaintiffs' proposal for the Class Notice is included in <u>Exhibit C</u> to this Motion.

Full costs of administration the proposed settlement (including the initial notice of class certification, already mailed) are estimated by the third-party administrator to be $59,993. Morisson Decl. at ¶ 12 and Ex. A.

## VII.  **OPT-OUTS**

Plaintiffs' proposal for opt-out language in the Class Notice is included in <u>Exhibit C</u>.

## VIII.  **OBJECTIONS**

Plaintiffs' proposal for objections language in the Class Notice is included in <u>Exhibit C</u>.

## IX.  **ATTORNEYS' FEES AND COSTS**

Defendants insisted on an overall cap of $3.7 million for the settlement.  In accordance with this Court's Order re: Factors for Class Settlement at § 8 (Dkt. No. 65), the Parties did not discuss attorneys' fees or costs, except for confirming that fees and costs must be included in the $3.7 million.

Plaintiffs will submit a separate Motion for Attorneys' Fees and Costs in accordance with Federal Rules of Civil Procedure 23(h) and 54(d) after the Court establishes a briefing schedule.[11]  Up to and including this Motion, Plaintiffs' attorneys spent more than 3,450 hours

---

[11] Plaintiffs' understanding is that Defendants are not seeking recovery of any attorneys' fees or costs.

**21**

1   on this case, which, at their ordinary billing rates, represents a lodestar of over $1,882,827.50.[12]

2   Plaintiffs intend to request fees calculated at the 9th Circuit's benchmark of 25% of the Common

3   Fund, *see In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 3:07-cv-5944 JST, 2016 U.S.

4   Dist. LEXIS 24951, at *274 (N.D. Cal. Jan. 28, 2016), or $925,000 – which is half of the

5   lodestar.  Plaintiffs submit that this Court should view the request for attorneys' fees in light of

6   the fact that Plaintiffs succeeded in obtaining not only significant monetary relief for the class

7   but also targeted injunctive relief that will benefit all consumers and small businesses in PG&E's

8   territory in Northern/Central California.

9           Class Counsel incurred/expect to incur an estimated $230,000 in costs in this case on

10  behalf of Plaintiffs and the class, including approximately $67,000 for expert witness costs.

11  Balsam Decl. at ¶ 16.

12                          **X.  <u>INCENTIVE AWARDS</u>**

13          Plaintiffs are aware that this Court's Order re: Factors for Class Settlement (Dkt. No. 65)

14  states at § 12 that incentive awards are "red flags" because they are "too often simply ways to

15  make a collusive or poor settlement palatable to the named plaintiff."  In *Kakani v. Oracle Corp.*,

16  No. C 06-06493 WHA, 2007 U.S. Dist. LEXIS 47515 at *15, 27 (N.D. Cal. June 19, 2007),

17  Judge Alsup denied an incentive award of $15,000 for each of three named plaintiffs.

18          On the other hand, in *In re LDK Solar Securities Litigation*, No. C 07-5182 WHA, 2010

19  U.S. Dist. LEXIS 87168 at *9-10 (N.D. Cal. July 29, 2010), Judge Alsup approved an incentive

20  payment of $4,000 (after costs).  Judge Alsup also approved a $500 incentive award for the

21  named plaintiffs in *Etter v. Allstate Insurance Company*, No. C 17-00184 WHA, 2018 U.S. Dist.

22  LEXIS 189136 at *11 (N.D. Cal. Nov. 4, 2018); and *Taylor v. West Marine Products Inc.*, No. C

23  13-04916 WHA, 2015 U.S. Dist. LEXIS 66705 at *6 (N.D. Cal. May 21, 2015).

24          Plaintiffs' counsel recommends modest incentive awards for Plaintiffs Fishman and Faria

25  based on the amount of time and work they devoted to this Action, and the benefit to the Class.

26  Tiger deposed Fishman and Faria not once, but twice each.  Plaintiffs responded to two sets of

---

[12] Kimberly Kralowec: 101.6 hours at $810, Kathleen Rogers: 1,238.9 hours at $795, paralegal
Gary Gray: 242.8 hours at $305, Rogers Decl. at ¶¶ 4-6; Daniel Balsam: 1,173.0 hours at $400,
Balsam Decl. at ¶ 15; Jacob Harker: 696.8 hours at $390, Harker Decl. at ¶ 6.

1   written discovery.  Plaintiffs also suffered loss of privacy as forensic ESI searches reviewed their

2   personal, confidential information.  Plaintiffs discussed strategy with class counsel, made

3   suggestions for discovery topics, and attended hearings and the settlement conference.  Balsam

4   Decl. at ¶ 17.  Accordingly, Plaintiffs believe that an incentive payment (or, alternatively, framed

5   as compensation for their time spent representing the class, *see In re Charles Schwab Corp.*

6   *Securities Litigation,* No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 44547 at *32 (N.D. Cal.

7   Apr. 19, 2011)) of $1,500 each is justified.

8       Tiger stated that takes no position on incentive payments to Fishman and Faria so long as

9   the overall settlement remains at $3.7 million.  Balsam Decl. at ¶ 18.

## XI. *CY PRES* AWARD

11      Once this Court approves the final Common Fund, less attorneys' fees, costs, and any

12  incentive awards, the remainder should be distributed among the class members in equal shares.

13  The settlement does not contain a reversion for any unclaimed settlement funds, and it would be

14  impractical and inefficient, due to administrative costs, to have small amounts of money (e.g.

15  from uncashed checks) redistributed to class members.  Accordingly, a *cy pres* mechanism

16  makes sense.

17      Plaintiffs' proposed *cy pres* recipient is The Utility Reform Network ("TURN"), based in

18  San Francisco.  TURN is a nonprofit long engaged in protecting consumers from overreach by

19  utilities in California, and which has been advocating for greater regulatory scrutiny over

20  practices of Core Transport Agents such as Tiger.  "TURN believes no one should be cut off

21  from essential electricity, gas or phone service. We hold utility corporations accountable by

22  demanding fair rates, cleaner energy and strong consumer protections."  *See* Exhibit D to this

23  Motion.  TURN is able to receive and use *cy pres* awards.  *See* $375,000 Cy Pres Award

24  Advances Consumers Interests, www.turn.org/about/cy-pres-award (last visited Jan. 9, 2019).

25  TURN represented to Plaintiffs that it has pursued and is pursuing greater regulatory scrutiny of

26  the practices of Core Transport Agents, such as Tiger, operating in California, which actions

27  would benefit targeted gas customers such as members of the class going forward.  Balsam Decl.

28

**23**

at ¶ 19.  Plaintiffs and their counsel do not have any personal or professional relationship with TURN.  Rogers Decl. at ¶ 7, Balsam Decl. at ¶ 20, Harker Decl. at ¶ 7.

## XII.  TIMELINE

| ACTION | TIME |
|---|---|
| **"Notice Date":** Last day for Claims Administrator to mail Notice of Settlement to Class Members | **15 days** after preliminary court approval |
| Last day for Claims Administrator to provide Defense Counsel and Class Counsel with a declaration attesting to completion of the notice process | **30 days** after preliminary court approval |
| **"Exclusion Deadline":** Last day for Class Members to request exclusion from the Settlement | **50 days** after preliminary court approval |
| **"Objection Deadline":** Last day for Class Members to object to the Settlement | **50 days** after preliminary court approval |
| Last day for Parties to file any response to objections | **60 days** after preliminary court approval |
| Last day for Class Counsel to file motion for final approval of settlement, Class Representative's service payment and application for attorneys' fees and costs | **60 days** after preliminary court approval |
| Hearing on motion for final approval of settlement, Class Representative's service payment, and application for attorneys' fees and costs | To be determined by the Court |

## XIII.  CLASS ACTION FAIRNESS ACT

No particular CAFA notice is required since this settlement does not involve coupons.

## XIV.  PAST DISTRIBUTIONS

Within the past two years, Kralowec Law has settled one action for which the settlement monies already have been paid and distributed,  *Bluford v. Safeway Stores, Inc*., Case No. CV014837 (Super. Ct. Cal. Cty. of Alameda) (consolidated with *Bluford v. Safeway Stores, Inc.*, Case No. CV028541 (Super. Ct. Cal. Cty. of Alameda) (together "*Bluford*").  *Bluford* was an employment action brought under the California Labor Code and UCL on behalf of a class of truck drivers in Northern California, who were not paid for rest breaks and whose pay stubs and calculated pay were indecipherable.  That action spanned 13 years of litigation and two trips up to the California Court of Appeal.  The class action administrator was Gilardi & Co. LLC (parent company Kurtzman Carson Consultants LLC (KCC)).  Gilardi made repeated efforts to update

addresses of class members, many of whom had relocated or even passed away during the 13 years of litigation, but could not locate around 15-20% of the class members, and their checks were going uncashed (and would otherwise escheat to the State of California).  Kralowec Law personally undertook, without further compensation, to locate class members using search methods including social media.  They located many class members by searching names on Facebook and Google, calling children's schools and families' churches, and other efforts.  The class members were not wealthy, and the sums they received (from as low as $200 up to $60,000) including years of interest, were substantial for many of the recipient families.  In the end, 96% of the class, or 1,040 of the 1,081 class members (or their heirs), received and cashed their settlement checks, comprising 99.62% of the settlement fund.  Rogers Decl. at ¶¶ 8-9.

The Law Offices of Daniel Balsam and Law Offices of Jacob Harker do not have comparable class settlements in the last two years involving the same or similar clients, claims, and/or issues.  Balsam Decl. at ¶ 21, Harker Decl. at ¶ 8.

## XV.  **CONCLUSION**

Although the class's monetary recovery for Recording Law claims is low compared to the statutory violations, it is in line (or better, on a per-class member basis) than many other class settlements.  Defendants simply do not have more monies for a larger settlement, much less to pay a $183 million judgment, and this settlement, if approved, will also achieve valuable, prospective injunctive relief.  If this case proceeds to trial, win or lose, it is highly unlikely that the class will do any better.  The proposed settlement is fair, reasonable, and adequate, and this Court should grant this Motion for Preliminary Approval.

Respectfully Submitted,

Dated:  Jan. 17, 2019

THE LAW OFFICES OF DANIEL BALSAM
*/s/ Daniel Balsam*
Daniel Balsam
Attorney for Plaintiffs and the Class

**<u>EXHIBIT A</u>**

**EARLIER/SUBSEQUENT CLASS DEFINITIONS**

*From the [Corrected] Trial Plan, Nov. 13, 2018 (Dkt. No. 243):*

**Tiger/PG&E Customer Class**:  All California consumers and businesses that were customers of Pacific Gas & Electric Company for gas supply and/or gas delivery at the time they enrolled in Tiger Natural Gas, Inc.'s ("Tiger") capped rate price protection program (the "Program") after receiving a telemarketing Sales Call advertising the Program, at any time from August 18, 2013 to the present.

**Tiger/PG&E Consumer Sub-Class**:  All California consumers, but not businesses, that were customers of Pacific Gas & Electric Company at the time they enrolled in Tiger Natural Gas, Inc.'s ("Tiger") capped rate price protection program (the "Program") after receiving a telemarketing Sales Call advertising the Program, at any time from August 18, 2013 to the present.

**Tiger/YEP Customer Sub-Class:**  All California consumers and businesses that were customers of YEP Energy for their natural gas supply at the time they enrolled in Tiger Natural Gas, Inc.'s ("Tiger") capped rate price protection program (the "Program") after receiving a telemarketing Sales Call advertising the Program, at any time from August 18, 2013 to the present.

*From the Motion for Class Certification, Sep. 20, 2018 (Dkt. No. 177):*

**Tiger/PG&E Customer Class**:  All California consumers and businesses that were customers of Pacific Gas & Electric Company at the time they enrolled in Tiger Natural Gas, Inc.'s ("Tiger") capped rate price protection program (the "Program") after receiving a telemarketing Sales Call advertising the Program, at any time from August 18, 2013 to the present.

**Tiger/PG&E Consumer Sub-Class**:  All California consumers, but not businesses, that were customers of Pacific Gas & Electric Company at the time they enrolled in Tiger Natural Gas, Inc.'s ("Tiger") capped rate price protection program (the "Program") after receiving a telemarketing Sales Call advertising the Program, at any time from August 18, 2013 to the present.

*From the Operative Third Amended Complaint, June 9, 2018 (Dkt. No. 101):*

**Class**: All California consumers and businesses who received a telemarketing Sales Call from Tiger or its Telemarketing Agents that was recorded without consent of the recipients, who became aware of the recording within one year prior to the filing of this Action and continuing until final disposition of the Action.  The Class includes California consumers and businesses in Northern California (within PG&E's territory) *and* outside of Northern California (within the territories of other Gas Companies).

**Do Not Call Sub-Class**: All California consumers and business who received a telemarketing call from Tiger or its Telemarketing Agents (CGC and DOEs 3-50) at a landline or cellular telephone number that was registered on the Do Not Call

**1**

list, within four years prior to the filing of this Action and continuing until final disposition of the Action.  Although the Third Amended Complaint no longer states a cause of action for violations of the Telephone Consumer Protection Act, the Do Not Call Sub-Class is still relevant because Tiger's Sales Calls to numbers on the Do Not Call list violate other statutes which serve as predicate violations for Plaintiffs' Unfair Competition Law causes of action.

**Enrollee Sub-Class**: All California consumers and businesses who enrolled in Tiger's natural gas price protection program after receiving representations (including via telemarketing) claiming that the program is "free" and/or that the program can save them money versus their current gas provider's rates due to a rate cap, within: a) two years prior to the filing of this Action and continuing until final disposition of the Action for the Breach of Oral Contract cause of action; b) within three years prior to the filing of this Action and continuing until final disposition of the Action for the Fraud, Negligent Misrepresentation, and Violations of Regulations on Core Transport Agents causes of action; and/or c) within four years prior to the filing of this Action and continuing until final disposition of the Action for the False Advertising Law and Unfair Competition Law causes of action.

**PG&E Enrollee Sub-Class**: All California consumers and businesses, previously customers of PG&E, who enrolled in Tiger's natural gas price protection program after receiving representations (including via telemarketing) claiming that the program is "free" and/or that the program can save them money versus their current gas provider's rates due to a rate cap, within: a) two years prior to the filing of this Action and continuing until final disposition of the Action for the Breach of Oral Contract cause of action; b) within three years prior to the filing of this Action and continuing until final disposition of the Action for the PG&E Gas Rule 23, Fraud, Negligent Misrepresentation, and Violations of Regulations on Core Transport Agents causes of action; and/or c) within four years prior to the filing of this Action and continuing until final disposition of the Action for the Breach of Third Party Beneficiary Contract, False Advertising Law, and Unfair Competition Law causes of action.

**Consumer Enrollee Sub-Class**: All consumer members, but not business members, of the Enrollee Sub-Class and PG&E Enrollee Sub-Class, who enrolled in Tiger's natural gas price protection program after receiving representations (including via telemarketing) claiming that the program is "free" and/or that the program can save consumers money versus their current gas provider's rates due to a rate cap, within three years prior to the filing of this Action and continuing until final disposition of the Action for the Consumers Legal Remedies Act cause of action.

**<u>EXHIBIT B</u>**

**CLASS SETTLEMENTS FOR RECORDING LAW VIOLATIONS**

| Amount per Class Member | Penal Code § 632 Class Settlements |
| --- | --- |
| $606.56 net after attorneys' fees/expenses | *Reed v. 1-800 Contacts Inc.*, 2014 U.S. Dist. LEXIS 255 at *17 (S.D. Cal. Jan. 2, 2014). |
| $132.57 net after attorneys' fees/expenses | *McDonald v. Bass Pro Outdoor World LLC*, No. 13-cv-889-BAS(DHB), 2014 U.S. Dist. LEXIS 109080, at *19-20 (S.D. Cal. Aug. 5, 2014). |
| $97.27 net after attorneys' fees/expenses | *Zaklit v. Nationstar Mortgage LLC*, No. 5:15-cv-2190-CAS(KKx), Dkt. No. 107 (C.D. Cal. Jan. 11, 2019) (Motion for Preliminary Settlement). |
| $96.50 net after attorneys' fees/expenses | *Stone v. Howard Johnson International Inc.,* No. 2:12-cv-01684-PSG-MAN, Dkt. No. 105 (C.D. Cal. Apr. 24, 2015); Dkt. No. 115 (June 15, 2015); Dkt. No. 123 (Nov. 30, 2015). |
| $90+ net after attorneys' fees/expenses, estimated | *Fishman v. Tiger Natural Gas Inc.*, No. 3:17-cv-05351 (N.D. Cal.). |
| $30, as stated in *Reed* | *Marenco v. Visa Inc.*, No. 10-8022 DMG (VBKx), 2011 U.S. Dist. LEXIS 140527 (C.D. Cal. Dec. 6, 2011). |
| $10.82 net after attorneys' fees/expenses | *McCabe v. Six Continents Hotels Inc.*, No. 12-cv-04818 NC, 2015 U.S. Dist. LEXIS 85084, at *28 (N.D. Cal. June 30, 2015). |
| $7.54 gross | *Medeiros v. HSBC Card Services*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *12 (C.D. Cal. Oct. 23, 2017). |
| $6.98, as stated in *Medeiros* | *Skuro v. BMW of North America, LLC*, Case No. 10-8672 GW (FFMx) (C.D. Cal. 2012). |
| $5.37, as stated in *Medeiros* | *Batmanghelich v. Sirius XM Radio, Inc.*, Case No. 09-9190 VBF (JCx), 2011 U.S. Dist. LEXIS 155710 (C.D. Cal. Sep. 15, 2011). |
| $4.70, as stated in Medeiros | *Cohorst v. BRE Properties, Inc. et. al.*, No. 10-cv-2666 JM, 2011 U.S. Dist. LEXIS 151719, (S.D. Cal. Jan. 18, 2012). |
| $1.79, as stated in *Medeiros* | *Hoffman v. Bank of America, N.A.*, 12-cv-00539 DHB, Dkt. No. 67 (S.D. Cal. Nov. 6, 2014). |
| $1.58, as stated in *Medeiros* | *Nader v. Capital One Bank, N.A.*, No. 12-cv-01265 DSF, 2014 U.S. Dist. LEXIS 194211 (C.D. Cal. Nov. 17, 2014). |
| $0.75, as stated in *McCabe* | *Knell v. FIA Card Services*, 12-cv-00426 WVG, Dkt. No. 79 (S.D. Cal. Aug. 15, 2014). |

Note: None of the Orders referenced the Defendant's (in)ability to pay a "full" judgment of $5,000 per call.

Note: Where a settlement amount shows "as stated in *Reed/Medeiros/McCabe*," it means that Medeiros/McCabe is more recent than the actual case order.

**<u>EXHIBIT C</u>**

**CLASS NOTICE**

## NOTICE OF SETTLEMENT OF CLASS ACTION

*Fishman v. Tiger Natural Gas Inc.*, Case No. 3:17-cv-05351 WHA

**If You Were A California Consumer or Business Customer of Pacific Gas & Electric, Inc.
Who Enrolled in Tiger Natural Gas Inc.'s Capped-Rate Price
Protection Program after Receiving a Telemarketing Call Advertising the Program
Between August 18, 2013 and The Present A PROPOSED CLASS ACTION
SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*A court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.
However, your legal rights are affected by the information contained in this Notice.*

**PLEASE READ THIS NOTICE CAREFULLY. It describes your rights and how to
receive money from the Settlement or exclude yourself from the Settlement.**

- This Notice describes a proposed settlement ("Settlement") of a pending class action lawsuit and your rights under this Settlement, including your right to receive money from this Settlement. If you do not want to be part of this Settlement, this Notice details the steps you must take to be excluded from it.

- The Court has not yet decided whether to grant final approval of the Settlement. No payments will be made unless and until the Court approves the Settlement.

- You need to decide whether to stay in the case and receive the benefits of the Settlement, object to the Settlement, or request exclusion from the Settlement. *If you wish to remain a Class Member and receive a monetary share of the Settlement, you do not have to do anything in response to this Notice.*

- The decision of whether to participate in, request to be excluded from, and/or object to the Settlement is entirely yours.

### SUMMARY OF SETTLEMENT

- Plaintiff Emily Fishman filed an action (the "Action") against Tiger Natural Gas, Inc. ("Tiger"), Community Gas Center, Inc. ("CGC") and John Dyet ("Dyet") (together, Tiger, CGC and Dyet are the "Defendants") which was transferred to the United States District Court for the Northern District of California (the "Court"). Susan Faria ("Faria") later joined as an additional named plaintiff (Fishman and Faria together are "Plaintiffs").

- Plaintiffs alleged in the Action that telemarketers calling to advertise Tiger's Capped-Rate Program for the purchase of natural gas (the "Program") recorded sales calls without customers' consent; misrepresented facts including: that Pacific Gas & Electric Co.'s ("PG&E's") gas supply rates were increasing when they were decreasing; that Tiger's rates track the market rate when they did not; and that Tiger's Program was "free;" also, Plaintiffs alleged the telemarketers omitted to state material facts such as Tiger's price per therm which, for most of the class period, was higher than PG&E's price per therm,

and failed to send written terms and conditions that matched the terms and conditions customers agreed to during their telephone enrollment in Tiger's Program.

- Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Action and this Settlement is in no way an admission by Defendants, or any of them, that it/they engaged in any unlawful behavior.  The Court has not decided who is right.

The Settlement includes a payment by Defendant Tiger of **$3,700,000**, as well as promises by Tiger to engage in certain behavior in future dealings with potential customers in California, as follows: (1) all sales calls that are recorded in the future made by Tiger or by entities engaged by Tiger will contain an advisement at the beginning of the sales call that the call is being recorded; and (2) Tiger  and any entities engaged by it to make sales calls in the future will not misrepresent Tiger's charges or PG&E's charges in any such sales calls.

- As a recipient of a call advertising the Program, you are eligible to share and participate in the settlement benefits.

The Court has preliminarily approved the Settlement.  Before deciding whether to grant final approval of the Settlement, the Court wishes to inform you of the general terms of the Settlement and your rights and options.

| YOUR RIGHTS AND OPTIONS | |
|---|---|
| **DO NOTHING AND RECEIVE YOUR MONETARY SHARE OF THE SETTLEMENT** | If you do nothing and the Settlement receives final approval, you will automatically receive a Settlement check in the mail and will release certain claims against Defendants. |
| **REQUEST TO BE EXCLUDED FROM THE SETTLEMENT** | If you submit a request to be excluded from the Settlement on or before **XXX, 2019**, you will receive no payment under this Settlement but will retain any right you may have to file your own lawsuit for the released claims. |
| **OBJECT TO THE TERMS OF THE SETTLEMENT** | If you do not want to be excluded from the Settlement but wish to object to the terms of the Settlement, you can submit an Objection on or before **XXX, 2019**. |

The Court will hold a Final Approval Hearing to consider whether the Settlement is fair, reasonable, and adequate, and to decide whether to give final approval to this Settlement.  The hearing will be held at **X:XX** a.m. on **XX, 2019,** in the courtroom of the Honorable William Alsup at the United States District Court for the Northern District of California, Courtroom 12 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.  If the Settlement is granted final approval by the Court after the Final Approval Hearing, the Court's judgment will be final and binding on you unless you request to be excluded from the Settlement.  If you do not request

exclusion and if the Court grants final approval of the Settlement, you will be bound by the Court's orders and the terms and releases of the Settlement.  You are not required to appear at the hearing.  If you are a Class Member, you will be represented by attorneys for the Class ("Class Counsel") at no cost to you.

## GENERAL INFORMATION

### 1.  Why did I receive this Notice?

The purpose of this Notice is to inform you about this litigation, the certification of a class (the "Class"), the terms of the proposed settlement (the "Settlement"), and your rights in connection with a hearing to be held before the Court at XX:XX a.m. on XXX, 2019, to consider the fairness, reasonableness, and adequacy of the Settlement and related matters.  This Notice also describes the steps to be taken by those who wish to be excluded from the Class and, for those who remain Class Members, your rights to receive a monetary award in the event the Settlement is approved by the Court.  You may have received a Notice of Pendency of Class Action Prior to this Notice.

### 2.  What is this Action about?

Plaintiffs initiated a class action lawsuit against Defendants and alleged that telemarketers calling to advertise Tiger's Capped-Rate Program for the purchase of natural gas (the "Program") recorded sales calls without customers' consent; misrepresented facts including: that Pacific Gas & Electric Co.'s ("PG&E's") gas supply rates were  increasing when they were decreasing; that Tiger's rates track the market rate when they did not; and that Tiger's Program was "free;" also, Plaintiffs alleged the telemarketers omitted to state material facts such as Tiger's price per therm which, for most of the class period, was higher than PG&E's price per therm, and failed to send written terms and conditions that matched the terms and conditions customers agreed to during their telephone enrollment in Tiger's Program.  Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Action and this Settlement is in no way an admission by Defendants, or any of them, that it/they engaged in any unlawful behavior.

### 3.  Has the Court decided who is right?

No.  The Court has only decided that you should get a copy of this Notice so that you can review the Settlement and determine whether you want to participate in the Settlement, object to it, or exclude yourself from the Settlement.

### 4.  What is a class action and who is involved?

In a class action lawsuit, one or more people called Class Representatives are approved by the Court to pursue claims on behalf of themselves and other people.  The Class Representatives in this case are Named Plaintiffs Emily Fishman and Susan Faria.  The Class Representatives represent the Class (or Class Members).  The Settlement will resolve the claims at issue for all Class Members who do not request to be excluded.

### 5.  Am I a Class Member?

You are a member of the Class affected by the Settlement if you fit within this definition:

> **Settlement Class**: All California consumers or business customers of Pacific Gas & Electric, Inc. who enrolled in Tiger Natural Gas Inc.'s Capped-Rate Price

Protection Program after receiving a telemarketing call advertising the Program between August 18, 2013 and the present.

**Tiger/PG&E Consumer Settlement Sub-Class**:  All California consumers, but not businesses, that were customers of Pacific Gas & Electric Company at the time they enrolled in Tiger Natural Gas, Inc.'s ("Tiger") capped rate price protection program (the "Program") after receiving a telemarketing Sales Call advertising the Program, at any time from August 18, 2013 to the present.

You have received this Notice because Tiger's records reflect that you fit the definition outlined above, and therefore you are a Class Member in the proposed Settlement of this Action.  It is estimated that there are approximately 26,650 Class Members affected by the Settlement.

### 6.  Why is this Action being settled?

After months of extensive litigation, the Parties agreed to explore possible resolution of the Action.  Under the supervision of a magistrate judge, the Parties engaged in settlement negotiations that resulted in the agreement to settle this Action as reflected in this Notice of Class Action Settlement and the underlying terms of settlement read into the record at the Settlement Conference (the "Settlement Agreement").  Because of the extensive discovery conducted between the Parties during litigation and settlement process, the Parties were able to reliably assess the merits of their respective positions and to reach a fair and equitable Settlement Agreement.

Based upon their investigation, Class Counsel and the Class Representatives have concluded that the terms of the proposed Settlement are fair, reasonable, and adequate, and in the best interests of the Class.  In reaching this conclusion, Class Counsel has analyzed the benefits of the Settlement and the risk of an unfavorable outcome, the expense and length of the continued proceedings necessary to prosecute the Action, and Defendants' financial condition and ability to pay a judgment after trial larger than the agreed settlement of $3.7 million.

Defendants have agreed to these settlement terms because they wish to avoid further costly, disruptive, and time-consuming litigation, and desire to obtain complete and final settlement of the claims of the Plaintiffs and Class Members.  Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in this Action and this Settlement is in no way an admission by Defendants, or any of them, that it/they engaged in any unlawful behavior.

### 7.  Who represents the Class Members in the Action?

In class actions, Class Members are represented by Court-appointed lawyers ("Class Counsel").  In this case, you are represented by Kimberly Kralowec and Kathleen Styles Rogers of Kralowec Law Group, P.C.; Daniel Balsam of the Law Offices of Daniel Balsam; and Jacob Harker of the Law Offices of Jacob Harker.  Class Counsel are experienced in handling similar cases, and the Court has determined that Class Counsel are qualified to represent you and all Class Members.  You can contact Class Counsel at:

| Kathleen Styles Rogers<br>Kimberly Kralowec<br>**Kralowec Law, P.C.**<br>750 Battery St., Ste. 700 | Daniel Balsam<br>**The Law Offices of Daniel Balsam**<br>2601C Blanding Ave. #271 | Jacob Harker<br>**The Law Offices of Jacob Harker**<br>582 Market, Ste. 1007 |
|---|---|---|

| San Francisco, CA 94111 | Alameda, CA 94501 | San Francisco, CA 94104 |
|---|---|---|
| Tel: (415) 546-6800 | Tel: (415) 869-2873 | Tel: (415) 624-7602 |
| Fax: (415) 546-6801 | Fax: (415) 869-2873 | Fax: (415) 684-7757 |

**8.   Who is the Settlement Administrator?**

The Settlement Administrator is a third party appointed by the Court to send this Notice, process and issue Settlement checks, and otherwise administer the Settlement.  You may contact the Settlement Administrator to provide updated contact information or ask questions regarding the processing of Settlement awards at:

> Tiger Natural Gas Recorded Calls Class Action Administrator
> Angeion Group
> 1650 Arch Street, Suite
> 2210, Philadelphia, PA 19103
>
> Email: info@NaturalGasCappedRateClassAction.com

The Settlement Administrator also maintains a website concerning this settlement, with Frequently Asked Questions, located at www.NaturalGasCappedRateClassAction.com.  The website includes copies of Plaintiffs' Third Amended Complaint and other documents concerning this Action and Settlement.

## SUMMARY OF SETTLEMENT TERMS

**9.   What have Defendants agreed to do under the Settlement?**

Under the Settlement Agreement, Tiger has agreed to pay **$3,700,000** to settle the certified class claims.  Also, Tiger has agreed to engage in certain behavior in future dealings with potential customers in California, as follows: (1) all sales calls that are recorded in the future made by Tiger or by entities engaged by Tiger will contain an advisement at the beginning of the sales call that the call is being recorded; and (2) Tiger  and any entities engaged by it to make sales calls in the future will not misrepresent Tiger's charges or PG&E's charges in any such sales calls.

**10. How are Class Members' Settlement awards determined?**

After deductions from the $3,700,000 class fund for Court-approved payments for the expense of administering the Settlement, Service Awards, and Class Counsel's fees and expenses, the remaining sum will be distributed evenly among all participating Class Members (approximately 26,650 Class Members).  Class Counsel estimates that each class member will receive a check in the approximate amount $90.00 as a result of this Settlement.

**11. Are there tax consequences for money I receive?**

Class Members are responsible for the appropriate payment of any federal, state and/or local taxes on the Settlement payments they receive.  The tax issues for each Class Member are unique to him or her, and each Class Member is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from this Settlement.  This Notice does not constitute legal or tax advice regarding any federal, state or local tax issue, and nothing in this Notice is intended, written or should be used by any person for the purpose of avoiding any tax

liability or penalties.  Class Counsel are not tax advisors and cannot give you advice on any tax matters.

## 12. How long do I have to cash my Settlement check?

Any checks not cashed after **six (6) months** from the date of the class-wide distribution shall be void.  After that, the funds from uncashed Class Member Awards will be donated to The Utility Reform Network ("TURN"), a nonprofit entity approved by the Court.

## 13. What is a "Service Award"?

In class actions, the Court may provide specific Class Members a "Service Award" in recognition of the time, effort, and risks taken in litigating the case on behalf of the Class.  In this Lawsuit, Class Counsel will apply for service awards of $1,500 each for the Class Representatives to compensate them for the time and effort they devoted to representing the Class in this case, including the time they spent in depositions conducted by Defendants, time spent answering discovery and attending hearings and the Settlement Conference, and time spent consulting with Class Counsel about the case.

## 14. How much will it cost to administer the Settlement?

Class Counsel will apply to the Court for payment to the Settlement Administrator for its fees and costs, whose estimated costs are $60,000.

## 15. How will Class Counsel be paid?

Class Members are not personally liable for any fees and costs. As is routine in class action cases, Class Counsel will request an award of attorneys' fees and expenses already incurred as well as the fees and expenses that will be incurred during the implementation of the Settlement. These fees and expenses have been incurred as Class Counsel have pursued these claims on behalf of Plaintiffs and the Class for over two years without receiving any compensation for their services or reimbursement of their out-of-pocket litigation expenses, which are substantial. Class Counsel have undertaken significant risks in pursuing this matter. They have done so with the understanding that if they obtained a recovery for the Class, their expenses would be reimbursed and they would receive fees from the fund recovered.  Accordingly, Class Counsel will apply to the Court for an award not exceeding $250,000 for their out-of-pocket litigation expenses (including the cost of expert reports) and attorneys' fees not to exceed 25% of the class fund.

## RELEASE OF CLAIMS

## 16. What claims are being released under the Settlement?

Upon final Court approval of the Settlement, Class Members who do not request to be excluded will fully release Defendants from the following claims as they are alleged in Plaintiffs' Third Amended Complaint and as addressed in Plaintiffs' Proposed Trial Plan in Support of Motion for Class Certification: First Cause of Action for violation of California Penal Code section  632 *et seq.* (the "Recording Law claim"); Eleventh, Twelfth and Thirteenth Causes of Action for violation of California Business & Professions Code section 17200 *et seq.* (the "Unfair Competition Law" or "UCL" claims); and Fifth Cause of Action for violation of California Civil Code sections 1750 *et seq.* (the  "Consumer Legal Remedies Act" or "CLRA" claim).

The Released Parties are John Dyet, an individual, Tiger, and CGC, their parents, subsidiaries and affiliated companies, and in the case of all such entities, their respective past and present owners, representatives, officers, directors, attorneys, agents, employees, insurers, predecessors, successors, and assigns.

<u>**YOUR RIGHTS AND OPTIONS**</u>

### 17. <u>How do I participate in the Settlement?</u>

**You do not need to do anything to participate in the Settlement.**  If you are a Class Member and do not request to be excluded from the Settlement, you will automatically receive a Settlement check and release claims against the Released Parties (see Paragraph 16 above) without any further action on your part.

### 18. <u>How do I request to be excluded from the Settlement?</u>

If you want to exclude yourself ("opt out") from the Settlement (that is, not receive any money from the Settlement and not be bound by the Settlement), **you must mail a written statement to the Settlement Administrator with your handwritten signature** to the address set forth above (Paragraph 8) that you wish to be excluded from the Settlement. ("Exclusion Request").  The Exclusion Request must be signed by the Class Member who seeks to opt out and must contain his or her name, address and telephone number.  No Exclusion Request may be made on behalf of a group of Class Members.

**If you exclude yourself from this settlement, you will not be eligible to receive any money from or be bound by this Settlement.**  Neither the class administrator nor class counsel will be able to offer any legal advice regarding whether to exclude yourself from the Settlement.  To be effective, your Exclusion Request must be postmarked no later than XXX, 2019.

### 19. <u>How do I object to the Settlement?</u>

You can ask the Court to deny approval by filing an objection.  You can't ask the Court to order a different outcome; the Court can only approve or reject the Settlement.  If the Court denies approval, no Settlement payments will be sent out and the Action will continue.  If that is what you want to happen, you must object.

Any objection to the proposed Settlement must be in writing.  If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections and supporting papers must (a) clearly identify the case name and number *Fishman v. Tiger Natural Gas, Inc.,* **Case Number 3:17-cv-05351-WHA**, (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, 16th Floor, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before XXX, 2019.

You cannot both object to the Settlement and exclude yourself from the Settlement.  If the Court rejects your objection, you will still be bound by the terms of the Settlement and you will not be able to exclude yourself from the Settlement.

## FINAL APPROVAL HEARING

**20. When will the Court consider whether to grant final approval of the Settlement?**

The Court will hold a Final Approval Hearing to decide whether to grant final approval of the Settlement on XXX, 2019 at XXX:00 a.m. in the courtroom of the Honorable William Alsup at the United States District Court for the Northern District of San Francisco, Courtroom 12 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.  It is not necessary for you to appear at this hearing.  If you have timely submitted an objection to the Settlement, you may, but are not required to, appear at the hearing to argue your objection to the Court.  Any attorney who will represent you at the Final Approval Hearing for the purposes of your objection must file a Notice of Appearance with the Court and serve the Notice of Appearance on Class Counsel (contact information in Paragraph 7 above) and counsel for Defendants (Thomas Leland of Holland and Knight 1801 California St., Ste. 5000, Denver CO, 80202  for Tiger and Christine Reilly of Manat, Phelps & Phillips LLP 11355 West Olympic Blvd., Los Angeles CA, 90064 for CGC and Dyet) by XXX, 2019.  The hearing may be postponed without further notice to the class certification hearing, trial or other judicial resolution.

## FURTHER INFORMATION

**21. How do I receive more information?**

This notice summarizes the proposed settlement.  For the precise terms and conditions of the settlement, please see the settlement agreement available at **www.NaturalGasCappedRateClassAction.com**; by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov; by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California (450 Golden Gate Avenue, 16th Floor, San Francisco, CA 94102) between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays; or by contacting Class Counsel (Paragraph 7).

**PLEASE *DO NOT TELEPHONE THE COURT* OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

**<u>EXHIBIT D</u>**

**THE UTILITY REFORM NETWORK**

*From About Us, www.turn.org/about (last visited Jan. 9, 2019):*

TURN believes no one should be cut off from essential electricity, gas or phone service. We hold utility corporations accountable by demanding fair rates, cleaner energy and strong consumer protections.

**Our Work**

For more than 40 years we have challenged California's powerful energy and telephone companies, saving consumers and small businesses millions, standing up for vulnerable Californians, and demanding reliable service and livable communities.

**TURN Advocates:**

Our skilled legal team saves consumers millions and advances groundbreaking policies and programs at the California Public Utilities Commission (CPUC) and in Sacramento.

**TURN Assists:**

Our consumer advisor helps customers to understand their bills, protect their privacy, challenge unfair practices and learn how to save money and the environment.

**TURN Acts:**

TURN provides consumers with accurate and understandable information about critical energy and phone issues, and mobilizes people statewide to demand change.

**TURN's Mission**

TURN champions the cleanest energy and highest quality phone service at the lowest prices possible for residential customers, low-income households, and small businesses through legal advocacy at the California Public Utilities Commission, state and federal policy development, and community organizing throughout California.

**TURN's History**

TURN began at the kitchen table of pioneering consumer advocate Sylvia Siegel, a fierce advocate who was tired of seeing her electric bills go up year after year, and realized all Californians were getting ripped off by a Public Utilities Commission that rubber-stamped rate hikes. She taught herself the complex laws and rules of utility rates and quickly learned how to use them to the benefit of the public, rather than corporate profits.

In the past 40 years, TURN has identified and exposed corporate waste and lack of oversight, and driven common sense public policy to protect all Californians. TURN has grown into an organization known and trusted nationally for our expertise in energy and telecommunications issues, and our commitment to renewable energy that is affordable for everyone.