IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMILY FISHMAN and SUSAN FARIA, individually and on behalf of others similarly situated,

Plaintiffs,

v.

TIGER NATURAL GAS INC., an Oklahoma corporation; COMMUNITY GAS CENTER INC., a Colorado corporation; JOHN DYET, an individual; and DOES 3-100

Defendants.

No. C 17-05351 WHA

**ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

**INTRODUCTION**

In this class action for violations of California's Recording Law, plaintiffs move for preliminary approval of a proposed class settlement. For the reasons below, the motion is **GRANTED**.

**STATEMENT**

Defendant John Dyet owned several telemarketing companies, including defendant Community Gas Center, Inc. Beginning in 2014, CGC called PG&E customers to promote defendant Tiger Natural Gas, Inc.'s capped-rate program, pursuant to which program Tiger's supply rate for natural gas would be capped at $0.69 per therm. This case stems from alleged misrepresentations made during these phone solicitations to PG&E's customers. Plaintiffs further alleged that defendants recorded these sales calls without customers' consent.

Based on these allegations, plaintiff Emily Fishman filed her initial complaint in August 2017. Plaintiffs' most recent iteration of the complaint contained thirteen claims for relief, including for violations of California's Recording Law, California's Unfair Competition Law, and California's Consumers Legal Remedies Act. A November 2018 order certified the following class only with respect to plaintiffs' Recording Law claim, denying without prejudice certification as to the Section 17200 and CLRA claims (Dkt. Nos. 1, 101, 250):

> <u>Tiger/PG&E Customer Class:</u> All California consumers and businesses that were customers of PG&E at the time they enrolled in Tiger's capped-rate price protection program after receiving a telemarketing call advertising the program between August 18, 2013, and the present.

With respect to the Section 17200 and CLRA claims, the class certification order explained that although plaintiffs had claimed they could show the existence of damages on an aggregate, classwide basis using PG&E's data, they had failed to show that such information existed or was available and, as a result, plaintiffs had failed to meet their burden of showing that FRCP 23(b)(3)'s requirements had been met as to their CLRA and Section 17200 claims. The order further provided that if plaintiffs obtained the necessary proof from PG&E, the Court would consider a supplemental motion for class certification (Dkt. No. 250).

Following a settlement conference with Magistrate Judge Elizabeth Laporte, the parties reached a settlement of plaintiffs' Recording Law claim. The parties also reached a class-wide settlement of plaintiffs' not-yet-certified Section 17200 and CLRA claims. Plaintiffs now move for preliminary approval of the class settlement (Dkt. No. 373). This order follows full briefing and oral argument.

**ANALYSIS**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible

approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (Chief Judge Vaughn Walker).  Here, the proposed settlement agreement satisfies these requirements.

### 1. BENEFIT TO CLASS MEMBERS.

With respect to plaintiffs' Recording Law claim, the proposed settlement establishes a gross settlement fund of $3.7 million, to be distributed evenly amongst the 26,637 class members. Because California's Recording Law provides for $5,000 in statutory damages per violation, this settlement amounts to 2.78% of the $133 million in statutory damages that plaintiffs contend are owed to the class. This is before any deductions from the settlement fund, which deductions will include any future awards for plaintiffs' attorney's fees and litigation expenses, any incentive award, and payments to the claims administrator. With respect to plaintiffs' Section 17200 and CLRA claims, the proposed settlement provides for injunctive relief prohibiting Tiger from engaging in the misleading business practices alleged in this case but does not provide for additional monetary compensation. Plaintiffs do not provide an estimated amount of class-wide damages stemming from these statutory claims.

Although the settlement fund reflects a huge discount on plaintiffs' claims, there exists a serious risk that defendants would go bankrupt and the class would be left with much less (if anything) even if plaintiffs did succeed at trial. In connection with this motion, defendants have demonstrated their limited financial resources and inability to pay a more reasonable settlement. Tiger is a family-owned business with one shareholder. The company contracts with an aggregator which sells Tiger natural gas and extends to Tiger a line of credit for the purchase of the gas. In return, Tiger's aggregator exercises control over Tiger's retained earnings and has a first-position lien against all of Tiger's assets. This relationship prohibits Tiger from obtaining a loan to finance a larger settlement in this action. Moreover, Tiger's annual net profits are modest and more than half of Tiger's retained earnings will be directed to the proposed $3.7 million settlement. Dyet, in turn, is an individual with limited savings. His telemarketing company CGC is now defunct. Accordingly, continuing to litigate risks further limiting the class's ultimate recovery.

## 2. SCOPE OF THE RELEASE.

The proposed settlement agreement defines the class using the same definition set forth in the class certification order. A subclass of only consumers (rather than consumers and businesses) would be used for the CLRA claim. The proposed settlement agreement releases only the Recording Law, Section 17200, and CLRA claims asserted in this action. The ten other claims alleged in the operative complaint would be dismissed without prejudice. The scope of the class definition and release in the proposed settlement agreement is therefore appropriately tailored and thus falls within the range of possible approval.

## 3. OTHER CONSIDERATIONS.

Additional factors weigh in favor of granting preliminary approval. Relevant to the question of whether the agreement appears to be "the product of serious, informed, noncollusive negotiations," the parties reached the proposed settlement after attending a settlement conference with Magistrate Judge Laporte. Moreover, the proposed settlement agreement does not require class members to participate in a claims process in order to claim their share of the settlement fund.

In the event that any class member does not cash their settlement check, leftover funds will go to a *cy pres* recipient. Plaintiffs propose that leftover funds be distributed to The Utility Reform Network, a nonprofit "engaged in protecting consumers from overreach by utilities in California" (Dkt. No. 373 at 48). Tiger disagrees that The Utility Reform Network should be a *cy pres* recipient, but does not propose a specific alternative. This order overrules Tiger's objection and finds that TURN is an appropriate choice for a *cy pres* recipient.

## 4. NOTICE.

Under the proposed settlement, the claims administrator will use contact information obtained from Tiger to send the settlement notice via first-class mail. The proposed class notice satisfies the requirements of FRCP 23(c)(2)(B) and 23(e)(1), as it clearly describes of the nature of the action, the estimate for each class member's expected recovery, the implications of objecting to the settlement, and the process for opting out of the settlement.

4

**CONCLUSION**

The terms of the parties' settlement agreement are hereby **PRELIMINARILY APPROVED** as being fair, reasonable and adequate to the members of the class, subject to further consideration at the final approval hearing. Plaintiffs' unopposed motion for preliminary approval of the settlement is **GRANTED**.

The Angeion Group is hereby **APPOINTED** as claims administrator. Provided that all missing information in the proposed notices is filled out, the proposed form of notice for the class is **APPROVED**. Tiger shall provide the claims administrator with the information necessary to conduct the mailing of the notices. Class notice should be distributed by **MARCH 11, 2019**.

The deadline to opt out of the settlement or to file objections to the settlement is **MAY 9, 2019**. The parties shall respond to any objections to the settlement by **MAY 16, 2019**. Class counsel shall file a motion for an award of attorneys' fees, costs and enhancement award on or before **APRIL 11, 2019**. By **MAY 16, 2019**, plaintiffs shall file a motion for final approval of the class settlement. A hearing to consider whether the class settlement should be given final approval, and on plaintiffs' motion for attorneys' fees, costs and enhancement awards, is **SET** for **JUNE 20 AT 11:00 A.M.**

The final pretrial conference and trial dates are hereby **VACATED** and will be reset if final approval is not granted.

Plaintiffs' administrative motion to file under seal in support of their motion for preliminary approval (Dkt. No. 371) is **GRANTED** on the grounds that the information sought to be sealed is either duplicative or relates to confidential settlement negotiations. Tiger and Dyet's administrative motions (Dkt. Nos. 370, 372) are **DENIED**. Tiger and Dyet shall re-file their declarations and related exhibits on the public docket by **FEBRUARY 29 AT NOON**.

**IT IS SO ORDERED**

Dated: February 22, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE