Kimberly A. Kralowec (State Bar No. 163158)
Kathleen Styles Rogers (State Bar No. 122853)
KRALOWEC LAW P.C.
750 Battery Street, Suite 700
San Francisco, CA 94111
Tel: (415) 546-6800
Fax: (415) 546-6801
Email: kkralowec@kralaweclaw.com
        krogers@kralaweclaw.com

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873
Fax: (415) 869-2873
Email: legal@danbalsam.com

Jacob Harker (State Bar No. 261262)
LAW OFFICES OF JACOB HARKER
582 Market Street, Suite 1007
San Francisco, CA 94104
Tel: (415) 624-7602
Fax: (415) 684-7757
Email: jacob@harkercounsel.com

Class Counsel for the Certified Class

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| | |
|---|---|
| EMILY FISHMAN *et al*, | Case No.       3:17-cv-05351-WHA |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION** |
| vs. | |
| TIGER NATURAL GAS, INC. *et al*, | |
| Defendants. | |
| | Date:          June 20, 2019 |
| | Time:          11:00 am |
| | Courtroom:   12 – 19th Floor |
| | Judge:          William Alsup |

## NOTICE OF MOTION AND MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

PLAINTIFFS HEREBY GIVE NOTICE that on June 20, 2019, in Courtroom 12 of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102 at 11:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs Emily Fishman and Susan Faria ("Fishman" and "Faria," or collectively "Plaintiffs") will and hereby do move, pursuant to Federal Rule of Civil Procedure 23(e), for an Order granting final approval of the class action settlement, for which this Court granted preliminarily approved on February 22 (Dkt. No. 379).

The basis for this Motion is that the proposed settlement was negotiated at arm's-length; is not collusive; is fair, adequate, and reasonable; and is in the best interests of the Certified Class. The approved class administrator, Angeion Group ("Angeion") provided notice to the Certified Class by U.S. mail to Class Members' last-known addresses and for undeliverable addresses, attempted to email and/or call Class Members, to provide the best notice practicable under the circumstances in compliance with Rule 23(e) and due process. Only 15 of the 26,857 class members opted out. No Class Members filed objections by the Court-ordered deadline of May 9. This $3.7 million lump-sum settlement provides an estimated $95.18 to each Class Member net after fees, costs, and incentive awards, and without requiring the filing of claim forms, assuming the Court grants Class Counsel's [Corrected] Motion for Attorneys' Fees, Costs, and Incentive Awards (Dkt. No. 399). The Settlement Fund is non-reversionary; the proposed *cy pres* recipient, The Utility Reform Network ("TURN"), is engaged in advocacy that benefits gas consumers in California including members of the Class, who buy gas from utilities and core transport agents such as Tiger.

The Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Class Counsel Daniel Balsam; the Declaration of Andy Morrison of Angeion regarding notice dissemination, requests for exclusion, and final administration fees and expenses; the previously filed Motion for Preliminary Approval of Class Action Settlement (including the Declarations and Exhibits submitted in connection with that

Motion) (Dkt. No. 373), the pleadings and papers filed in this case; and oral argument and any additional material that may be elicited at the hearing on the Motion.

Respectfully Submitted,

Dated:  May 16, 2019

LAW OFFICES OF JACOB HARKER

*/s/ Jacob Harker*

Jacob Harker
Class Counsel for the Certified Class

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (3:17-CV-05351-WHA)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

Table of Contents ......................................................................................................... iv

Table of Authorities ......................................................................................................v

I.      INTRODUCTION...........................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED..............................................2

III.    BACKGROUND .............................................................................................3
        A.  Summary of the Claims ........................................................................3
        B.  Procedural History ...............................................................................5
        C.  Settlement Conference .........................................................................8

IV.     THIS SETTLEMENT MEETS THE STANDARDS GOVERNING
        JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS...............8

V.      NOTICE TO THE CLASS WAS ADEQUATE............................................10
        A.  Notice of Preliminary Approval of Settlement ..................................10
        B.  Notice of Class Members' Right to Cancel Tiger's Program Without
            Penalties .............................................................................................12

VI.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE...................................................................................................14
        A.  The Class Representatives and Class Counsel Have Adequately
            Represented the Class .........................................................................15
        B.  The Settlement was Negotiated at Arm's Length ...............................18
        C.  The Relief for the Class is Adequate ..................................................19
        D.  The Proposed Settlement Treats Class Members Equitably Relative to
            Each Other ..........................................................................................24
        E.  The Requested Incentive Awards are Reasonable ..............................24

VII.    OBJECTIONS AND OPT-OUTS.................................................................24

VIII.   TIMELINE ...................................................................................................24

IX.     CONCLUSION .............................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page**

4

<u>Federal Cases</u>

*Arnold v. Fitflop USA, LLC*,
    No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS 58800 (S.D. Cal. Apr. 28, 2014) .................................................................................................14

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978).................................................................22

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................................22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................10, 14

*Harris v. Amgen, Inc.*,
    No. CV 07-5442 PSG (PLAx), 2016 U.S. Dist. LEXIS 187228 (C.D. Cal. Nov. 2016) ....................................................................................14

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ................................................................................................18, 19

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016) ..........................................................................................22

*In re Bank of America Corp.*,
    772 F.3d 125 (2d Cir. 2014)...................................................................11

*In re Broadcom Corp. Secs. Litig.*,
    No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sep. 14, 2005) .........................................................................22, 23

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ................................................................22

*In re ECOtality, Inc. Sec. Litig.*,
    No. 13-cv-03791-SC, 2015 WL 5117618 (N.D. Cal. Aug. 28, 2015)..............................8

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................9

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
    No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) ...............................................................................9, 10

*Low v. Trump University, LLC*,
    881 F.3d 1111 (9th Cir. 2018) .........................................................10, 11

*Luna v. Marvell Tech Grp.*,
    No. C 15-05447 WHA, 2018 LEXIS 67181 (N.D. Cal. Apr. 20, 2018)........................... 11

*Medeiros v. HSBC Card Services*,
    No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484 (C.D. Cal. Oct. 23, 2017) ...........................................................................15

*Mendoza v. Tucson Sch. Dist. No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ...............................................................11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2

3

**Page**

4
<u>Federal Cases (cont.)</u>
*Monterrubio v. Best Buy Stores, L.P.,*
5
 291 F.R.D. 443 (E.D. Cal. 2013) ...................................................................11
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
6
 339 U.S. 306 (1950) .......................................................................................10
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
7
 221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................9
*Nguyen v. Radient Pharms. Corp.,*
8
 No. SACV 11-00406 DOC(MLGx), 2014 LEXIS 63312 (C.D. Cal. May 6,
9
 2014) .............................................................................................................23
*Officers for Justice v. Civil Service Commission,*
10
 688 F.2d 615 (9th Cir. 1982) ........................................................................8, 9
*Rieckborn v. Velti PLC,*
11
 No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...........22
*Rodriguez v. Bumble Bee Foods, LLC*,
12
 No. 17cv2447-MMA (WVG), 2018 U.S. Dist. LEXIS 69028 (S.D. Cal.
13
 Apr. 24, 2018) ...............................................................................................14
*Rodriguez v. West Publishing Corp.*,
14
 563 F.3d 948 (9th Cir. 2009) ..........................................................................18
*Satchell v. Fed. Express Corp.*,
15
 No. C032659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ....18
*Torrisi v. Tucson Elec. Power Co.*,
16
 8 F.3d 1370 (9th Cir. 1993) ...........................................................................14

17

18
<u>Federal Statutes and Local Rules</u>
19
Fed. R. Civ. Proc. 12......................................................................................6
Fed. R. Civ. Proc. 23.............................................................................. *passim*
20
Fed. R. Civ. Proc. 30(b)(6) .............................................................................7
Fed. R. Civ. Proc. 37(e) ......................................................................... *passim*
21
Procedural Guidance for Class Action Settlements (updated November 1, 2018
22
 and December 5, 2018), at *https://www.cand.uscourts.gov/ClassAction*
 *SettlementGuidance* ........................................................................................9

23

24
<u>California Statutes and Tariffs</u>
Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law) .......................... *passim*
25
Cal. Bus. & Prof. Code § 17500 (False Advertising Law) ................................3
Cal. Civ. Code § 1559 (breach of third party beneficiary contract) ...................3
26
Cal. Civ. Code § 1572 (fraud)..........................................................................3
Cal. Civ. Code §§ 1573, 1577 (negligent misrepresentation)............................3
27
Cal. Civ. Code § 1622 (breach of oral contract) ...............................................3
Cal. Civ. Code § 1750 *et seq.* (Consumers Legal Remedies Act) ................. *passim*
28
Cal. Pen. Code § 31.......................................................................................20

## **TABLE OF AUTHORITIES (cont.)**

**Page**

**California Statutues and Tariffs (cont.)**
Cal. Pen. Code § 632 *et seq.* (Recording Law)......................................................... *passim*
Cal. Pub. Util. Code §§ 980-989.5 (regulations on core transport agents)..............................3, 20
PG&E Gas Rule 23 ................................................................................................3, 20

**Other Authorities**
2 H. Newberg, *Newberg on Class Actions* § 11.47 (2d ed. 1985) ................................................15

# I.  **INTRODUCTION**

Plaintiffs/Class Representatives Emily Fishman ("Fishman") and Susan Faria ("Faria") request the Court to grant final approval of the proposed settlement of this action for $3.7 million in cash, settling all claims of Plaintiffs and the Class brought against Defendants Tiger Natural Gas Inc. ("Tiger"), Community Gas Center Inc. ("CGC"), and John Dyet ("Dyet"), for alleged violations of California's Recording Law (Cal. Pen. Code § 632 *et seq.*), Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) ("UCL"), and Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) ("CLRA").  The Parties recited the settlement terms on the record at the Settlement Conference on January 2, 2019 (the "Settlement") (Dkt. No. 373-1 Ex. 2).  The Court granted preliminary approval of the Settlement on February 22.  (Dkt. No. 379).  No person or entity has objected to the Settlement and the deadline to do so has passed.

The primary reason this Court should approve the Settlement is Defendants' inability to pay a judgment or any higher settlement.  *See* Declaration of Lori Johnson of Tiger (Dkt. No. 386), Declaration of Teresa Walker of Tiger (Dkt. No. 389), Declaration of John Dyet (Dkt. No. 384).  Although Plaintiffs and Class Counsel zealously prosecuted the case and successfully moved (1) to strike most of Defendants' affirmative defenses, (2) to certify the Class' valuable claims for statutory penalties under the Penal Code, and (3) for evidentiary sanctions against Tiger due to failure to preserve *and* destruction of evidence, which would have facilitated a "win" for Plaintiffs and the Class at trial, Defendants' inability to pay rendered further litigation fruitless.  In fact, Defendants' substantial and ever-growing legal fees were only reducing the amount available to pay a judgment or settlement to the Class.  Plaintiffs and Class Counsel believe that the $3.7 million cash Settlement represents the best possible result for the Class and fully takes into consideration the procedural posture of the case, Defendants' financial condition, and the risks of continued litigation.  If not for this Settlement, Defendants' highly-capable counsel would have continued their "scorched earth" defense unabated, to the Class' detriment.

Approximately 94% of the Class received the Notice of Settlement by first-class mail, as approved by this Court, and have been able to access the settlement website containing links to key case documents.  Additionally, 1,186 class members (about 4.4%) whose notices were

**1**

returned undeliverable were given email or telephone notice of the Settlement.  No Class members have objected.

Plaintiffs and the Class now move the Court for final approval of the Settlement.  The proposed Settlement meets Rule 23(e)'s standard of fundamental fairness, adequacy, and reasonableness.  The Settlement will compensate almost 27,000 California residents and small businesses for Defendants' (allegedly) unlawful actions of recording telemarketing calls without the consent of Class members.  The Settlement will also help protect California residents and businesses from Tiger's unlawful conduct in the future as it enjoins Tiger, directly and through its telemarketers, from misrepresenting its pricing or PG&E's pricing.  The Settlement curtails further litigation that would only burn through Defendants' financial resources available to pay a settlement or judgment.  Defendants have steadfastly denied responsibility for the conduct alleged in the Complaint, but are paying $3.7 million to resolve this case.  From all financial evidence Defendants produced to Plaintiffs and the Court, and verified by Plaintiffs' independent financial advisor/accountant Allan von Halle (Dkt. No. 373-4), this is the maximum amount Defendants are able to pay in settlement of this Action, and it is the best possible result for the Class.

The Class achieved this Settlement after more than a year of hard-fought litigation against Tiger's formidable defense team.  It apportions all Settlement proceeds equally among the entire Class, paying approximately $95.18 per Class member net after attorneys' fees and costs, as discussed below.  The absence of objections to the Settlement reflects its tangible benefits for Class members.  The Settlement merits final approval.

## II.  <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Should this Court should grant final approval of the proposed class action settlement?

//

//

//

//

1

### III. BACKGROUND

2

#### A. Summary of the Claims

3

This lawsuit involves claims that Tiger, by its telemarketers Energy Choice Center Inc.

4

and Defendant CGC (both solely owned by Dyet), made unlawful telemarketing Sales Calls

5

advertising Tiger's natural gas capped-price/price protection program[1] (the "Program") to

6

California consumers and small businesses within the territory of Pacific Gas & Electric

7

Company ("PG&E"), and that Dyet personally and Tiger are both liable for Dyet's companies'

8

unlawful telemarketing.  *See* Motion for Class Certification (Dkt. No. 177), generally.

9

The operative Third Amended Complaint ("3AC") (Dkt. No. 101) contains 13 causes of

10

action.[2]  Relevant for this Settlement, the 3AC alleges that the Sales Calls contained confidential

11

information for which Plaintiffs and class members had a reasonable expectation of privacy, and

12

that the Sales Calls were recorded without the consent of the recipients.  Plaintiffs also allege

13

that the Sales Calls – during which the contracts between Tiger and its new customers were

14

formed – included material misrepresentations and omissions upon which Plaintiffs and the class

15

relied, including:

16

        a) the California Public Utilities Commission ("CPUC") had processed PG&E's

17

        requests to increase gas supply prices, when in fact PG&E's prices were decreasing, and that Tiger's Program would protect customers from the [false]

18

        "supply rate increases";[3]

19

        b) Tiger's prices were variable based on the market price, when in fact they did

20

        not track market prices and were almost always at the maximum cap; and

21

[1] The Program involves capping the rate a customer would pay for natural gas *supply* (aka "procurement"), but has nothing to do with gas *delivery*.

22
23

[2] California Recording Law (Cal. Pen. Code § 632 *et seq.*), breach of oral contract (Cal. Civ. Code § 1622), violations of PG&E Gas Rule 23, breach of third-party beneficiary contract (Cal. Civ. Code § 1559), violations of the Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 *et seq.*), fraud (Cal. Civ. Code § 1572), negligent misrepresentation (Cal. Civ. Code §§ 1573, 1577), violations of Regulations on Core Transport Agents (Cal. Pub. Util. Code §§ 980-989.5), violations of the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), and four for violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*).

24
25
26

[3] PG&E's *delivery* rates were increasing, but since PG&E delivers gas to Tiger's customers, Tiger customers still have to pay PG&E's higher delivery rates.  This lawsuit is entirely about *supply* rates.

27
28

c) Tiger's Program was free, when in fact there was a daily charge of $0.05 or $0.25.

In addition to these statements, the telemarketers promoting Tiger's Program omitted Tiger's price-per-therm (as opposed to the price cap) during the Sales Calls and during the subsequent Third-Party Verification Calls, and Tiger omitted both the price-per-therm and the price cap from the written terms and conditions that were allegedly mailed to new customers. The telemarketers' misrepresentations and omissions, which Tiger reviewed and approved, misrepresented that Tiger's Program and price cap of $0.69 per therm delivered a benefit to customers when in fact Tiger charged customers two to three times as much as PG&E would have charged for the same gas usage.

Tiger's records show that it, by its telemarketers, enrolled almost 27,000 consumer and business customers within PG&E's territory in Northern/Central California since August 18, 2013 (the beginning of the class period).  Order re Motion for Class Certification at *4 (Dkt. No. 250).  The Class is comprised of consumers and businesses who received a telemarketing call *and* actually enrolled in the Program, i.e., those for whom Tiger has records.

The Court certified the Class's claims under the California Recording Law (Cal. Pen. Code § 632 *et seq.*).  The Court denied without prejudice certification of the UCL and CLRA claims, stating that although Plaintiffs demonstrated they could theoretically calculate classwide damages, Plaintiffs had not yet shown they had the data in hand to do so.  The Court (Magistrate Judge Hixson) subsequently ordered Tiger to produce, by January 4, 2019, the consumption data for each customer enrolled in Tiger's Program that Plaintiffs had requested in discovery (Dkt. No. 335 at 5:2-12).  Since Plaintiffs already had PG&E and Tiger's gas supply prices during the class period, the consumption data was the last piece Plaintiffs required to calculate classwide damages without using consumption data from PG&E.  Had the Parties not reached a Settlement, Plaintiffs would have filed a Second Supplemental Motion for Class Certification to address the Court's concerns, and Class Counsel believe the Court would ultimately have certified the UCL and CLRA claims.

Following the Court's direction to simplify the case, Plaintiffs limited their Trial Plan to just the Recording Law, UCL, and CLRA claims (Dkt. No. 243). The other causes of action were not certified and were not included as part of the Settlement with Defendants. If the Court approves the Settlement, Plaintiffs will dismiss those remaining claims without prejudice.

**B.  Procedural History**

### 1.  Pre-Litigation

In August 2016, in response to Fishman's CLRA and preservation of evidence letters, Tiger produced a recording of the Sales Call that CGC made to Fishman, for the purpose of refuting her claims that Tiger and its telemarketers engaged in false advertising. Fishman sent a second CLRA letter in June 2017.

### 2.  Complaint and Removal

Fishman filed a putative class action against Tiger and DOE defendants on August 18, 2017 in the Superior Court of California, County of Marin. Tiger removed the Action to the U.S. District Court for the Northern District of California on September 15 (Dkt. No. 1). On September 22, Tiger filed a Motion to Dismiss (Dkt. No. 8).

### 3.  First Amended Complaint

Rather than opposing Tiger's Motion to Dismiss, Fishman – now joined by Faria – filed a First Amended Complaint on October 6, 2017 (Dkt. No. 13), also adding Community Gas Center as a Defendant.

### 4.  Second Amended Complaint

On November 14, 2017, Plaintiffs and Tiger stipulated to filing a Second Amended Complaint ("2AC") (Dkt. No. 27). On December 29, 2017, Tiger filed a Motion to Dismiss and a Motion to Strike the 2AC (Dkt. Nos. 49, 50), Plaintiffs opposed, and on March 8, 2018, the Court ruled mostly in Plaintiffs' favor (Dkt. No. 82).

### 5.  Operative Third Amended Complaint, and Tiger's Answer

On March 29, 2018, Plaintiffs filed a Motion for Leave to Amend the Complaint ("MLAC") (Dkt. No. 85), which clarified third-party beneficiary contract language and added Dyet as an individual defendant. On June 4, the Court mostly granted Plaintiffs' MLAC (Dkt.

No. 100).  The Court granted Plaintiffs' Rule 12 Motion as to 34 of 35 defenses in Tiger's Answer to the 3AC (Dkt. No. 175).  Tiger filed an Amended Answer (Dkt. No. 259) on November 26.

### 6. *Class Certification and Inference Order*

Plaintiffs filed their Motion for Class Certification (Dkt. No. 177) on September 20, 2018.  Plaintiffs concurrently filed a Motion under Federal Rule of Civil Procedure 37(e) (Dkt. No. 196) seeking evidentiary sanctions for Tiger's failure to preserve/destruction of recordings of its telemarketers' calls with Class members, in the form of an inference order that all Sales Calls contained the same material statements/omissions as did the Sales Call to Fishman and were likewise recorded without consent.

Plaintiffs filed a [Corrected] Trial Plan (Dkt. No. 243) on November 13, streamlining the class definitions and limiting the claims for which Plaintiffs sought certification to the Recording Law, UCL, and CLRA.

On December 4, the Court entered an Order (Dkt. No. 250) certifying the class as to the Recording Law claim only.  The Court denied Plaintiffs' motion to certify the UCL and CLRA claims without prejudice, as it found that Plaintiffs had not yet demonstrated that the data existed to determine classwide damages.  At the same time, the Court granted Plaintiffs' Rule 37(e) motion for evidentiary sanctions (Dkt. No. 249), holding that the jury would be informed of Defendants' failure to preserve and active destruction of evidence, and would be permitted to decide that the Sales Call to Fishman was the same as all Sales Calls to Class members, and that the Court believed it would be reasonable for the jury to so find.

On December 16, Plaintiffs filed a Supplemental Motion for Class Certification (Dkt. No. 313) demonstrating that the data to support classwide damages exists in PG&E's records, and how damages could be calculated.  On December 19, the Court denied the Motion without prejudice (Dkt. No. 331) on the grounds that Plaintiffs did not have the data in hand.  At the time the Parties reached this Settlement (on January 2, 2019) and the Court entered a stay, Tiger was due to produce (by January 4) Class members' gas consumption data (Dkt. No. 335 at 5:2-12), the data necessary for Plaintiffs to calculate classwide damages.

### 7. CGC's Motion to Dismiss

The Court denied Plaintiffs' request for entry of CGC's default (Dkt. No. 226).  The Court subsequently granted Plaintiffs Motion to serve CGC by serving Dyet by email, based on CGC/Dyet's claims of false addresses (Dkt. No. 284).  CGC filed a Motion to Dismiss on December 31, 2018 (Dkt. No. 360).  The Parties reached a Settlement, and the Court stayed the Action, before Plaintiffs would have filed their Opposition to CGC's motion.

### 8. Discovery Disputes

The Parties engaged in extensive written discovery and depositions, which involved substantial and contentious motion practice.  Plaintiffs filed four discovery letter briefs against Tiger (Dkt. Nos. 107, 132, 180, and 354/358), and one against Dyet (Dkt. No. 269).  Tiger filed one against Plaintiffs (Dkt. No. 261).  Plaintiffs and Tiger filed seven joint letter briefs (Dkt. Nos. 320, 321, 322, 346, 347, 348, 353).  Plaintiffs and Dyet filed two joint letter briefs (Dkt. Nos. 342, 343).  Plaintiffs took 10 depositions (including one of CGC's telemarketers and one of Tiger's former attorneys), and defended six; Tiger deposed each Plaintiff twice and both of Plaintiffs' ESI consultants.  Several disputes arose during depositions that required Court intervention.  Declaration of Jacob Harker in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Harker Decl") at ¶ 2 (Dkt. No. 373-2); Declaration of Daniel Balsam in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Balsam Prelim. Decl.") at ¶¶ 3-4 (Dkt. No. 373-1).  Plaintiffs' deposition of Dyet was forthcoming when the case settled, and the Court also authorized Plaintiffs to take four additional depositions of Tiger and its personnel, at Tiger's expense, because Tiger's Rule 30(b)(6) witness was unprepared to discuss multiple topics noticed in advance, and because Tiger had not produced requested documents before the first round of depositions.  Harker Decl. at ¶ 3.

The Court (Judge Alsup and Magistrate Judge Hixson) ruled in Plaintiffs' favor on most of the discovery letter briefs as well as disputes that arose during depositions, *id*. at ¶ 4, although it did not issue a ruling on Plaintiffs' letter brief regarding privileged documents Tiger withheld based on its asserted common interest privilege.  The Court also appointed a separate Special

Master, Daniel Garrie, to make findings with respect to Tiger's allegations – which were never formally briefed and that Plaintiffs never had an opportunity to oppose – that Plaintiffs did not preserve unspecified information stored on their electronic devices.  Plaintiffs filed two separate discovery motions for a protective order regarding Garrie's scope of work (Dkt. Nos. 354, 358).  Garrie had not completed his analysis at the time the Parties reached their Settlement.

**C.  Settlement Conference**

On December 21, 2018, Magistrate Judge Laporte confirmed the position of Judge Alsup that the Parties could negotiate Plaintiffs' UCL and CLRA claims if and only if they were able to first settle the certified Recording Law claim on behalf of the certified Class.  Balsam Prelim. Decl. at ¶ 5.

The Parties reached a classwide settlement for the certified Recording Law claim that includes $3.7 million and an injunction against Tiger and its telemarketers recording further telemarketing sales calls without consent.  Because Defendants represented there was no more money to be had, the Parties then negotiated a classwide settlement of the then-uncertified UCL and CLRA claims for prospective, injunctive relief prohibiting Tiger, directly and through its telemarketers, from engaging in misrepresentations and omissions in marketing natural gas in PG&E's territory.

## IV.  THIS SETTLEMENT MEETS THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re ECOtality, Inc. Sec. Litig.*, No. 13-cv-03791-SC, 2015 WL 5117618, at *2 (N.D. Cal. Aug. 28, 2015) ("Despite the importance of fairness, the Court must also be mindful of the Ninth's Circuit's policy favoring settlement, particularly in class action lawsuits.")

Newly-amended Rule 23 of the Federal Rules of Civil Procedure provides that a court may approve a settlement on finding that the Class received adequate notice (Fed. R. Civ. P. 23(e)(1)-(2)) and that the settlement is fair, reasonable and adequate, after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

In addition to the above factors under Rule 23, recent guidelines issued by this District require Class Counsel to include in their motion for final approval of the settlement:

> information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

*See* Procedural Guidance for Class Action Settlements (updated November 1, 2018 and December 5, 2018) at *https://www.cand.uscourts.gov/ClassActionSettlementGuidance*.

To determine whether a class action settlement should be finally approved, the Court should balance the continuing risks of litigation against the benefits afforded to the Class and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice*, 688 F.2d at 625; *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Courts have taken a liberal approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results. "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms.*, 221 F.R.D. at 526. "As

the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'"  *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at *11 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1027 (9th Cir. 1998).

When examined under the applicable criteria, this Settlement is a highly favorable result for the Class.  Class Counsel have grave doubts as to whether a more favorable monetary result could be attained after summary judgment, trial, and the inevitable post-trial motions and appeals – especially in light of Defendants' financial ability to pay only a tiny fraction of a judgment in Plaintiffs' favor.  *See* Johnson Decl. and Walker Decl. (Dkt. Nos. 386, 389).  The Settlement achieves a substantial and certain recovery for the Class; if the Action were to proceed to trial, the Class would face a real risk of a smaller recovery or no recovery at all.  An analysis of the relevant factors in Rule 23 demonstrates that the Settlement merits the Court's final approval.

## V.  **NOTICE TO THE CLASS WAS ADEQUATE**

### A.  **Notice of Preliminary Approval of Settlement**

When approving a class action settlement, a district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement.  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See id.*; *see also Low v. Trump University, LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("'The yardstick against which we measure the sufficiency of notices in class action proceedings is one

of reasonableness'") (quoting *In re Bank of America Corp*., 772 F.3d 125, 132 (2d Cir. 2014)).

The notice must also describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Luna v. Marvell Tech Grp*., No. C 15-05447 WHA, 2018 LEXIS 67181 at *7 (N.D. Cal. Apr. 20, 2018) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 452 (E.D. Cal. 2013).

      The Court approved the Notice which advises potential Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections to the Settlement and requests for exclusion from the Class, identifies contacts for additional information, and provides specifics regarding the date, time, and place of the Settlement hearing. Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

      Furthermore, the Notice includes: (1) the estimated amount of the Settlement proposed to be distributed to the Class Members; (2) a statement indicating that Class Counsel intend to make an application for attorneys' fees and costs, and the maximum amount of fees and costs they will seek; (3) the name, telephone number, and address of Class Counsel who will be reasonably available to answer questions from class members; (4) a brief statement explaining the reasons why the parties are proposing the Settlement; (5) the plan of allocation; and 6) a website dedicated to the Settlement (www.naturalgascappedrateclassaction.com) with information and links to pertinent documents.

      Pursuant to this Court's Order Re Motion for Preliminary Approval of Class Settlement (Dkt. No. 379), Angeion (the Class Administrator) mailed notice of proposed Settlement, by first class mail, to 26,857 class members.  Declaration of Andy Morrison Supporting Plaintiffs' Motion for Final Approval of Class Settlement ("Morrison Final Decl.") at ¶ 3.  Angeion performed "skip traces" for all Class Members whose Notice Packets were returned

1   undeliverable, obtained 764 new addresses, and sent Notice Packets to those new addresses.  *Id.*

2   at ¶ 8.  Angeion then sent email notice or phone notice to 1,186 Class members whose Notice

3   Packets were undeliverable, which resulted in 81 class members providing updated addresses.

4   *Id.* at ¶ 15.  After all of these efforts, 1,682 class members' addresses remain undeliverable.  *Id.*

5   at ¶ 16.

6   At the direction of Class Counsel, Angeion went above and beyond the Court's approved

7   notice plan to send email notice or make telephone calls to the 1,029 Class Members whose

8   mailed Notices were undeliverable and for whom Tiger provided incomplete addresses.  *Id.* at

9   ¶¶ 10-13.  Also, Angeion sent email notice to 157 Class Members for whom Tiger provided

10   complete addresses but the mailed Notices were nevertheless undeliverable.  Of the 26,857 class

11   members, only 577 (2.15%) had their notices returned undeliverable *and* did not receive an

12   additional form of notice (either by email or by telephone).  *Id.* at ¶¶ 10-15.

13   **B.  Notice of Class Members' Right to Cancel Tiger's Program Without Penalties**

14   In addition to the Notice sent and communicated by the Claims Administrator, Class

15   Counsel propose to include a further notice with Class members' Settlement checks.  On April 8,

16   2019, Class Counsel and counsel for Tiger and Dyet participated in a telephone call with

17   California Deputy Attorney General Sheldon Jaffe at his request[4], regarding the Settlement.

18   Jaffe expressed a concern that Class members be informed that they can cancel Tiger's Program

19   without any penalties or fees.  Declaration of Daniel Balsam in Support of Plaintiffs' Motion for

20   Final Approval of Class Settlement ("Balsam Decl.") at ¶ 2.  Tiger's attorneys responded that

21   Tiger sent a notice to its customers in 2018 to that effect, but that turned out to be incorrect.  *Id.*

22   at ¶ 3.

23   Accordingly, to address the Attorney General's concern, Class Counsel propose to

24   include a notice with the Settlement checks that instructs Class Members how to determine

25   whether they are still customers of Tiger, and if so, how to cancel Tiger's Program without fees

26

27   [4] Jaffe presumably reached out to the Parties after receiving Tiger's notice served pursuant to the
    Class Action Fairness Act ("CAFA") on March 19, 2019 (Dkt. Nos. 394-395).  28 U.S.C.

28   § 1715(d) provides the timelines for entry of final orders approving proposed settlements in class
    action cases following CAFA Notice.

1   or penalties.  The Class Administrator can include this notice for no additional processing,

2   printing, paper, or postage costs.  *Id.* at ¶ 4.

3       Class Counsel emailed proposed text to Jaffe and counsel for Defendants on May 1,

4   2019.  On a telephone call with Class Counsel and Tiger's counsel on May 3, Jaffe stated that the

5   proposed notice "answered his question" regarding how Class members may be informed of their

6   right to cancel Tiger's Program with no penalties or fees, although the Attorney General's office

7   has neither endorsed nor objected to the Settlement.  *Id.* at ¶ 5.

8       Tiger objected to the May 1 text, and provided subsequent suggestions.  On May 10,

9   Class Counsel provided the following text to Jaffe and Counsel for Defendants.  Class Counsel

10   believe this text is simple, complete, accurate, and neutral in tone.  Tiger still objects to this text,

11   but it has not specifically and convincingly identified anything false or misleading.  *Id.* at ¶ 6.

12
13
14
15
16
17
18
19

> **PLEASE NOTE:** You may still be a customer of Tiger Natural Gas Inc.'s ("Tiger") cap-rate/price-protection program even though your monthly gas bill comes from PG&E.  If you are, you can cancel your Tiger service at any time with no cancellation fees, and use PG&E (or another gas company) to supply your natural gas.  To see if you are a Tiger customer, look at your monthly PG&E bill.  If you see a page that says "Details of TIGER NATURAL GAS INC. Gas Procurement Charges" at the top left, which usually comes after the electricity pages, that means that Tiger is supplying the gas that PG&E is delivering.  To cancel Tiger's cap-rate/price protection program with no penalties, call Tiger at 888-875-6122, and then PG&E will automatically become your gas supplier.  For other questions or concerns about your gas service, please call PG&E at 877-660-6789 (residential customers) or 800-468-4743 (business customers).

20   On May 10, Jaffe acknowledged receipt and stated that he would be in touch if the Attorney

21   General has any other questions.  Jaffe has not responded with any further questions.  Based on

22   his comments to the similar, prior version, Class Counsel believe that the Attorney General still

23   neither endorses nor objects to this language (or the Settlement).  *Id.* at ¶ 7.

24       The notice program implemented in this litigation constitutes the best notice practicable

25   under the circumstances and satisfies the requirements of due process and Federal Rule of Civil

26   Procedure 23.  The further notice proposed to be included with Class members' Settlement

27   checks will provide an added benefit by instructing the Class on their rights and procedures to

28   terminate Tiger's Program, should they wish to do so.

## VI. <u>THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE</u>

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Rodriguez v. Bumble Bee Foods, LLC*, No. 17cv2447-MMA (WVG), 2018 U.S. Dist. LEXIS 69028, at \*10 (S.D. Cal. Apr. 24, 2018).

The Parties reached this Settlement after they had an opportunity to diligently investigate the relevant evidence through the exchange of thousands of relevant documents, data, and multiple depositions, and after the Court certified the Recording Law claims. Class Counsel believes the Court would have certified the UCL and CLRA claims too, since once Tiger turned over its customers' gas consumption data, Plaintiffs would have had the data in hand to calculate classwide damages without seeking data from PG&E. Although more discovery had been ordered by the Court which was stayed following the Settlement, Plaintiffs and Class Counsel are confident in the terms of the Settlement, given the information garnered during discovery, during the Settlement negotiations, and based, on Tiger's financial disclosures and apparent inability to pay a judgment.

In evaluating the fairness, reasonableness, and adequacy of a Settlement, courts consider the reaction of the Class. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Harris v. Amgen, Inc.*, No. CV 07-5442 PSG (PLAx), 2016 U.S. Dist. LEXIS 187228 at \*14 (C.D. Cal. Nov. 2016). The Settlement Notice advised the Class of the terms of the Settlement, the Plan of Allocation, and counsel's request for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing objections and opting out of the Class. 26,857 Notice Packages were mailed to Class Members. While the objection deadline – May 9, 2019 – has passed, not a single Class Member has filed an objection to the Settlement, the Plan of Allocation, or counsel's request for an award of attorneys' fees and expenses.

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Arnold v. Fitflop USA, LLC*, No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS 58800, at \*20-\*21 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Although recommendations of counsel proposing the Settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and discovery has commenced.  *See* 2 H. Newberg, *Newberg on Class Actions* § 11.47 (2d ed. 1985). Indeed, "Absent evidence of fraud or collusion, courts also should accord 'great weight' to the recommendations of counsel."  *Medeiros v. HSBC Card Services,* No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *15-16 (C.D. Cal. Oct. 23, 2017).  Class Counsel are qualified and experienced in complex, class-action litigation, and believe that the Settlement is fair, adequate, and reasonable under the circumstances.  Balsam Decl. at ¶ 8.

A.  **The Class Representatives and Class Counsel Have Adequately Represented the Class**

1. ***Plaintiffs Prevailed on their Motion to Certify the Most Valuable Recording Law Claim, and Successfully Moved for Critical Evidentiary Sanctions***

Plaintiffs successfully moved to certify the most valuable clam, the Recording Law claim, potentially worth $5,000 per class member, or $135 million (plus interest) across the Class of over 26,000 California consumers and small business customers.  Certification of that claim was the primary motivation for Defendants to settle this action, as no percentage risk of loss at trial could be acceptable in the face of such a potential judgment.

Certification of the Recording Law claim necessitated a showing by common evidence that Defendants had recorded telemarketing calls to Class members without their consent. Defendants, however, failed and refused to produce the recordings.  For a long time, Class Counsel had only the one recording of the call to Plaintiff Fishman.  Standing alone, it was not classwide evidence.

Class Counsel doggedly pursued evidence that Defendants had recorded telemarketing calls to all Class members without consent, and repeatedly challenged Defendants' failure to produce call recordings.  Plaintiffs' brought a Motion pursuant to Rule 37(e) for evidentiary sanctions for Defendants' apparent destruction of the call recordings.  The Court granted Plaintiff's Rule 37(e) Motion (Dkt. No. 249), holding that Plaintiffs were prejudiced by Defendants' failure to preserve this evidence.

Class Counsel believe that the Court-ordered inferences they pursued for the Class were instrumental in persuading Defendants of the need to settle for the highest amount their finances would permit.  While trials always include risk, the inferences in the Court's Rule 37(e) Order significantly increased the likelihood that a jury would find against Defendants and find them to be generally deceitful and untrustworthy.

### 2.   *Class Counsel Believe They Would Have Succeeded in a Further Motion to Certify Plaintiffs' UCL and CLRA Claims*

Class Counsel successfully convinced the Court that the requirements of Rule 23 to certify Plaintiffs' UCL and CLRA claims were met, except for a showing that Plaintiffs already had the data in hand to calculate classwide damages.  *See* Dkt. No. 250.  Class Counsel were on the brink of receiving that data from Tiger and were preparing a further expert report to submit to the Court.  Class Counsel believe the Court would have granted Plaintiffs' motion to certify these further claims in light of this data and report.  Class Counsel believe that the prospect of negative press for Defendants resulting from certification of these particular claims also contributed to Defendants' desire to settle, and in particular to their agreement to the stated injunction.

### 3.   *Plaintiffs Prevailed on Discovery Motions*

Throughout the course of this litigation, Class Counsel also prevailed on the vast majority of discovery motions (and letter briefs), regardless of which Party initiated the dispute.

Class Counsel initiated nine letter briefs against Tiger, many containing multiple topics. The Parties resolved two disputes by stipulation (Dkt. Nos. 107, 132).  The Court never issued a final ruling on the dispute over the common interest privilege (Dkt. No. 180), but did authorize additional depositions and production.  Class Counsel prevailed on the remaining six discovery motions, partially or entirely, except for their demand for Tiger's entire servers and database (Dkt. Nos. 180, 320, 321, 322, 346, 347, 348).  Those victories included forcing Tiger to produce documents related to telemarketing scripts, customer billing data, its financial status, its payments to its telemarketers and additional electronically-stored information ("ESI").  Because Tiger failed to produce responsive documents to Plaintiffs' discovery requests, the Court, in response to Plaintiffs' motions, ordered Tiger to produce three witnesses for further depositions.

Harker Decl. at ¶ 3.  Also, because Tiger produced its corporate witness unprepared to discuss the stated topics on Plaintiffs' 30(b)(6) deposition notice, the Court ordered an additional 30(b)(6) deposition.  *Id.*  These additional depositions were all ordered to be at Tiger's expense.

Class Counsel also filed two discovery motions against Dyet.  Plaintiffs prevailed on the first when the Court ordered Dyet to provide written responses and documents in response to Plaintiffs' discovery, to serve initial disclosures, and to appear for the deposition he had long avoided (Dkt. No. 269), but Plaintiffs lost on the second because they were late to serve those additional document requests (Dkt. No. 343).

Tiger initiated three discovery motions/letter briefs against Plaintiffs.  Plaintiffs prevailed on the first – Tiger's request for a protective order to prevent Plaintiffs from inspecting Dyet's storage lockers, and its request for information by third party subpoena (Dkt. No. 261).  Plaintiffs prevailed on the second – Tiger's request for documents from PG&E (Dkt. No. 317).  Tiger prevailed on the third – requesting Plaintiffs to revise the format of their responses to Tiger's interrogatories to state the interrogatories exactly as propounded.  (Dkt. No. 318).

### 4.  *Plaintiffs Prevailed on Other Motions*

Plaintiffs also prevailed on early motions on the pleadings, including Tiger's Motion to Dismiss the Second Amended Complaint and Plaintiffs' subsequent Motion for Leave to Amend and file their Third Amended Complaint, including Tiger's repetitive challenges to this Court's jurisdiction by arguing the CPUC has exclusive authority over this dispute.

Plaintiffs filed a Rule 12 Motion to Strike/Motion For More Definite Statement as to each and every affirmative defense in Tiger's Answer to the 3AC.  The Court granted the Motion as to all but one of Tiger's affirmative defenses.  Tiger's final Answer had just six affirmative defenses, which, if the litigation had proceeded, would have both simplified the litigation and improved Plaintiffs' chances of prevailing.

Class Counsel persuaded this Court that Dyet had a pattern and practice of claiming false addresses across the country for himself and his multiple companies and successfully convinced this Court to authorize service on Dyet and his companies by email, preventing Dyet from avoiding the litigation.

1   In summary, Plaintiffs prevailed on most of the motions that they brought before the

2   Court on behalf of Plaintiffs and the Class, and effectively litigated this Action to achieve the

3   best possible Settlement.

4   ### 5.   Plaintiffs Devoted Considerable Time and Effort for the Class' Benefit

5   Class Representatives Fishman and Faria devoted a considerable amount of time and

6   effort to litigating this case.  They each sat for two depositions and provided responses to

7   extensive written discovery.  Perhaps more importantly, Fishman and Faria rejected early offers

8   to settle for their actual damages, which would have terminated this action on behalf of the Class.

9   ## B.   The Settlement was Negotiated at Arm's Length

10   The Settlement, which was negotiated with the substantial assistance of Magistrate Judge

11   Laporte, provides a substantial and certain cash benefit to the Class in the amount of $3.7

12   million.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-

13   collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. West*

14   *Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

15   During the negotiations, Class Counsel zealously advanced Plaintiffs and the Class'

16   positions and were fully prepared to continue to litigate and try the case rather than accept a

17   settlement that was not in the best interest of the Class.  The Parties participated in a settlement

18   conference with Magistrate Judge Laporte on January 2, 2019 that involved an analysis of the

19   Class' claims and the defenses that would be asserted by Defendants.  Balsam Decl. at ¶ 9.  Prior

20   to the settlement conference, both sides provided Magistrate Judge Laporte with comprehensive

21   briefing that identified and analyzed key evidence, as well as Defendants' financial condition.

22   *Id.*  With the assistance of Magistrate Judge Laporte, the Parties spent a full day discussing the

23   merits and weaknesses of their respective positions.  At the conclusion of the settlement

24   conference, the Parties agreed to settle the Action for $3.7 million.  *Id.* at ¶ 10.  Courts have

25   recognized that "[t]he assistance of an experienced mediator in the settlement process confirms

26   that the Settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C032659 SI, 2007

27   U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see also Harris v. Vector Mktg.*

28

1    *Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25-26 (N.D. Cal. Apr. 29, 2011).

2    Here, Magistrate Judge Laporte played an active role in bringing about this Settlement.

3    **C.  The Relief for the Class is Adequate**

4           Although the monetary Settlement is low compared to the statutory damages, Defendants

5    simply do not have $183 million.  If such a judgment were entered, Defendants would declare

6    bankruptcy and the Class would likely get nothing.  Here, each Class member should receive

7    $95.18 – a significant amount, *not* a coupon or credit, and without needing to prove actual

8    damages or even file a claim.

9           Further, Defendants have agreed to injunctive relief that benefits not only Plaintiffs and

10   the Class, but all consumers and small businesses in PG&E's territory in Northern/Central

11   California.  This was one of Plaintiffs' goals; indeed, Plaintiffs previously turned down Tiger's

12   offer of a private monetary settlement without injunctive relief.

13          ***1.  The Costs, Risks, and Delay of Trial and Appeal***

14          This Court already certified the class's Recording Law claim, and coupled with

15   Defendants' destruction of evidence and the inference order under Rule 37(e), Plaintiffs believe

16   their case against Tiger is very strong.  Plaintiffs also believe they would have been able to

17   pierce the corporate veil on Dyet's defunct companies.

18          This Court had not yet certified the UCL and CLRA claims, but – had the Parties not

19   reached this settlement on January 2 – Tiger would have been required to produce class

20   members' gas consumption data by January 4 that would have allowed Plaintiffs to calculate

21   classwide damages, eliminating any need for Plaintiffs to seek data from PG&E.  That appears to

22   have been the sole barrier to certification on those claims.

23          Class Counsel believe Plaintiffs would have prevailed on the UCL and CLRA claims.

24   While the telemarketer on the Sales Call to Fishman claimed that the CPUC had processed

25   PG&E's request for an 18.8% supply price increase, and that Tiger would protect Fishman from

26   these "supply rate increases," Plaintiffs can demonstrate through direct and incontrovertible

27   evidence that the 18.8% increase is a consolidated figure for electricity generation, electricity

28   delivery, and gas delivery, but *not* gas supply (Dkt. No. 177-1 at ¶¶ 7, 25 and Ex. 2A at 127:8-

18, Ex. 21 at *3).  The telemarketer also represented that Tiger's prices were variable based on the market price, *id.*; yet Plaintiffs can demonstrate that Tiger's prices do not track market prices. The telemarketer repeatedly claimed that it was free to participate in the Program, *id.*; even though Tiger does not dispute that it really charges $0.05 (or $0.25) per day.  Tiger never provided proof that it mailed written terms and conditions to new customers, and the terms and conditions it did produce do not comply with PG&E Gas Rule 23 or Cal. Public Utilities Code §§ 980 *et seq.* because they fail to state Tiger's per-therm prices or even its price cap.  Balsam Prelim. Decl. at ¶ 8.

Class Counsel also believe Plaintiffs have a strong case to hold Tiger liable for the actions of its telemarketers who advertised its Program, not least because: (a) Tiger aided and abetted the unlawful practices by reviewing and approving scripts that did not mention recording, *see* Cal. Pen. Code § 31; (b) Tiger aided and abetted the unlawful practices by listening to actual audio recordings that did not obtain consent to record and contained materially false statements/omissions and failing to object, while continuing to profit from this business; (c) Tiger delegated its non-delegable obligation under PG&E Gas Rule 23 to preserve recordings of Sales Calls to Dyet; and (d) Tiger ratified and profited from Dyet's companies' actions.

As described in detail in Plaintiffs Motion for Preliminary Approval of Class Action Settlement at Ex. B (Dkt. No. 373), Class members' expected recovery here is well within the range of other recent class settlements for violations of the California Recording Law, and far higher than many approved settlements that do not even address the financial shortcomings of defendants addressed here.

In Plaintiffs' view, the biggest risk of further litigation was not Plaintiffs/Class's probability of prevailing on their claims, but rather Defendants' inability to pay a judgment. Tiger is a family-owned business with one shareholder.  Johnson Decl. at ¶ 1 (Dkt. No. 386), Walker Decl. at ¶ 2 (Dkt. No. 389).  Dyet is an individual, and several of his companies are defunct.  Balsam Prelim. Decl. at ¶¶ 7, 9 and Ex. 4-6, Dyet Decl. at ¶¶ 1, 4 (Dkt. No. 384).

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (3:17-CV-05351-WHA)**

1    In negotiating the monetary relief for the class members' certified Recording Law claim,

2    Plaintiffs were presented with the following facts.  Tiger sells natural gas to its customers at

3    prices that it asserts yield only a small margin above Tiger's cost of gas, and that spread –

4    Tiger's net income – pays its employees' salaries, general expenses, etc.  Walker Decl. at ¶¶ 3-4

5    (Dkt. No. 389).  Tiger retains a certain amount of earnings in a "lockbox" account controlled by

6    its financier (which Tiger refers to as an "aggregator").  Tiger asks permission to withdraw

7    monies from the lockbox account to pay operating expenses, and Tiger must keep a certain

8    amount of "float" cash on hand, because it has to pay for gas before its customers pay Tiger.  *Id.*

9    at ¶¶ 8-16.  Tiger, an S-Corporation, also issues a "dividend" to its owner who uses it in its

10   entirety to pay Tiger's taxes.  Johnson Decl. at ¶ 1 (Dkt. No. 386), Walker Decl. at ¶ 6 (Dkt. No.

11   389).  Tiger's assets are mostly accounts receivable (payments from its customers), its liabilities

12   are mostly accounts payable (buying, transporting, and storing gas and profit-sharing payments

13   to Dyet's companies), and its net profits are small.  Walker Decl. at ¶¶ 3-4 (Dkt. No. 389).  Tiger

14   could not pay a judgment of $183 million or anywhere close to it, *id.* at ¶ 5, assuming of course

15   that Plaintiffs are able to hold Tiger liable for Dyet's telemarketing companies' undeniable

16   violations of California's Recording Law.  More than half of Tiger's retained earnings are being

17   directed to this Settlement, and Tiger represented that anything more would not enable it to keep

18   operating.  *Id.* at ¶¶ 9-12, 15-16.  Tiger does not have insurance to cover this Settlement (or a

19   judgment).  *Id.* at ¶ 18.

20       For the reasons set forth in Tiger and Dyet's Declarations, Class Counsel believe that

21   Tiger and Dyet have sufficiently explained their inability to pay a judgment, and cannot pay

22   more in settlement than the negotiated $3.7 million.  *See also* Declaration of Allan von Halle In

23   Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (Dkt. No. 373-4) at

24   ¶¶ 6-8.

25       Furthermore, Tiger has aggressively litigated this matter to the point that its attorneys'

26   fees are likely to substantial impact its operating margins.  Therefore, continuing litigation would

27   only hurt the Class's ultimate recovery.  Given Defendants' limited financial resources, it is in

28   the Class's interest to cut off the litigation as soon as possible.

1   The risk of Tiger declaring bankruptcy in the face of a judgment was substantial.  Walker

2   Decl. at ¶ 16 (Dkt. No. 389).  In that event, the Class would likely recover nothing.  While

3   Dyet's companies would be jointly and severally liable, Dyet also does not have anywhere near

4   $183 million to pay a judgment and would also declare bankruptcy.  Dyet Decl. at ¶¶ 2, 6 (Dkt.

5   No. 384).

6   Had Plaintiffs continued to litigate, "the proceeds available for a settlement would have

7   continued to be expended on defense-related costs."  [ ] The decision to settle was therefore a

8   pragmatic choice given that Plaintiffs "faced a real risk that any victory at trial would be mostly,

9   if not wholly, symbolic due to the Company's financial condition and future prospects."

10   *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS

11   162120, at *17 (N.D. Cal. Nov. 21, 2016).  Therefore, given this reality, Plaintiffs "have agreed

12   to accept a smaller certain award rather than seek the full recovery but risk getting nothing."

13   *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3,

14   2015) (citation omitted).  The costs and risk of further litigation weigh heavily in favor of the

15   Settlement.

16   ### 2.  *The Effectiveness of the Proposed Method of Distributing Relief to the Class*

17   The Plan of Allocation is set forth in full in the Settlement Notice mailed to potential

18   Class Members.

19   Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23

20   is governed by the same standards of review applicable to the settlement as a whole – the plan

21   must be fair and reasonable.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992);

22   *Amgen*, 2016 U.S. Dist. LEXIS 187228, at *20.  District courts enjoy "broad supervisory powers

23   over the administration of class-action settlements to allocate the proceeds among the claiming

24   class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In*

25   *re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation plan

26   need only have a reasonable, rational basis, particularly if recommended by "experienced and

27   competent" class counsel.  *In re Broadcom Corp. Secs. Litig.*, No. SACV 01-275 DT (MLGx),

28

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (3:17-CV-05351-WHA)**

2005 U.S. Dist. LEXIS 41976 at *7 (C.D. Cal. Sep. 14, 2005);  *Nguyen v. Radient Pharms.*
*Corp.,* No. SACV 11-00406 DOC(MLGx), 2014 LEXIS 63312, at *13 (C.D. Cal. May 6, 2014).

Every Class Member (who does not opt-out) should receive $95.18.[5]  The Claims
Administrator will simply distribute checks in that amount to Class Members.  As a result, the
Plan of Allocation will result in a fair distribution of the available proceeds among Class
Members.  There have been no objections to the Plan of Allocation filed by Class Members, it is
fair and reasonable, and this Court should approve it.

Angeion will not send checks to the 1,682 Class Members for whom Angeion still does
not have deliverable addresses.  However, as is discussed below, Angeion will send a check to
any class member who provides a deliverable address prior to the end of the Distribution Period.

### 3.  The Terms of the Proposed Award of Attorney's Fees and Costs

Class Counsel has requested 25% of the $3.7 million gross Settlement, or $925,000.  *See*
Class Counsel's Motion for Attorney's Fees (Dkt. No. 397).  This amount represents 47% of
Class Counsel's lodestar and is reasonable.  *Id.*  Class Counsel also request $217,127.91 for costs
that were a reasonable and necessary part of the litigation, and $3,000 for incentive awards for
Fishman and Faria ($1,500 each).  *Id.*

Class Counsel request that half of any attorney fee award and half of any award of
litigation expenses be distributed immediately upon receipt by Angeion and the remaining halves
be distributed when Class Counsel certifies that all funds have been properly distributed and the
file can be completely closed.

### 4.  Identification of Agreements in Connection With the Proposed Settlement

Pursuant to the proposed Settlement, Tiger agreed to pay a total of $3.7 million, and
Tiger will change its business practices as follows, to settle the Class' certified Recording Law

---

[5] Assuming this Court approves attorney's fees at 25% of the gross $3.7 million settlement, Class
Members should receive $95.18 each.  ($3.7 million - 25% for attorneys' fees - $217,128 costs -
$3,000 incentive awards = $2,554,872) divided by (26,857 Class Members - 15 opt outs =
46,842 participants) = $95.18.  If the Court approves attorneys' fees at 25% of the net settlement
after costs, then Class Members should receive $97,23 each.  (($3.7 million - $217,128 costs -
$3,000 incentive awards = $3,479,872) - 25% for attorneys' fees) divided by (26,857 Class
Members - 15 opt outs = 26,842 participants) = $97.23.  Either way, it is higher than the $90
estimate stated in the Motion for Preliminary Approval at Ex. C, ¶¶ 10, 15 (Dkt. No. 373).

claim against all Defendants: ***All sales calls that are recorded in the future made by Tiger or by entities engaged by Tiger will contain a warning at the beginning of the sales call that the call is being recorded.*** Balsam Decl. at ¶ 10.

In addition, the proposed Settlement compels Tiger to change its business practices further to settle Plaintiffs' as-yet uncertified UCL and CLRA claims as follows: ***Tiger, and any entities engaged by it to make sales calls in the future, will not misrepresent Tiger's charges or PG&E's charges in any such sales calls.*** *Id.*

There are no other agreements between the Parties in connection with the proposed Settlement. Balsam Decl. at ¶ 11.

**D.  The Proposed Settlement Treats Class Members Equitably Relative to Each Other**

The Settlement will be divided equally among the members of the Class (who did not opt out). Each Class member will receive a check in the amount of about $95.18. *See* n. 5.

**E.  The Requested Incentive Awards are Reasonable**

Plaintiffs ask that this Court award Fishman and Faria modest incentive awards of $1,500 each in recognition of the numerous hours and efforts invested in this Action (including two depositions each) as well as the invasion of their privacy as third parties reviewed their personal communications and documents.

**VII.  OBJECTIONS AND OPT-OUTS**

To date, no Class Members filed objections with the Court (or served objections on Angeion). Morrison Final Decl. at ¶ 18 *and see* Register of Actions.

Angeion received only 15 opt-out notices to Angeion, *id.* at ¶ 17 and Ex. C, which represents only 0.05% of the Class. This count includes the one Class Member who filed an opt-out request with the Court (Dkt. No. 401).

**VIII.  TIMELINE**

Angeion will promptly provide payment instructions to Tiger upon entry of Order approving this Motion.

Plaintiffs ask this Court to order Tiger to remit the entire $3.7 million to Angeion via wire or ACH transfer within 10 business days of entry of an Order approving this Motion.

Angeion will mail checks for approximately $95.18 to each Class Member (who did not opt out), for whom Angeion has a deliverable address, within 10 business days of receipt of the $3.7 million from Tiger.

Class Members have six months from the initial mailing to deposit/cash the checks ("Distribution Period").

If, prior to the end of the Distribution Period, any Class Members for whom Angeion does not currently have a valid address provides an address, Angeion will mail them their checks, which must be deposited/cashed within the Distribution Period.

Within 10 court days after the end of the Distribution Period, Class Counsel will file a Declaration from Angeion stating: (a) compliance with the distribution order, (b) the number of checks deposited and not deposited, and (c) the amount of remaining funds to be distributed to TURN as the *cy pres* recipient.

## IX. **CONCLUSION**

For the reasons set forth herein, in the accompanying Declarations, and the entire record, the Settlement and Plan of Allocation warrant this Court's final approval.


Respectfully Submitted,

Dated:  May 16, 2019

LAW OFFICES OF JACOB HARKER
*/s/ Jacob Harker*
Jacob Harker
Class Counsel for the Certified Class

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (3:17-CV-05351-WHA)**